# EXHIBIT 1

CONSTELLIS EMPLOYEE STOCK OWNERSHIP PLAN

Effective Date: January 1, 2013

v

## Table of Contents

Article 1 .................................................................................................................................... - 1 -
Definitions ............................................................................................................................... - 1 -

| 1.1 | Administrator | - 1 - |
|---|---|---|
| 1.2 | Adopting Employer | - 1 - |
| 1.3 | Affiliated Employer | - 1 - |
| 1.4 | Age | - 1 - |
| 1.5 | Allocation Period | - 1 - |
| 1.6 | Anniversary Date | - 1 - |
| 1.7 | Annual Additions | - 1 - |
| 1.8 | Annuity Starting Date | - 2 - |
| 1.9 | Beneficiary | - 2 - |
| 1.10 | Benefiting Participant | - 2 - |
| 1.11 | Break in Service | - 2 - |
| 1.12 | Code | - 2 - |
| 1.13 | Code §401(a)(17) Compensation Limit | - 2 - |
| 1.14 | Code §415(c)(3) Compensation | - 3 - |
| 1.15 | Committee | - 3 - |
| 1.16 | Compensation | - 3 - |
| 1.17 | Compensation Determination Period | - 4 - |
| 1.18 | Counting of Hours Method | - 4 - |
| 1.19 | Current Obligations | - 4 - |
| 1.20 | Deemed Code §125 Compensation | - 4 - |
| 1.21 | Deemed Reemployment | - 4 - |
| 1.22 | Determination Date | - 4 - |
| 1.23 | Differential Wage Payment | - 4 - |
| 1.24 | Disability | - 4 - |
| 1.25 | Distribution Calendar Year | - 4 - |
| 1.26 | Eligibility Computation Period | - 4 - |
| 1.27 | Eligible Employee | - 5 - |
| 1.28 | Employment Commencement Date | - 5 - |
| 1.29 | Employee | - 5 - |
| 1.30 | Employer | - 5 - |
| 1.31 | Employer Securities | - 5 - |
| 1.32 | Employer Securities Account | - 5 - |
| 1.33 | Exempt Loan | - 5 - |
| 1.34 | Forfeiture | - 6 - |
| 1.35 | Form W-2 Compensation | - 6 - |
| 1.36 | HCE | - 6 - |
| 1.37 | Highly Compensated Employee | - 6 - |
| 1.38 | Hour of Service | - 6 - |
| 1.39 | Immediately Distributable | - 7 - |
| 1.40 | Key Employee | - 7 - |
| 1.41 | Leased Employee | - 7 - |
| 1.42 | Life Expectancy | - 7 - |
| 1.43 | Limitation Year | - 7 - |
| 1.44 | Maternity or Paternity Leave | - 7 - |
| 1.45 | Named Fiduciary | - 7 - |
| 1.46 | NHCE | - 8 - |
| 1.47 | Non-Highly Compensated Employee | - 8 - |
| 1.48 | Non-Key Employee | - 8 - |
| 1.49 | Non-Spouse Designated Beneficiary | - 8 - |
| 1.50 | Normal Retirement Age | - 8 - |
| 1.51 | Normal Retirement Date | - 8 - |
| 1.52 | Notice/Form | - 8 - |
| 1.53 | Other Investments Account | - 8 - |
| 1.54 | Participant | - 8 - |
| 1.55 | Participant's Account | - 8 - |
| 1.56 | Participant's Account Balance | - 8 - |
| 1.57 | Participant Election | - 8 - |
| 1.58 | Permissive Aggregation Group | - 9 - |
| 1.59 | Plan | - 9 - |
| 1.60 | Plan Year | - 9 - |
| 1.61 | Post-Severance Compensation | - 9 - |

| | | |
|---|---|---|
| 1.62 | Qualified Domestic Relations Orders or QDRO | - 9 - |
| 1.63 | Qualified Military Service | - 9 - |
| 1.64 | Qualified Reservist | - 9 - |
| 1.65 | Readily Tradable on an Established Securities Market | - 9 - |
| 1.66 | Recipient | - 10 - |
| 1.67 | Required Aggregation Group | - 10 - |
| 1.68 | Required Beginning Date | - 10 - |
| 1.69 | Regulation | - 10 - |
| 1.70 | Rollover Contribution (or Rollover) | - 10 - |
| 1.71 | Rule of Parity | - 10 - |
| 1.72 | S Corporation | - 10 - |
| 1.73 | S Corporation Distribution | - 10 - |
| 1.74 | Sponsoring Employer | - 10 - |
| 1.75 | Spouse | - 10 - |
| 1.76 | Terminated (or Terminates) Employment | - 10 - |
| 1.77 | Terminated Participant | - 10 - |
| 1.78 | Termination of Employment | - 10 - |
| 1.79 | Top Heavy | - 11 - |
| 1.80 | Top Heavy Minimum Allocation | - 11 - |
| 1.81 | Top Heavy Ratio | - 11 - |
| 1.82 | Transfer Contribution | - 12 - |
| 1.83 | Transfer Contribution Account | - 12 - |
| 1.84 | Trustee | - 12 - |
| 1.85 | Trust | - 12 - |
| 1.86 | Trust Fund | - 12 - |
| 1.87 | Unallocated Employer Securities Account | - 12 - |
| 1.88 | USERRA | - 12 - |
| 1.89 | USERRA Reemployment Rights | - 13 - |
| 1.90 | Valuation Calendar Year | - 13 - |
| 1.91 | Valuation Date | - 13 - |
| 1.92 | Vested Aggregate Account | - 13 - |
| 1.93 | Vested, Vested Interest or Vesting | - 13 - |
| 1.94 | Vesting Computation Period | - 13 - |
| 1.95 | Year of Service | - 13 - |
| **Article 2** | | **- 16 -** |
| **Plan Participation** | | **- 16 -** |
| 2.1 | Eligibility and Entry Date Requirements | - 16 - |
| 2.2 | Waiver of Participation | - 16 - |
| 2.3 | Reemployment After Termination | - 16 - |
| **Article 3** | | **- 17 -** |
| **Contributions and Allocations** | | **- 17 -** |
| 3.1 | Employer Contributions | - 17 - |
| 3.2 | Earnings and Losses | - 19 - |
| 3.3 | Forfeitures and Their Usage | - 19 - |
| 3.4 | Top Heavy Minimum Allocation | - 19 - |
| 3.5 | Failsafe Allocation | - 21 - |
| 3.6 | Rollover Contributions | - 21 - |
| 3.7 | Transactions Involving Employer Securities | - 21 - |
| **Article 4** | | **- 28 -** |
| **Plan Benefits** | | **- 28 -** |
| 4.1 | Benefit Upon Normal Retirement | - 28 - |
| 4.2 | Benefit Upon Late Retirement | - 28 - |
| 4.3 | Benefit Upon Death | - 28 - |
| 4.4 | Benefit Upon Disability | - 28 - |
| 4.5 | Benefit Upon Termination of Employment | - 28 - |
| 4.6 | Determination of Vested Interest | - 28 - |
| **Article 5** | | **- 30 -** |
| **Distribution of Benefits** | | **- 30 -** |
| 5.1 | Distribution of Benefit Upon Retirement | - 30 - |
| 5.2 | Distribution of Benefit Upon Death | - 30 - |
| 5.3 | Distribution of Benefit Upon Disability | - 31 - |
| 5.4 | Distribution of Benefit Upon Termination of Employment | - 31 - |
| 5.5 | Mandatory Cash-Out of Benefits | - 32 - |

| | | |
|---|---|---|
| 5.6 | Restrictions on Immediate Distributions | - 32 - |
| 5.7 | Accounts of Rehired Participants | - 33 - |
| 5.8 | Spousal Consent Requirements | - 34 - |
| 5.9 | Required Minimum Distributions | - 35 - |
| 5.10 | Statutory Commencement of Benefits | - 37 - |
| 5.11 | Post-Termination Earnings | - 37 - |
| 5.12 | Distribution in the Event of Legal Incapacity | - 37 - |
| 5.13 | Missing Payees and Unclaimed Benefits | - 37 - |
| 5.14 | Direct Rollovers | - 37 - |
| 5.15 | Distributions of Stock | - 39 - |
| 5.16 | Cash Dividends on Employer Securities | - 40 - |
| 5.17 | Right of First Refusal | - 40 - |
| 5.18 | Put Option | - 40 - |
| 5.19 | Non-Terminable Rights and Protections | - 42 - |
| 5.20 | Mandatory Repurchase for Distributions Made by Certain Corporations. | - 42 - |
| 5.21 | Financial Hardship Distributions | - 42 - |
| 5.22 | Pre-Retirement Distributions | - 42 - |
| 5.23 | Distribution of Transfer Contributions | - 42 - |
| 5.24 | Transfers to Nonqualified Foreign Trusts | - 42 - |
| **Article 6** | | **- 43 -** |
| **Code § 415 Limitations** | | **- 43 -** |
| **6.1** | **Maximum Annual Additions** | **- 43 -** |
| **6.2** | **Adjustments to Maximum Annual Addition** | **- 43 -** |
| **6.3** | **Aggregation of Plans** | **- 43 -** |
| **6.4** | **No Allocations in Excess of Annual Addition Limits** | **- 45 -** |
| **6.5** | **Adjustment for Excessive Annual Additions** | **- 45 -** |
| **Article 7** | | **- 46 -** |
| **Employer Securities, Loans, Insurance and Directed Investments** | | **- 46 -** |
| 7.1 | Voting Employer Securities | - 46 - |
| 7.2 | Restrictions on Employer Securities Transactions | - 46 - |
| 7.3 | Exempt Loans | - 46 - |
| 7.4 | Diversification Rights of Qualified Participants | - 47 - |
| 7.5 | Loans to Participants | - 48 - |
| 7.6 | Insurance on Participants | - 48 - |
| 7.7 | Directed Investment Accounts | - 48 - |
| **Article 8** | | **- 49 -** |
| **Duties of the Administrator** | | **- 49 -** |
| 8.1 | Appointment, Resignation, Removal and Succession | - 49 - |
| 8.2 | General Powers and Duties | - 49 - |
| 8.3 | Functions of Committee | - 49 - |
| 8.4 | Multiple Administrators | - 49 - |
| 8.5 | Correcting Administrative Errors | - 49 - |
| 8.6 | Promulgating Notices and Procedures | - 49 - |
| 8.7 | Employment of Agents and Counsel | - 50 - |
| 8.8 | Compensation and Expenses | - 50 - |
| 8.9 | Claims Procedures | - 50 - |
| 8.10 | Qualified Domestic Relations Orders | - 50 - |
| 8.11 | Appointment of Investment Manager | - 50 - |
| **Article 9** | | **- 51 -** |
| **Trustee Provisions** | | **- 51 -** |
| 9.1 | Appointment, Resignation, Removal and Succession | - 51 - |
| 9.2 | Investment Alternatives of the Trustee | - 51 - |
| 9.3 | Valuation of the Trust | - 51 - |
| 9.4 | Compensation and Expenses | - 51 - |
| 9.5 | Payments From the Trust Fund | - 52 - |
| 9.6 | Payment of Taxes | - 52 - |
| 9.7 | Accounts, Records and Reports | - 52 - |
| 9.8 | Employment of Agents and Counsel | - 52 - |
| 9.9 | Division of Duties | - 52 - |
| 9.10 | Investment Manager | - 53 - |
| 9.11 | Exclusive Benefit Rule | - 53 - |
| 9.12 | Application of Cash | - 53 - |

**Article 10** ................................................................................................................................. **- 54 -**
**Adopting Employer Provisions** ................................................................................................... **- 54 -**
    10.1    Plan Contributions .............................................................................................. - 54 -
    10.2    Plan Amendments ................................................................................................ - 54 -
    10.3    Plan Expenses ..................................................................................................... - 54 -
    10.4    Employee Transfers ............................................................................................. - 54 -
    10.5    Multiple Employer Provisions Under Code §413(c) ............................................. - 54 -
    10.6    Termination of Adoption ....................................................................................... - 54 -

**Article 11** ................................................................................................................................. **- 56 -**
**Amendment, Termination, Merger and Transfers** ....................................................................... **- 56 -**
    11.1    Plan Amendment ................................................................................................. - 56 -
    11.2    Termination By Sponsoring Employer .................................................................. - 56 -
    11.3    Merger or Consolidation ...................................................................................... - 57 -
    11.4    Plan-to Plan Transfers ........................................................................................ - 57 -
    11.5    Transfer of Plan Sponsorship ............................................................................. - 58 -

**Article 12** ................................................................................................................................. **- 59 -**
**Miscellaneous Provisions** ......................................................................................................... **- 59 -**
    12.1    No Contract of Employment ................................................................................. - 59 -
    12.2    Title to Assets ...................................................................................................... - 59 -
    12.3    Fiduciaries and Bonding ...................................................................................... - 59 -
    12.4    Severability of Provisions .................................................................................... - 59 -
    12.5    Interpretation of the Plan ..................................................................................... - 59 -
    12.6    Legal Action ......................................................................................................... - 60 -
    12.7    Qualified Plan Status ........................................................................................... - 60 -
    12.8    Mailing of Notices to Administrator, Employer or Trustee .................................... - 60 -
    12.9    Participant Notices and Waivers of Notices ......................................................... - 60 -
    12.10   No Duplication of Benefits .................................................................................... - 60 -
    12.11   Evidence Furnished Conclusive .......................................................................... - 60 -
    12.12   Release of Claims ................................................................................................ - 60 -
    12.13   Multiple Copies of Plan And/or Trust ................................................................... - 60 -
    12.14   Limitation of Liability and Indemnification ............................................................ - 60 -
    12.15   Written Elections and Forms ................................................................................ - 60 -
    12.16   Assignment and Alienation of Benefits ................................................................ - 60 -
    12.17   Exclusive Benefit Rule ........................................................................................ - 61 -
    12.18   Notice and Consent Requirements ...................................................................... - 61 -
    12.19   Coordination With USERRA ................................................................................. - 63 -
    12.20   Dual and Multiple Trusts ...................................................................................... - 63 -

**Constellis**
**Employee Stock Ownership Plan**

**This Agreement** is made as of the _20th_ day of December, 2013, by **Constellis Group, Inc.** (hereafter the "Sponsoring Employer").

**Introduction**

The Sponsoring Employer wishes to establish an employee stock ownership plan designed to invest primarily in qualifying Employer Securities as provided under Code §4975(e)(7). Therefore, effective January 1, 2013, the Sponsoring Employer establishes this plan (hereafter, the "Plan") intended to comply with the requirements of the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code of 1986, both as amended by subsequent legislation, and intended to comply with all applicable rulings and Regulations thereunder.

**Article 1**
**Definitions**

1.1 **Administrator.** The term "Administrator" means the Sponsoring Employer unless a Committee or another Administrator is appointed under Section 8.1. The term "Administrator" also means a Qualified Termination Administrator ("QTA") charged with the task of holding the assets of an orphan plan as permitted by the Department of Labor. A QTA must be an eligible custodian such as a bank, mutual fund house, or insurance company.

1.2 **Adopting Employer.** The term "Adopting Employer" means an Affiliated Employer which adopts this Plan with the consent of the Sponsoring Employer. In addition to all the other terms and conditions set forth in the Plan, an Adopting Employers will also be subject to the terms and conditions set forth in Article 10. An Affiliated Employer is not considered an Adopting Employer unless it has specifically adopted the Plan.

1.3 **Affiliated Employer.** The term "Affiliated Employer" means any of the following: (1) a controlled group of corporations as defined in Code §414(b) that includes the Sponsoring Employer; (2) a trade or business (whether or not incorporated) under common control as described in Code §414(c) with the Sponsoring Employer; (3) any organization (whether or not incorporated) which is a member of an affiliated service group as described in Code §414(m) with the Sponsoring Employer; and (4) any other entity required to be aggregated as described in Code §414(o) with the Sponsoring Employer.

1.4 **Age.** The term "Age" means a Participant's actual attained age unless otherwise specified under the terms of the Plan.

1.5 **Allocation Period.** The term "Allocation Period" means a period of 12 consecutive months or less, as determined by the Administrator, for which (a) a contribution is made by an Employer and allocated under the terms of the Plan; (b) Forfeitures are allocated under the terms of the Plan; or (c) earnings and losses are allocated under the terms of the Plan.

1.6 **Anniversary Date.** The term "Anniversary Date" means December 31st of each Plan Year.

1.7 **Annual Additions.** The term "Annual Additions" means the sum of the following amounts credited on a Participant's behalf for any Limitation Year: (a) Employer contributions, even if such contributions are excess aggregate contributions (as described in Code §401(m)(6)(B)), or such excess aggregate contributions are corrected through distribution; (b) employee contributions, including voluntary employee contributions, but excluding any rollover contributions (as described in §415(c)(2)); (c) Forfeitures; (d) contributions allocated to any individual medical account, as defined in Code §415(l)(2), which is part of a pension or annuity plan established pursuant to Code §401(h) and maintained by the Employer; (e) amounts attributable to post-retirement medical benefits allocated to a separate account for a Key Employee, maintained by the Employer; and (f) the difference between the value of any assets transferred to the Plan and the consideration, where an Employee or the Employer transfers assets to the Plan in exchange for consideration that is less than the fair market value of the assets transferred to the Plan. Except to the extent required under Code §415, no other amounts credited to a Participant's Account for a Limitation Year are considered Annual Additions.

- 1 -

v

1.8 **Annuity Starting Date.** The term "Annuity Starting Date" means the first day of the first period for which a benefit is paid as an annuity, or in the case of a benefit not payable as an annuity, the first day all events have occurred which entitle the Participant to the benefit. The first day of the first period for which a benefit is payable because of Disability will be treated as the Annuity Starting Date only if it is not an auxiliary benefit.

1.9 **Beneficiary.** The term "Beneficiary" means the recipient designated by a Participant to receive the benefit payable upon the Participant's death, or the recipient designated by a Beneficiary to receive any benefit payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled. All Beneficiary designations will be made subject to the following provisions:

    (a) **Beneficiary Designations By a Participant.** Subject to the provisions of Section 5.8 regarding the rights of a Participant's Spouse, each Participant may designate a Beneficiary in writing with the Administrator. If a Participant designates his or her Spouse and the Participant and his or her Spouse are legally divorced subsequent to the date of the designation, then the designation of such Spouse as a Beneficiary hereunder will be deemed null and void unless the Participant, subsequent to the legal divorce, reaffirms the designation in writing. In the absence of any other designation, the Participant will be deemed to have designated the following Beneficiaries in the following order, provided however, that with respect to clauses (1) and (2) following, such Beneficiaries are then living: (1) the Participant's Spouse, (2) the Participant's issue per stirpes; and (3) the Participant's estate.

    (b) **Beneficiary Designations By a Beneficiary.** In the absence of a Beneficiary designation or other directive from a Participant to the contrary, any Beneficiary may name his or her own Beneficiary in accordance with Section 5.2(d) to receive any benefits payable in the event of the Beneficiary's death prior to the receipt of all the Participant's death benefits to which the Beneficiary was entitled.

    (c) **Beneficiaries Considered Contingent Until the Death of the Participant.** Notwithstanding any provision in this Section to the contrary, any Beneficiary named hereunder will be considered a contingent Beneficiary until the death of the Participant (or Beneficiary, as the case may be), and until such time will have no rights granted to Beneficiaries under the Plan.

1.10 **Benefiting Participant.** The term "Benefiting Participant" means a Participant who is eligible to receive an allocation of Employer contributions or Forfeitures as of the last day of an Allocation Period. The requirements to be a Benefiting Participant are set forth in Section 3.1(c).

1.11 **Break in Service.** The term *Break in Service* means (a) in determining eligibility under Section 2.1, an Eligibility Computation Period during which an Employee is not credited with more than 500 Hours of Service; and (b) in determining Vesting under Section 4.6, a Vesting Computation Period during which an Employee is not credited with more than 500 Hours of Service. If any computation period is less than 12 months, then the Hours of Service threshold set forth in the preceding sentence will be proportionately reduced if the Hours of Service threshold is greater than one. Notwithstanding the foregoing, an Employee who is reemployed under USERRA will not be treated as having incurred a Break in Service with respect to the period of his or her Qualified Military Service.

1.12 **Code.** The term "Code" means the Internal Revenue Code of 1986, as amended, and the Regulations and rulings promulgated thereunder by the Department of Treasury, or its agency thereunder. All citations to sections of the Code and Regulations are to such sections as they may from time to time be amended or renumbered.

1.13 **Code §401(a)(17) Compensation Limit.** The term "Code §401(a)(17) Compensation Limit" means the statutory limit that applies to each Participant's annual Compensation for a specific Compensation Determination Period which is taken into account under the Plan; such annual Compensation will not exceed $255,000. However, the $255,000 statutory limit on annual Compensation will be adjusted for cost-of-living increases in accordance with Code §401(a)(17)(B). The cost-of-living adjustment in effect for a calendar year applies to annual Compensation for the Compensation Determination Period that begins with or within such calendar year. If a Compensation Determination Period is less than 12 consecutive months, then the Code §401(a)(17) Compensation Limit will be multiplied by a fraction, the numerator of which is the number of months in the Compensation Determination Period, and the denominator of which is 12. If Compensation for any prior Compensation Determination Period is used in determining a Participant's Plan benefits for the current Plan Year, then the annual Compensation for such prior Compensation Determination Period is

v

subject to the applicable Code §401(a)(17) Compensation Limit as in effect for that prior Compensation Determination Period.

1.14 **Code §415(c)(3) Compensation.** The term "Code §415(c)(3) Compensation" means the following:

(a) **Top Heavy and Key Employee Determinations.** In determining Top Heavy Minimum Allocations and if a Employee is a Key Employee, the term Code §415(c)(3) Compensation means Form W-2 Compensation during the entire Compensation Determination Period that statutorily applies.

(b) **Code §415 Limitations.** In determining a Participant's Code §415 limitation for any Limitation Year, Code §415(c)(3) Compensation means Form W-2 Compensation during the entire Compensation Determination Period that statutorily applies.

(c) **Highly Compensated Employee Determinations.** In determining if a Participant is a Highly Compensated Employee (or for any other statutory determination not described in paragraphs (a) and (b) above), Code §415(c)(3) Compensation means Form W-2 Compensation during the entire Compensation Determination Period that statutorily applies.

(d) **Exclusions to Compensation Do Not Apply.** For all purposes, Code §415(c)(3) Compensation includes any amounts that are excluded from Compensation under Section 1.16.

(e) **Inclusion of Certain Amounts.** For all purposes, Code §415(c)(3) Compensation includes (1) elective deferrals as defined in Code §402(g)(3) and amounts contributed or deferred by the Employer at the election of the Employee which are not includible in gross income under Code §125 (including Deemed Code §125 Compensation), Code §132(f)(4), or Code §457; (2) Post-Severance Compensation; and (3) Differential Wage Payments, but only to the extent such payments do not exceed the amounts the individual would have received from the Employer if the individual had continued to perform services for the Employer.

(f) **Code §401(a)(17) Compensation Limit.** For all purposes, Code §415(c)(3) Compensation for any Limitation Year will not exceed the Code §401(a)(17) Compensation Limit that applies to that Limitation Year. If the Limitation Year is not the calendar year, then the Code §401(a)(17) Compensation Limit that applies to such Limitation Year is the Code §401(a)(17) Compensation Limit in effect for the respective calendar year in which such Limitation Year begins.

1.15 **Committee.** The term "Committee" means the administrative/advisory group that the Sponsoring Employer may establish, to which the Sponsoring Employer may appoint as Administrator or delegate certain of the Sponsoring Employer's responsibilities as Administrator. The Sponsoring Employer is permitted to select another name for such administrative/advisory group. The Sponsoring Employer may appoint one or more members to the Committee. Members of the Committee need not be Participants or Beneficiaries, and officers and directors of the Sponsoring Employer are not precluded from serving as members of the Committee.

1.16 **Compensation.** The term Compensation means amounts received by an Employee from the Employer during a Compensation Determination Period, determined in accordance with the following provisions:

(a) **Compensation Used to Determine Employer Contributions.** In determining Employer contributions, the term Compensation means a Participant's Form W-2 Compensation received during the Compensation Determination Period. For purposes of this paragraph, (1) the Compensation Determination Period is the calendar year ending with or within the Plan Year; and (2) any elective deferrals as defined under Code §402(g) and any amount contributed or deferred by the Employer at the election of the Employee which is not includible in gross income by reason of Code §125, Code §132(f)(4) or Code §457, will be included in Compensation.

(b) **Treatment of Differential Wage Payments as Compensation.** Any amount received by an individual as a Differential Wage Payment will not be treated as Compensation, and the Plan's definition of Compensation will not fail to satisfy Code §414(s) merely because such payments are excluded.

- 3 -

v

(c)     **Code §401(a)(17) Compensation Limit.** Notwithstanding any provision of this Section to the contrary, Compensation for any Compensation Determination Period (or Plan Year) will not exceed the applicable Code §401(a)(17) Compensation Limit.

**1.17    Compensation Determination Period.** The term "Compensation Determination Period" means the calendar year ending with or within the Plan Year, unless otherwise specifically set forth in the Plan with respect to a particular component or type of contribution. However, for purposes of a specific statutory determination (e.g. whether an Employee is a Highly Compensated Employee), the term "Compensation Determination Period" means the period stated in the Plan.

**1.18    Counting of Hours Method.** The term "Counting of Hours Method" means a method for crediting service for eligibility, for Vesting, for determining a Participant's allocation, and/or for applying the allocation conditions for an Employer contribution or Forfeiture. Under the Counting of Hours Method, an Employee is credited with the number of Hours of Service for which the Employee is paid or entitled to payment (or such other circumstances for which Hours of Service are credited), pursuant to the definition of Hour of Service.

**1.19    Current Obligations.** The term "Current Obligations" means obligations of the Trust Fund arising from the extension of credit to the Trust Fund and which are payable in cash within one year from the date an Employer contribution is made to the Plan.

**1.20    Deemed Code §125 Compensation.** The term "Deemed §125 Compensation" means an excludable amount that is not available to an Employee in cash in lieu of group health coverage under a Code §125 arrangement because that Employee is not able to certify that he or she has other health coverage. An amount is permitted to be treated as Deemed Code §125 Compensation only if the Employer does not request or collect information about the Employee's other health coverage as part of the enrollment process for the health plan.

**1.21    Deemed Reemployment.** The term "Deemed Reemployment" means, with respect to a Participant who is performing Qualified Military Service, that such Participant is deemed to have resumed employment with the Employer in accordance with the Participant's USERRA reemployment rights on the day preceding his or her death (or Disability) and to have Terminated Employment on the actual date of such death (or Disability).

**1.22    Determination Date.** The term "Determination Date" means, for any Plan Year subsequent to the first Plan Year of the Plan, the last day of the preceding Plan Year. For the first Plan Year of the Plan, the term "Determination Date" means the last day of that first Plan Year.

**1.23    Differential Wage Payment.** The term "Differential Wage Payment" means any payment (as defined in Code §3401(h)) which (a) is made by the Employer to an individual with respect to any period during which the individual is performing service in the uniformed services (as defined in chapter 43, title 38, United States Code) while on active duty for a period of more than 30 days, and (b) represents all or a portion of the wages the individual would have received from the Employer if the individual were performing service for the Employer.

**1.24    Disability.** The term "Disability" means a physical or mental condition arising after an Employee has become a Participant which qualifies the Participant for benefits under an Employer-sponsored long-term disability plan which is administered by an independent third party.

**1.25    Distribution Calendar Year.** The term "Distribution Calendar Year" means, for purposes of required minimum distributions under Section 5.9, a calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year that contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the first Distribution Calendar Year is the calendar year in which distributions are required to begin under Section 5.9(b)(2)(B). The required minimum distribution for the Participant's first Distribution Calendar Year will be made on or before the Participant's Required Beginning Date. The required minimum distribution for other Distribution Calendar Years, including the required minimum distribution for the Distribution Calendar Year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that Distribution Calendar Year.

**1.26    Eligibility Computation Period.** The term "Eligibility Computation Period" means a period of 12 consecutive months which is used for purposes of determining eligibility to participate in the Plan (or a component of the

- 4 -

v

Plan). An Employee's initial Eligibility Computation Period will begin on his or her Employment Commencement Date. The second Eligibility Computation Period will begin on the first day of the Plan Year which begins prior to the first anniversary of the Employee's Employment Commencement Date (regardless of whether the Employee is credited with a specific number of Hours of Service during the initial Eligibility Computation Period) and each subsequent Eligibility Computation Period will consist of each subsequent Plan Year.

1.27   **Eligible Employee.** The term "Eligible Employee" means any Employee, on or after the effective date of the Plan, who is a member of an eligible class of Employees and who is not excluded from participating in the Plan. If the Plan utilizes the failsafe allocation provisions of Section 3.5, then the term "Eligible Employee" means any Employee who receives a failsafe allocation, even if such Employee was previously excluded from participating in the Plan. Furthermore, the Sponsoring Employer may elect at any time to reclassify any Employee who had been excluded from participating in the Plan (or a component of the Plan) to be an Eligible Employee through a Plan amendment that is retroactively applied for one or more prior Plan Years because the Plan (or a component of the Plan) failed to satisfy for such Plan Year one of the tests set forth in Code §410(b)(1)(A), (B) or (C), or for any other reason the Sponsoring Employer deems it to be required to maintain the tax exempt status of the Plan. The term "Eligible Employee" shall not include any Employees who are employed by an Affiliated Employer that is not an Adopting Employer.

1.28   **Employment Commencement Date.** The term "Employment Commencement Date" means the first day that an Employee is credited with an Hour of Service by an Employer or an Affiliated Employer.

1.29   **Employee.** The term "Employee" means (a) any person who is reported on the payroll records of the Sponsoring Employer as an employee who is deemed by the Sponsoring Employer to be a common law employee; (b) any person that is reported on the payroll records of an Affiliated Employer as an employee who is deemed by the Affiliated Employer to be a common law employee (even if the Affiliated Employer is not an Adopting Employer); (c) any person who is classified as a Leased Employee by either the Sponsoring Employer or an Affiliated Employer but who (1) is not covered by a plan described in Code §414(n)(5), or (2) is covered by a plan described in Code §414(n)(5) but Leased Employees constitute more than 20% of the Employer's non-highly compensated workforce; and (d) any individual who is receiving Differential Wage Payments from the Sponsoring Employer or an Affiliated Employer. However, the term "Employee" will not include any person classified by the Sponsoring Employer or Affiliated Employer as an independent contractor. If an independent contractor is later determined by the Sponsoring Employer, an Affiliated Employer, a court, or governmental agency to be an Employee or to have been an Employee, and so long as such individual is an Eligible Employee, then such individual will only be eligible for Plan participation prospectively and will participate in the Plan as of the later of (a) the date that such determination is made, or (b) the entry date set forth in Section 2.1(c) that coincides with or next follows such determination and after such individual has satisfied any eligibility requirements set forth in Section 2.1(b).

1.30   **Employer.** The term "Employer" means the Sponsoring Employer and any Adopting Employer.

1.31   **Employer Securities.** The term "Employer Securities" means common stock issued by the Sponsoring Employer having a combination of voting power and dividend rights equal to or in excess of: (1) that class of common stock of the Employer having the greatest voting power; and (2) that class of common stock of the Employer having the greatest dividend rights. Noncallable preferred stock shall also be treated as "Employer Securities" if such stock is convertible at any time into stock which meets the qualifications above, and if such conversion is at a conversion price which (at the date of the acquisition by the Trust) is reasonable. For purposes of the preceding sentence, preferred stock shall be treated as noncallable if after the call there will be a reasonable opportunity for a conversion which meets such requirements. The term "Employer Securities" means the definition as defined in this Section but shall not be construed to include more than one class of stock if the Company is operating as an S Corporation.

1.32   **Employer Securities Account.** The term "Employer Securities Account" means the account to which is credited a Participant's share of Employer Securities contributed to or acquired by the Plan.

1.33   **Exempt Loan.** The term "Exempt Loan" means a loan made to the Plan by a disqualified person or that is guaranteed by a disqualified person and which satisfies the requirements of Regulation §54.4975-7(b) and Department of Labor regulation §2550.408b-3. The proceeds of an Exempt Loan can only be used (a) to purchase Employer Securities; (b) to repay such Exempt Loan; or (c) to repay a prior Exempt Loan.

**1.34   Forfeiture.** The term "Forfeiture" means generally the amount by which a Participant's Account balance attributable to Employer contributions exceeds his or her Vested Interest in the Participant's Account balance attributable to Employer contributions as determined at the time set forth in Section 3.3. The term "Forfeiture" also means any amount that is removed from a Participant's Account pursuant to any Employee Plans Compliance Resolution System (EPCRS) program or any other correction guidance that is issued by the Internal Revenue Service. However, no Forfeitures will occur solely because a Participant transfers employment from an Employer to an Affiliated Employer (or vice versa).

**1.35   Form W-2 Compensation.** The term "Form W-2 Compensation" means wages within the meaning of Code §3401(a) and all other payments of compensation actually paid or made available in gross income to an employee by an employer in the course of the employer's trade or business for which the employer is required to furnish the employee a Form W-2 under Code §6041(d), §6051(a)(3) and §6052. Form W-2 Compensation must be determined without regard to rules limiting remuneration included in wages based on the nature or location of employment or services performed (like the exception for agricultural labor in Code §3401(a)(2)).

**1.36   HCE.** The term "HCE" means a Highly Compensated Employee.

**1.37   Highly Compensated Employee.** The term "Highly Compensated Employee" means any Employee who (a) was a 5% owner as defined in Code §416(i)(1)(B)(i) at any time during the Plan Year or during the look-back year. In determining whether an Employee is a Highly Compensated Employee based on his or her status as a 5% owner, the look-back year will be the 12-month period immediately preceding the Plan Year for which the determination is being made; or (b) for the look-back year, had Code §415(c)(3) Compensation in excess of $80,000 as adjusted under Code §415(d) (except that the base period will be the calendar quarter ending September 30, 1996). In determining if an Employee is a Highly Compensated Employee based on Code §415(c)(3) Compensation, the look-back year will be the 12-month period immediately preceding the Plan Year for which the determination is being made, and the top paid group election in Code §414(q)(3) will be applied. In determining if an individual is a highly compensated former Employee, the rules for determining which Employees are Highly Compensated Employees for the Plan Year for which the determination is being made (in accordance with Temporary Regulation §1.414(q)-1T, A-4 and Notice 97-45) will be applied. If the Employer maintains more than one qualified retirement plan, this Section will be applied in a uniform, consistent manner to all plans.

**1.38   Hour of Service.** With respect to any provision of the Plan in which service is determined under the Counting of Hours Method, the meaning of the term "Hour of Service" will be determined in accordance with the following provisions:

(a)   **Determination of Hours.** The term Hour of Service means (1) each hour an Employee is paid, or entitled to payment, for the performance of duties for the Employer or an Affiliated Employer, which will be credited to the Employee for the computation period in which the duties are performed; (2) each hour for which an Employee is paid, or entitled to payment, by the Employer or an Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, except that no more than 501 Hours of Service will be credited under this clause (2) for any single continuous period (whether or not such period occurs in a single computation period); and (3) each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer or an Affiliated Employer, except that the same hours will not be credited both under clause (1) or clause (2) and under this clause (3), and these hours will be credited for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made. Hours of Service will be calculated and credited pursuant to DOL Regulation §§2530.200b-2(b) and (c), which are incorporated in this Plan by reference.

v

(b) **Maternity or Paternity Leave.** In determining if a Break in Service for participation and Vesting has occurred in a computation period, an individual on Maternity or Paternity Leave will receive credit for up to 501 Hours of Service which would otherwise have been credited but for such absence, or in any case in which such Hours of Service cannot be determined, 8 hours per day of such absence. Hours of Service credited for Maternity of Paternity Leave will be credited in the computation period in which the absence begins if the crediting is necessary to prevent a Break in Service in that period, or in all other cases, in the following computation period.

(c) **Use of Equivalencies.** Notwithstanding paragraph (a), the Administrator may elect for all Employees or for one or more different classifications of Employees (provided such classifications are reasonable and are consistently applied) to apply one or more of the following equivalency methods in determining the Hours of Service of an Employee. Under such equivalency methods, an Employee will be credited with (1) 190 Hours of Service for each month he or she is paid or entitled to payment for at least one Hour of Service; or (2) 95 Hours of Service for each semi-monthly period in which he or she is paid or entitled to payment for at least one Hour of Service; or (3) 45 Hours of Service for each week he or she is paid or entitled to payment for at least one Hour of Service; or (4) 10 Hours of Service for each day he or she is paid or entitled to payment for at least one Hour of Service.

1.39 **Immediately Distributable.** The term "Immediately Distributable" means any part of the Participant's benefit that could be distributed to the Participant (or the Participant's surviving Spouse) before the Participant reaches (or would have reached if not deceased) the later of his or her Normal Retirement Age or Age 62.

1.40 **Key Employee.** The term "Key Employee" means any Employee, former Employee or deceased Employee who at any time during the Plan Year that includes the Determination Date was (a) an officer of the Employer having annual Compensation greater than the dollar amount set forth in Code §416(i)(1), as adjusted; (b) a 5% owner as defined in Code §416(i)(1)(B)(I); or (c) a 1% owner as defined in Code §416(i)(1)(B)(ii) whose annual Compensation is more than $165,000, as adjusted. The determination of who is a Key Employee will be made in accordance with Code §416(i)(1).

1.41 **Leased Employee.** The term "Leased Employee" means any person within the meaning of Code §414(n)(2) and §414(o) who is not reported on the payroll records of the Employer as a common law employee and who provides services to the Employer if (a) the services are provided under an agreement between the Employer and a leasing organization; (b) the person has performed services for the Employer or for the Employer and related persons as determined under Code §414(n)(6) on a substantially full time basis for a period of at least one year; and (c) the services are performed under the primary direction or control of the Employer. Contributions or benefits provided to a Leased Employee by the leasing organization which are attributable to services performed for the Employer will be treated as provided by the Employer. A Leased Employee will not be considered an Employee of the recipient if he or she is covered by a money purchase plan providing (a) a non-integrated Employer contribution rate of at least 10% of Code §415 Compensation, including amounts contributed by the Employer pursuant to a salary deferral agreement which are excludible from the Leased Employee's gross income under a cafeteria plan covered by Code §125 (including Deemed Code §125 Compensation), a cash or deferred plan under Code §401(k), a SEP under Code §408(k) or a tax-deferred annuity under Code §403(b), and also including any elective amounts that are not includible in the gross income of the Leased Employee because of Code §132(f)(4); (b) immediate participation; and (c) full and immediate vesting. This exclusion is only available if Leased Employees do not constitute more than 20% of the recipient's non-highly compensated work force.

1.42 **Life Expectancy.** The term "Life Expectancy" means, for purposes of required minimum distributions under Section 5.9, life expectancy as computed by use of the Single Life Table in Regulation §1.401(a)(9)-9.

1.43 **Limitation Year.** The term "Limitation Year" means the calendar year ending with or within the Plan Year.

1.44 **Maternity or Paternity Leave.** The term "Maternity or Paternity Leave" means that an Employee is absent from work because of the Employee's pregnancy; the birth of the Employee's child; the placement of a child with the Employee in connection with the adoption of such child by the Employee; or the need to care for such child for a period beginning immediately following the child's birth or placement as set forth above.

1.45 **Named Fiduciary.** The term "Named Fiduciary" means the Administrator or other fiduciary named by the Administrator to control and manage the operation and administration of the Plan. To the extent authorized

v

by the Administrator, a Named Fiduciary may delegate its responsibilities to a third party or parties. The Employer will also be a Named Fiduciary.

**1.46** **NHCE.** The term "NHCE" means a Non-Highly Compensated Employee.

**1.47** **Non-Highly Compensated Employee.** The term "Non-Highly Compensated Employee" means any Employee who is not a Highly Compensated Employee.

**1.48** **Non-Key Employee.** The term "Non-Key Employee" means any Employee who is not a Key Employee, including former Key Employees. In making the allocation in Section 3.4, Non-Key Employee means a Non-Key Employee who either is a Participant or would be a Participant but for the reasons in Section 3.4(a).

**1.49** **Non-Spouse Designated Beneficiary.** The term "Non-Spouse Designated Beneficiary" means a Beneficiary who is other than the Participant's Spouse and is a Designated Beneficiary under Code §401(a)(9)(E).

**1.50** **Normal Retirement Age.** The term "Normal Retirement Age" means the later of Age 65 or the fifth anniversary of the date the Participant commenced participation in the Plan. There is no mandatory retirement Age under the terms of the Plan.

**1.51** **Normal Retirement Date.** The term "Normal Retirement Date" means the first day of the month coinciding with or next following the date a Participant reaches Normal Retirement Age.

**1.52** **Notice/Form.** The term "Notice/Form" means any notice, report, statement, or other document required to be provided to a Recipient under this Plan.

**1.53** **Other Investments Account.** The term "Other Investments Account" means the aggregate value of all of a Participant's accounts other than the Employer Securities Account.

**1.54** **Participant.** The term "Participant" means anyone who has met the eligibility and participation requirements under Article 2. In addition, if the Plan utilizes the failsafe allocation provisions of Section 3.5, then the term Participant means any Employee who receives a failsafe allocation, even if such Employee is not an Eligible Employee and/or has not satisfied the eligibility and participation requirements of the Plan. Furthermore, the Sponsoring Employer may elect at any time to reclassify any Employee who had been excluded from participating in the Plan (or a component of the Plan) to be a Participant through a Plan amendment that is retroactively applied for one or more prior Plan Years because the Plan (or a component of the Plan) failed to satisfy for such Plan Year one of the tests set forth in Code §410(b)(1)(A), (B) or (C), or for any other reason the Sponsoring Employer deems it to be required to maintain the tax exempt status of the Plan. However, an individual who is no longer an Employee will cease to be a Participant if his or her entire Plan benefit (a) is fully guaranteed by an insurance company and legally enforceable at the sole choice of such individual against such insurance company, provided that a contract, policy, or certificate describing the individual's Plan benefits has been issued to such individual; (b) is paid in a lump sum distribution which represents such individual's entire interest in the Plan; or (c) is paid in some other form of distribution and the final payment thereunder has been made.

**1.55** **Participant's Account.** The term "Participant's Account" means the aggregate balance in a Participant's Employer Securities Account and Other Investments Account and any other accounts that the Administrator may determine necessary from time.

**1.56** **Participant's Account Balance.** The term "Participant's Account Balance" means, for required minimum distributions purposes under Section 5.9, the balance of the Participant's Account as of the last Valuation Date in the Valuation Calendar Year, increased by contributions made and allocated or forfeitures allocated to the Account as of dates in the Valuation Calendar Year after the Valuation Date and decreased by distributions made in the Valuation Calendar Year after the Valuation Date. The Participant's Account Balance for the Valuation Calendar Year includes any amounts rolled over or transferred to the Plan in the Valuation Calendar Year or the Distribution Calendar Year if distributed or transferred in the Valuation Calendar Year.

**1.57** **Participant Election.** The term "Participant Election" includes any consent, election, request, agreement, or similar communication made by or from a Participant, Beneficiary, alternate payee, or an individual entitled to benefits under the Plan.

1.58 **Permissive Aggregation Group.** The term "Permissive Aggregation Group" means a Required Aggregation Group plus any Employer plan or plans which when considered as a group with the Required Aggregation Group would continue to satisfy the requirements of Code §401(a)(4) and §410.

1.59 **Plan.** The term "Plan" means the Constellis Employee Stock Ownership Plan, established by the Sponsoring Employer, and as amended from time to time.

1.60 **Plan Year.** The term Plan Year means the Plan's twelve month accounting year beginning January 1st and ending the following the following December 31st. If the Plan Year is changed, a short Plan Year will be established beginning the day after the last day of the Plan Year in effect before the change and ending on the last day of the new Plan Year.

1.61 **Post-Severance Compensation.** The term "Post-Severance Compensation" means the following amount(s) that would have been included in the definitions of Compensation and Code §415(c)(3) Compensation, as applicable, if the amounts were paid prior to the Employee's Termination of Employment with the Employer and that are paid to the Employee by the later of 2½ months after the Employee's date of Termination of Employment with the Employer or the end of the Limitation Year that includes the Employee's date of Termination of Employment with the Employer:

   (a) **Regular Pay after Severance of Employment.** Regular pay after Termination of Employment will be considered Post-Severance Compensation if (1) the payment is regular compensation for services during the Employee's regular working hours, or compensation for services outside the Employee's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments; and (2) the payment would have been paid to the Employee prior to Termination of Employment if the Employee had continued in employment with the Employer.

   (b) **Leave Cashouts and Deferred Compensation.** Leave cashouts and deferred compensation will be considered Post-Severance Compensation if the amount is either (1) payment for unused accrued bona fide sick, vacation, or other leave, but only if the Employee would have been able to use the leave if employment had continued; or (2) received by an Employee pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid to the Employee at the same time if the Employee had continued in employment with the Employer and only to the extent that the payment is includible in the Employee's gross income.

1.62 **Qualified Domestic Relations Orders or QDRO.** The term "Qualified Domestic Relations Order" or "QDRO" is a signed domestic relations order issued by a State Court which creates, recognizes or assigns to an alternate payee(s) right to receive all or part of a Participant's Plan benefit. An alternate payee is a Spouse, former Spouse, child, or other dependent of a Participant who is treated as a Beneficiary under the Plan as a result of the QDRO. The term "Qualified Domestic Relations Order" also includes (a) an order that is issued with respect to another domestic relations order ("DRO") or QDRO, including an order that revises or amends a prior order; (b) an order issued after the participant's annuity starting date or death; or (c) an order that names as the alternate payee a person deemed financially dependent upon the participant, provided that the other requirements for a QDRO as set forth in the Plan's QDRO procedure and/or as defined in Code §414(p) are satisfied.

1.63 **Qualified Military Service.** The term "Qualified Military Service" means any service in the uniformed services (as defined in chapter 43 of title 38, United States Code) by any individual if such individual is entitled to USERRA Reemployment Rights under such chapter with respect to such service.

1.64 **Qualified Reservist.** The term "Qualified Reservist" means an individual who is a member of a reserve component (as defined in §101 of title 37, United States Code) and who is ordered or called to active duty after September 11, 2001 either for a period in excess of 179 days or for an indefinite period.

1.65 **Readily Tradable on an Established Securities Market.** The term "Readily Tradable on an Established Securities Market" means Employer Securities that are readily tradable on an established securities market within the meaning of Regulation §1.401(a)(35)-1(f)(5) for purposes of Code §401(a)(22), §401(a)(28)(C), §409(h)(1)(B), §409(l) and §1042(c)(1)(A).

v

1.66 **Recipient.** The term "Recipient" means a Plan Participant, Beneficiary, Employee, alternate payee, or any other person to whom a Notice/Form is to be provided.

1.67 **Required Aggregation Group.** The term "Required Aggregation Group" means (1) each Employer qualified deferred compensation plan in which at least one Key Employee participates or participated at any time during the Plan Year containing the Determination Date or any of the four preceding Plan Years (regardless of whether the plan has terminated); and (2) any other Employer qualified deferred compensation plan that enables a plan described in (1) to satisfy Code §401(a)(4) or §410.

1.68 **Required Beginning Date.** The term "Required Beginning Date" means the later of Age 70½ or actual retirement. However, for a Participant who is a 5% owner, the term Required Beginning Date means April 1st of the calendar year following the later of the calendar year in which the Participant reaches Age 70½.

1.69 **Regulation.** The term "Regulation" means regulations as promulgated by the Secretary of the Treasury, the Secretary of the Department of Labor, or their delegates, as amended and/or renumbered from time to time.

1.70 **Rollover Contribution (or Rollover).** The terms "Rollover Contribution" and "Rollover" mean an amount eligible for tax free rollover treatment which is transferred to a retirement plan.

1.71 **Rule of Parity.** The term "Rule of Parity" means a rule that is used for purposes of determining an Employee's eligibility to participate in the Plan, Vesting, and benefit accrual/allocation (if applicable) to determine the Years of Service (or 1-Year Periods of Service) of a non-Vested Employee who Terminates Employment and is subsequently reemployed by the Employer or an Affiliated Employer after incurring a Break in Service, determined as follows: Years of Service (or 1-Year Periods of Service), as applicable, completed prior to the Employee's Breaks in Service will not be counted if the Employee's total number of consecutive Breaks in Service equals or exceeds the greater of five or the Employee's aggregate number of Years of Service (or 1-Year Periods of Service) credited prior to incurring the Breaks in Service. In computing an Employee's aggregate number of Years of Service (or 1-Year Periods of Service) under this Section, Years of Service (or 1-Year Periods of Service) previously disregarded under prior applications of the Rule of Parity will not be counted.

1.72 **S Corporation.** The term "S Corporation" means an Employer which, with the consent of its shareholders, properly made the election under Code §1361(a) to be treated as such for federal income tax purposes.

1.73 **S Corporation Distribution.** The term "S Corporation Distribution" means mean any distribution of cash by an S Corporation to this Plan in the amount determined by its Board of Directors from time to time and/or the income of an S Corporation as passed through to its shareholders under the principles of Code §1366.

1.74 **Sponsoring Employer.** The term "Sponsoring Employer" means Constellis Group, Inc. (and any successor thereto that elects to assume sponsorship of this Plan).

1.75 **Spouse.** The term "Spouse" means the person to whom a Participant is legally married. Furthermore, a former Spouse will be treated as the Participant's Spouse or surviving Spouse to the extent provided under a Qualified Domestic Relations Order.

1.76 **Terminated (or Terminates) Employment.** The term "Terminated Employment" and the term "Terminates Employment" mean that a person has incurred a Termination of Employment. A Participant who dies while performing Qualified Military Service will be deemed to have resumed employment with the Employer on the day preceding the date of his or her death and will be deemed to have Terminated Employment on the actual date of his or her death. In addition, a Participant who suffers a Disability while performing Qualified Military Service will be deemed to have resumed employment with the Employer on the day preceding the date of his or her Disability and will be deemed to have Terminated Employment on the actual date of such Disability.

1.77 **Terminated Participant.** The term "Terminated Participant" means a Participant who has ceased to be an Employee for reasons other than retirement occurring on or after Normal Retirement Age, death or Disability.

1.78 **Termination of Employment.** The term "Termination of Employment" means that a person ceases to be an Employee with the Employer or an Affiliated Employer, taking into account the following: (1) whether the

v

person's new employer has been substituted as the sponsor of the Plan (or a spun-off portion of the Plan); and (2) whether there has been a transfer of Plan assets and liabilities of the person's benefits from this Plan to a plan sponsored by the person's new employer.

1.79  **Top Heavy.** The term "Top Heavy" means for any Plan Year that (1) the Top Heavy Ratio exceeds 60% and the Plan is not part of a Required Aggregation Group or Permissive Aggregation Group; or (2) the Plan is a part of a Required Aggregation Group but not a Permissive Aggregation Group and the Top Heavy Ratio for the group exceeds 60%; or (3) the Plan is a part of a Required Aggregation Group and a Permissive Aggregation Group and the Top Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

1.80  **Top Heavy Minimum Allocation.** The term "Top Heavy Minimum Allocation" means an amount of Employer contributions and Forfeitures in the Plan that is subject to the following rules: (a) if a defined benefit plan is not part of a Required Aggregation Group or a Permissive Aggregation Group with this Plan, then the Top Heavy Minimum Allocation equals an Employee's Code §415(c)(3) Compensation multiplied by the lesser of (1) 3% or (2) the largest percentage of Employer contributions (including any Elective Deferrals made on behalf of a Key Employee to a 401(k) Plan maintained by the Employer) and Forfeitures that are allocated to the Participant's Account of a Key Employee for that Plan Year, expressed as a percentage of such Key Employee's Code §415(c)(3) Compensation; (b) elective deferrals that are made on behalf of a Participant to a 401(k) Plan cannot be used to satisfy the Top Heavy Minimum Allocation; (c) Social Security contributions or benefits pursuant to Code §416(e) are disregarded; and (d) to the extent required to be nonforfeitable under Code §416(b)), the Top Heavy Minimum Allocation may not be forfeited under Code §411(a)(3)(B) or §411(a)(3)(D).

1.81  **Top Heavy Ratio.** In determining if this Plan is Top Heavy, the "Top Heavy Ratio" will be determined in accordance with the following provisions:

(a)  **Employer Only Maintains DC Plans.** If the Employer maintains one or more defined contribution plans (including any Simplified Employee Pension Plan) and the Employer has not maintained any defined benefit plan which during the 5-year period ending on the Determination Date(s) has or has had accrued benefits, then the Top Heavy Ratio for this Plan alone, for the Required Aggregation Group, or for the Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the Participant's Account balances of all Key Employees as of the Determination Date(s) (including any part of any Participant's Account balance distributed during the 1-year period ending on the Determination Date(s); however, including any part of any Participant's Account balance distributed during the 5-year period ending on the Determination Date in the case of a distribution made for a reason other than termination from employment, death, or Disability), and the denominator of which is the sum of all Participant's Account balances (including any part of any Participant's Account balance distributed in the 1-year period ending on the Determination Date(s); however, including any part of any Participant's Account balance distributed during the 5-year period ending on the Determination Date in the case of a distribution made for a reason other than termination from employment, death, or Disability), both computed in accordance with Code §416 and the Regulations thereunder. Both the numerator and denominator of the Top Heavy Ratio are increased to reflect any contribution that is not actually made as of the Determination Date, but which is required to be taken into account on that Determination Date under Code §416 and the Regulations thereunder.

(b)  **Employer Maintains Both DC and DB Plans.** If the Employer maintains one or more defined contribution plans (including any Simplified Employee Pension Plan) and the Employer maintains or has maintained one or more defined benefit plans which during the 5-year period ending on the Determination Date(s) has or has had any accrued benefits, then the Top Heavy Ratio for any Required Aggregation Group or for any Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the Participant's Account balances under the aggregated defined contribution plan or plans for all Key Employees, determined in accordance with paragraph (a) above, and the present value of accrued benefits under the aggregated defined benefit plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the Participant's Account balances under the aggregated defined contribution plan or plans for all Participants, determined in accordance with paragraph (a) above, and the present value of accrued benefits under the defined benefit plan or plans for all Participants as of the Determination Date(s), all determined in accordance with Code §416 and the Regulations thereunder. The accrued benefits under

- 11 -

a defined benefit plan in both the numerator and denominator of the Top Heavy Ratio are increased for any distribution of an accrued benefit made in the 1-year period ending on the Determination Date (or the 5-year period ending on the Determination Date in the case of a distribution made for a reason other than termination from employment, death, or Disability).

(c) **Value of Participant's Account Balances and the Present Value of Accrued Benefits.** For purposes of paragraphs (a) and (b), the value of the Participant's Account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the 12-month period ending on the Determination Date, except as provided in Code §416 and the Regulations for the first and second Plan Years of a defined benefit plan. The Participant's Account balances and accrued benefits will be disregarded for a Participant (1) who is not a Key Employee during the 12-month period ending on the Determination Date but was a Key Employee in a prior year, or (2) who has not been credited with at least one Hour of Service with any Employer maintaining the Plan at any time during the 1-year period ending on the Determination Date. The calculation of the Top Heavy Ratio and the extent to which distributions and Transfer Contributions are taken into account will be made in accordance with Code §416 and the Regulations thereunder. Deductible employee contributions will not be taken into account in computing the Top Heavy Ratio. When aggregating plans, the value of the Participant's Account balances and accrued benefits will be calculated with reference to the Determination Dates that fall within the same calendar year. The accrued benefit of a Participant other than a Key Employee will be determined under (1) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer, or (2) if there is no such method, then as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Code §411(b)(1)(C).

(d) **Computing Present Values.** In establishing the present value of accrued benefits to compute the Top Heavy Ratio, benefits not in pay status are handled on the basis that retirement occurs on the automatic vesting date or, if later, the date of reference. Benefits are discounted only for interest and mortality.

**1.82 Transfer Contribution.** The term "Transfer Contribution" means a non-taxable transfer of a Participant's benefit directly or indirectly from another qualified plan to this Plan. Transfer Contributions include assets transferred to this Plan from another plan as a result of a merger or similar transaction involving this Plan and the other plan. No direct or indirect transfer as defined in Code §401(a)(11) of assets from a defined benefit plan, a money purchase plan, a target benefit plan, a stock bonus plan, or a profit sharing plan that provided for a life annuity form of payment to the Participant will be permitted. Elective deferrals (including qualified matching contributions, qualified matching contributions, and 401(k) safe harbor contributions) which are transferred to this Plan in a direct or indirect trustee-to-trustee transfer from another qualified plan and which remain subject to the limitations in Regulation §1.401(k)-1(d) will be considered a Transfer Contribution. The assets that are transferred from another qualified plan in a plan-to-plan elective transfer pursuant to Section 11.4 will also be considered a Transfer Contribution.

**1.83 Transfer Contribution Account.** The term "Transfer Contribution Account" means the account to which a Participant's Transfer Contributions, if any, are allocated.

**1.84 Trustee.** The term "Trustee" means the persons or entity named as trustee or trustees of the Trust. The term Trustee will also mean custodian if a custodian is appointed by the Sponsoring Employer.

**1.85 Trust.** The term "Trust" means the Constellis Employee Stock Ownership Trust.

**1.86 Trust Fund.** The term "Trust Fund" means all the property of every kind held or acquired by the Trustee pursuant to the Trust.

**1.87 Unallocated Employer Securities Account.** The term "Unallocated Employer Securities Account" means an account containing Employer Securities acquired with the proceeds of an Exempt Loan and which has not been allocated to the Participants' Employer Securities Accounts.

**1.88 USERRA.** The term "USERRA" means the Uniformed Services Employment and Reemployment Rights Act of 1994.

v

**1.89    USERRA Reemployment Rights.** The term "USERRA Reemployment Rights" means the rights and benefits to which an individual covered under USERRA is entitled upon his or her return from Qualified Military Service. An individual will not be entitled to USERRA Reemployment Rights if (a) he or she did not provide advance notice of his or her military service to the Employer; or (b) he or she had more than five years of cumulative Qualified Military Service measured from his or her date of hire to his or her date of return to employment with the Employer.

**1.90    Valuation Calendar Year.** The term "Valuation Calendar Year" means, for purposes of required minimum distributions under Section 5.9, the calendar year immediately preceding a Distribution Calendar Year.

**1.91    Valuation Date.** The term "Valuation Date" means the date when the Trustee determines the value of the Trust Fund. A Valuation Date of the Trust Fund must occur as of the last day of each Plan Year. However, the Administrator can value all or any portion of the assets of the Trust Fund more frequently, including, but not limited to, semi-annually, quarterly, monthly, or daily; the Administrator may implement any additional Valuation Dates for any reason. For purposes of calculating the Top Heavy Ratio, the term "Valuation Date" means the date when the Participant's Account balances or accrued benefits are valued.

**1.92    Vested Aggregate Account.** The term Vested Aggregate Account means a Participant's Vested Interest in the aggregate value of his or her Participant's Account.

**1.93    Vested, Vested Interest or Vesting.** The term "Vested," "Vested Interest" or "Vesting" means a Participant's nonforfeitable percentage in an account maintained on his or her behalf under the Plan. A Participant's Vested Interest in his or her Participant's Account will be determined in accordance with Section 4.6.

**1.94    Vesting Computation Period.** The term "Vesting Computation Period" means a period of twelve consecutive months which is used for purposes of determining a Participant's Vested Interest in the Plan (or a component of the Plan). Each Vesting Computation Period will consist of each Plan Year.

**1.95    Year of Service.** The term "Year of Service" means, with respect to any provision of the Plan in which service is determined by the Counting of Hours Method, a 12-consecutive month computation period during which an Employee is credited with at least a specified number of Hours of Service with the Employer, an Affiliated Employer, or an Adopting Employer, determined in accordance with the following provisions:

(a)    **Year of Service for Eligibility.** For any Plan Year in which the eligibility requirements under Section 2.1 are based on Years of Service, a Year of Service is an Eligibility Computation Period during which an Employee is credited with at least 1,000 Hours of Service. An Employee's initial Eligibility Computation Period will begin on his or her Employment Commencement Date. If the Employee is credited with at least 1,000 Hours of Service in both the initial Eligibility Computation Period and the second Eligibility Computation Period, the Employee will be credited with two Years of Service for eligibility purposes. If any Eligibility Computation Period is less than 12 consecutive months, the Hours of Service requirement set forth herein will be proportionately reduced (if it is greater than one) in determining whether an Employee is credited with a Year of Service during such short Eligibility Computation Period. In determining the eligibility requirements and the applicable entry date under Section 2.1, an Employee will be deemed to have completed a Year of Service on the last day of the applicable Eligibility Computation Period during which the Employee is credited with the required Hours of Service.

(b)    **Year of Service for Vesting.** For any Plan Year in which a Participant's Vested Interest under Section 4.6 is based on Years of Service, a Year of Service is a Vesting Computation Period during which an Employee is credited with at least 1,000 Hours of Service. If a Vesting Computation Period is less than 12 consecutive months, the Hours of Service requirement set forth herein will be proportionately reduced (if it is greater than one) in determining whether an Employee is credited with a Year of Service during such short Vesting Computation Period. Alternatively, with respect to a short Vesting Computation Period, an Employee will be credited with a Year of Service pursuant to Department of Labor Regulation §2530.203 2(c). In addition, each period of Qualified Military Service of a Participant who dies while performing Qualified Military Service (or suffers a Disability while performing Qualified Military Service) will, upon his or her Deemed Reemployment, be considered in determining such Participant's Years of Service for purposes of this paragraph.

(c)  **Prior Service Credit.** If an Employer maintains (or has ever maintained) any plan of a predecessor employer, then service during the existence of such predecessor plan with such predecessor employer will not be credited as Years of Service with the Employer other than for purposes of determining eligibility under paragraph (a), above.

(d)  **Reemployment of an Employee Before a Break In Service and Before Eligibility Requirements Are Satisfied.** If an Employee Terminates Employment prior to satisfying the eligibility requirements in Section 2.1 and the Employee is subsequently reemployed by the Employer before incurring a Break in Service, then (1) the Employee's pre-termination Years of Service (and Hours of Service during any computation period) will be counted in determining the satisfaction of such eligibility requirements, and for all other purposes, and (2) the Eligibility Computation Period, Vesting Computation Period, and/or benefit accrual computation period will remain unchanged.

(e)  **Reemployment of an Employee Before a Break In Service and After Eligibility Requirements Are Satisfied.** If an Employee Terminates Employment prior to the Employee's Entry Date in Section 2.1, the Employee had satisfied the eligibility requirements in Section 2.1 as of the Employee's Termination of Employment, and the Employee is subsequently reemployed by the Employer before incurring a Break in Service, then (1) the Employee will become a Participant as of the later of (A) the date that the Employee would enter the Plan had he or she not Terminated Employment, or (B) the Employee's Reemployment Commencement Date, (2) the Employee's pre-termination Years of Service (and Hours of Service during any computation period) will be counted for all purposes, and (3) the Vesting Computation Period and/or benefit accrual computation period will remain unchanged.

(f)  **Reemployment of a Participant Before a Break In Service.** If an Employee Terminates Employment after becoming a Participant and is subsequently reemployed by the Employer before incurring a Break in Service, then (1) the reemployed Employee will reenter the Plan as of the Employee's Reemployment Commencement Date, (2) the Employee's pre-termination Years of Service (and Hours of Service during any computation period) will be counted for all purposes, and (3) the Vesting Computation Period and/or benefit accrual computation period will remain unchanged.

(g)  **Reemployment of an Employee After a Break In Service and Before the Entry Date.** If an Employee Terminates Employment either prior to or after satisfying the eligibility requirements in Section 2.1 (but before the Employee's Entry Date in Section 2.1) and the Employee is subsequently reemployed by the Employer after incurring a Break in Service, then the Employee's Years of Service that were completed prior to the Break in Service will be recognized, subject to the following provisions:

  (1)  **Determination of Years of Service for Eligibility Using the Rule of Parity.** Any Years of Service completed prior to an Employee's Break(s) in Service will not be counted in determining an Employee's eligibility to participate in the Plan if those Years of Service are disregarded pursuant to the Rule of Parity. If such former Employee's Years of Service are disregarded under the Rule of Parity, then (A) the reemployed Employee will be treated as a new Employee for purposes of Section 2.1 and (B) the Employee's Eligibility Computation Period will commence on the Employee's Reemployment Commencement Date and subsequent Eligibility Computation Periods will be based upon the provisions of the definition of Eligibility Computation Period (with the Reemployment Commencement Date substituted for the Employment Commencement Date, if applicable). If the Employee has not satisfied the eligibility requirements in Section 2.1 as of the Employee's Reemployment Commencement Date and such former Employee's Years of Service are not disregarded under the Rule of Parity, then the Eligibility Computation Periods will remain unchanged. If the Employee has satisfied the eligibility requirements in Section 2.1 as of the Employee's Reemployment Commencement Date and such former Employee's Years of Service are not disregarded under the Rule of Parity, the reemployed Employee will enter the Plan as of the Employee's Reemployment Commencement Date.

  (2)  **Determination of Years of Service for Vesting.** Any Years of Service completed prior to an Employee's Break(s) in Service will not be counted in determining an Employee's Vesting Interest in the Participant's Account balance if those Years of Service are disregarded pursuant

- 14 -

v

to the Rule of Parity. If such former Employee's Years of Service are not disregarded under the Rule of Parity, then the Vesting Computation Periods will remain unchanged.

(3)   **Determination of Years of Service for Benefit Accrual/Allocation Purposes.** Any Years of Service completed prior to an Employee's Break in Service will not be counted for benefit accrual or allocation purposes if those Years of Service are disregarded pursuant to the Rule of Parity.

(h)   **Reemployment of a Participant After a Break In Service.** If an Employee (1) was a Participant in the Plan, (2) Terminates Employment, and (3) is subsequently reemployed by the Employer or an Affiliated Employer after incurring a Break in Service, then the Employee's Year(s) of Service that were completed prior to the Break in Service will be recognized, subject to the following provisions:

(1)   **Determination of Years of Service for Eligibility Purposes.** Any Years of Service completed prior to an Employee's Break in Service will not be counted in determining an Employee's eligibility to participate in the Plan if those Years of Service are disregarded pursuant to the Rule of Parity. If such Employee's Years of Service are disregarded under the Rule of Parity, then (A) the reemployed Employee will be treated as a new Employee for purposes of Section 2.1 and (B) the Employee's Eligibility Computation Period will commence on the Employee's Reemployment Commencement Date and subsequent Eligibility Computation Periods will be based upon the provisions of the definition of Eligibility Computation Period (with the Reemployment Commencement Date substituted for the Employment Commencement Date, if applicable). If such former Employee's Year(s) of Service are not disregarded under the Rule of Parity, then the reemployed Employee will reenter the Plan as of the Employee's Reemployment Commencement Date.

(2)   **Determination of Years of Service for Vesting Purposes.** Any Years of Service that were completed prior to an Employee's Break in Service will not be counted for purposes of determining an Employee's Vesting Interest in the Participant's Account balance if those Years of Service are disregarded pursuant to the Rule of Parity. If such former Employee's Years of Service are not disregarded under the Rule of Parity, then the Vesting Computation Periods will remain unchanged.

(3)   **Determination of Years of Service for Benefit Accrual/Allocation Purposes.** Any Year(s) of Service that were completed prior to an Employee's Break(s) in Service will not be counted for benefit accrual or allocation purposes if those Year(s) of Service are disregarded pursuant to the Rule of Parity.

v

**Article 2**
**Plan Participation**

2.1 **Eligibility and Entry Date Requirements.** An Eligible Employee will become eligible to enter the Plan as a Participant in accordance with the following provisions:

(a) **Eligible Employees.** All purposes of this Plan, all Employees are Eligible Employees except for the following ineligible classes of Employees: (1) Employees whose employment is governed by a collective bargaining agreement between Employee representatives and the Employer in which retirement benefits were the subject of good faith bargaining unless such collective bargaining agreement expressly provides for the inclusion of such Employees as Participants; (2) Employees who are non-resident aliens who do not receive earned income (within the meaning of Code §911(d)(2)) from the Employer which constitutes income from sources within the United States (within the meaning of Code §861(a)(3)); (3) any person who is considered a Leased Employee but who (A) is not covered by a plan described in Code §414(n)(5), or (B) is covered by a plan described in Code §414(n)(5) but Leased Employees constitute more than 20% of the Employer's non-highly compensated workforce; and (4) Employees who are employed by an Affiliated Employer which is not an Adopting Employer.

(b) **Age and Service Requirements.** An Eligible Employee described in Section 2.1(a) will be eligible to enter the Plan as a Participant on the applicable entry date described in Section 2.1(c) upon reaching Age 21 and being credited with 1 Year of Service.

(c) **Entry Date.** An Eligible Employee described in Section 2.1(a) who has satisfied the eligibility requirements in Section 2.1(b) will enter the Plan as a Participant on the January 1st or the July 1st coincident with or following the date such requirements are satisfied.

(d) **Special Eligibility Requirements.** Notwithstanding Sections 2.1(b) and 2.1(c) to the contrary, an Eligible Employee described in Section 2.1(a) who is employed by the Employer on any day during the Plan Year beginning on January 1, 2013 will be eligible to enter the Plan as a Participant on the later of: (i) the Employee's date of hire, or (ii) January 1, 2013.

(e) **Participation By Employees Whose Status Changes.** If an Employee who is not an Eligible Employee becomes an Eligible Employee, then the Employee will participate in the Plan immediately so long as (1) the Employee has satisfied the minimum age and service requirements and (2) the Employee would have previously become a Participant had the Employee always been an Eligible Employee. The participation of a Participant who is no longer an Eligible Employee will be suspended and such Participant will be entitled to an allocation (and any applicable Forfeitures) for the Allocation Period only to the extent of any applicable Hours of Service completed while an Eligible Employee. Upon again becoming an Eligible Employee, a suspended Participant will immediately resume eligibility. Years of Service while an Employee is not an Eligible Employee will be recognized for purposes of determining the Vested Interest of such Employee in accordance with Section 4.6.

2.2 **Waiver of Participation.** Employees who have satisfied any of the eligibility requirements set forth in Section 2.1 are not permitted to waive participation in the Plan.

2.3 **Reemployment After Termination.** If an Employee Terminates Employment and is subsequently reemployed by an Employer or an Affiliated Employer, such Employee's Years of Service for purposes of eligibility (as well as the time such Employee enters or reenters the Plan as a Participant) will be determined in accordance with the rules described in the definition of Year of Service in Section 1.95 provided that the Employee is an Eligible Employee.

v

### Article 3
### Contributions and Allocations

3.1   **Employer Contributions.** The Sponsoring Employer intends to make contributions to the Plan. The Employer does not guarantee either the making of the contributions or the payment of the benefits under the Plan, except in amount sufficient for the Plan to make its required Exempt Loan payments as they become due. The Employer reserves the right to reduce, suspend or discontinue contributions for any reason at any time, but if the Plan is deemed to be terminated as a result of such reduction, suspension or discontinuance, the provisions of Article 11 will become effective. All contributions will be determined in accordance with the following provisions:

(a)   **Amount of Contribution.** The Sponsoring Employer in its sole discretion may make a contribution to the Plan. The amount will be determined by the Sponsoring Employer.

(b)   **Allocation of Contribution.** Subject to of Section 6.4, Employer contributions which are not made to repay an Exempt Loan will be allocated to each Benefiting Participant's Account in the ratio that the Compensation of each Benefiting Participant for the Allocation Period bears to the total Compensation of all Benefiting Participants for the Allocation Period. Any Employer contributions that are not allocated due to application of Section 6.4, will be further allocated among and credited to the Accounts of the remaining Participants who are Non-Highly Compensated Employees who are entitled to share in an allocation of such contributions for the Allocation Period, in the ratio that the Compensation of each Benefiting Participant who is a Non-Highly Compensated Employee eligible for additional allocations under Section 6.4 for the Allocation Period bears to the total Compensation of all Benefiting Participants who are Non-Highly Compensated Employees eligible for additional allocations under Section 6.4 for the Allocation Period, without exceeding the maximum allocation permitted by Section 6.4. Any additional unallocated amounts shall be allocated, and reallocated as necessary, in accordance with the previous sentence until all amounts have been allocated. With respect to any Employer contributions which are made and used to repay an Exempt Loan, any Employer Securities released from the Unallocated Employer Securities Account with respect to these contributions will be allocated in accordance with the provisions of Section 3.7(d)(4).

(c)   **Benefiting Participants.** A Participant will be a Benefiting Participant for any Allocation Period in accordance with the following provisions:

(1)   **Participants Employed on the Last Day of the Allocation Period.** Any Participant who is an Employee on the last day of the Allocation Period and who on that date is in an eligible class of Employees as set forth in Section 2.1(a) will be a Benefiting Participant for that Allocation Period if he or she is also credited with at least 1,000 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent if the Allocation Period is less than 12 consecutive months).

(2)   **Participants Who Terminate Before the Last Day of the Allocation Period.** Any Participant who was in an eligible class of Employees as set forth in Section 2.1(a) on any day during the Allocation Period and who Terminates Employment with the Employer before the last day of the Allocation Period who: (A) terminates because of his or her retirement on or after Normal Retirement Age will be a Benefiting Participant if he or she is also credited with at least 1,000 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent thereof if the Allocation Period is less than 12 consecutive months); (B) terminates because of his or her death will be a Benefiting Participant if he or she is also credited with at least 1,000 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent thereof if the Allocation Period is less than 12 consecutive months); (C) terminates because of his or her Disability will be a Benefiting Participant if he or she is also credited with at least 1,000 Hours of Service during the Allocation Period (or is credited with the proportionate equivalent thereof if the Allocation Period is less than 12 consecutive months); and (D) terminates for reasons other than retirement on or after Normal Retirement Age, death or Disability will not be a Benefiting Participant.

(3)   **Special Benefiting Participant Requirements for 2013.** Notwithstanding the requirements contained in paragraphs (1) and (2) of Section 3.1(c) to the contrary, any Participant who is an

- 17 -

Employee in an eligible class of Employees as set forth in Section 2.1(a) on any day during the Allocation Period ending on December 31, 2013 will be a Benefiting Participant for that Allocation Period regardless of the number of Hours of Service completed during that Allocation Period or employment on the last day of that Allocation Period.

(d)  **Limitations on Contributions.** Notwithstanding any provision of this Article, no Employer contribution will be made for any Participant who is not a Benefiting Participant for an Allocation Period unless otherwise required by the Top Heavy Minimum Allocation provisions in Section 3.4.

(e)  **Allocation Period.** Any contribution made under the terms of the Plan may, at the election of the Sponsoring Employer, be contributed (1) each payroll period; (2) each month; (3) each Plan quarter; (4) on an annual basis; or (5) on any other less than annual Allocation Period basis as determined by the Employer, provided such Allocation Period does not discriminate in favor of HCEs. Contributions will be allocated to Benefiting Participants as of the last day of the Allocation Period.

(f)  **Form of Contribution.** To the extent the Employer's contribution is not used to reduce an obligation or liability of an Employer to the Plan, and the contribution is unencumbered and discretionary, then the contribution may consist of (1) Employer Securities; (2) cash; (3) cash equivalencies; (4) qualifying employer real property and/or qualifying employer securities as defined in ERISA §407(d)(4) and ERISA §407(d)(5), provided the acquisition of such qualifying employer real property and/or qualifying employer securities satisfies the requirements of ERISA §408(e); or (5) any other property that is not prohibited under Code §4975 and is acceptable to the Trustee. To the extent the Employer's contribution is used to reduce an obligation or liability of an Employer to the Plan, or if the contribution is mandatory, then the contribution may only consist of cash or cash equivalencies.

(g)  **USERRA Contributions.** With respect to a Participant who is reemployed by the Employer after a period of Qualified Military Service, the Employer will make a contribution to the Plan on behalf of such Participant which is equal to the amount that would have been contributed during the Participant's period of Qualified Military Service had such Participant remained employed with the Employer. Such contribution will be determined using the same rate of Compensation the Participant would have received from the Employer during his or her period of Qualified Military Service. However, if such rate of Compensation is not reasonably certain, this contribution can be determined using such Participant's average Compensation during the 12-month period immediately preceding his or her period of Qualified Military Service. Such contributions will also be made to the Plan with respect to a Participant who dies while performing Qualified Military Service or who suffers a Disability while performing Qualified Military Service. A Participant who dies or becomes Disabled while performing Qualified Military Service shall not be Deemed Reemployed or treated as a Benefiting Participant for purposes of receiving an allocation of Employer contributions

(h)  **Refund of Contributions for All Plans.** Contributions made to the Plan by the Employer can only be returned to the Employer in accordance with the following provisions:

(1)  **Failure of Plan to Initially Qualify.** If the Plan fails to initially satisfy the requirements of Code §401(a) and the Employer declines to amend the Plan to satisfy such requirements, contributions made prior to the date such qualification is denied must be returned to the Employer within 1 year of the date of such denial, but only if the application for the qualification is made by the time prescribed by law for filing the Employer's tax return for the taxable year in which the Plan is adopted, or by such later date as the Secretary of the Treasury may prescribe.

(2)  **Contributions Made Under a Mistake of Fact.** If a contribution is attributable in whole or in part to a good faith mistake of fact, including a good faith mistake in determining the deductibility of the contribution under Code §404, an amount may be returned to the Employer equal to the excess of the amount contributed over the amount that would have been contributed had the mistake not occurred. Earnings attributable to any such excess contribution will not be returned, but losses attributable to any such excess contribution will reduce the amount so returned. Such amount will be returned within one year of the date the contribution was made or the deduction disallowed, as the case may be.

3.2   **Earnings and Losses.** As of each Valuation Date, amounts in Participants' accounts which have not been segregated from the general Trust Fund for investment purposes and which have not been distributed since the prior Valuation Date will have the net income of the Trust Fund that has been earned since the prior Valuation Date allocated in accordance with such rules and procedures as established by the Administrator and applied in a uniform and nondiscriminatory manner based upon the investments of the Trust Fund and the Participants' Accounts to which the net income is allocated. Participants' accounts which have been segregated from the general Trust Fund for investment purposes, will only have the net income earned thereon allocated thereto. For purposes of this Section, the term "net income" means the net of any interest, dividends, unrealized appreciation and depreciation (other than the unrealized appreciation or depreciation of the Employer Securities allocated to the Participants' Employer Securities Accounts), capital gains and losses, and investment and administrative expenses of the Trust Fund as determined on each Valuation Date. Net income does not include (1) the interest paid under any installment contract for the purchase of Employer Securities by the Plan or the interest paid on any loan used by the Plan to purchase Employer Securities; or (2) income received by the Trust Fund with respect to Employer Securities acquired with an Exempt Loan to the extent such income is used to repay the loan. All income received by the Trust Fund from Employer Securities acquired with the proceeds of an Exempt Loan may, at the discretion of the Administrator, be used to repay such loan.

3.3   **Forfeitures and Their Usage.** Forfeitures will be determined and applied in accordance with the following:

(a)   **When Forfeitures Occur.** The date upon which a Forfeiture occurs is the earlier of (1) the date that the Participant who Terminated Employment receives a distribution of his or her Vested Interest under Article 5; or (2) the date that the Participant incurs five consecutive Breaks in Service after Termination of Employment. However, if a Participant's Vested Interest in the entire Participant's Account balance attributable to Employer contributions is zero on the date that the Participant Terminates Employment, then the Participant will be deemed to have received a distribution of such Vested Interest on the last day of the Plan Year following the date of such Termination of Employment and a Forfeiture of the Participant's Account balance attributable to Employer contributions will occur pursuant to the provisions of this paragraph on the date of such deemed distribution.

(b)   **Employer Securities Account.** If a portion of a Participant's Account is forfeited, such Forfeitures must come from the Participant's Other Investments Account before Forfeitures are taken from the Participant's Employer Securities Account. If interests in more than one class of Employer Securities have been allocated to the Participant's Employer Securities Account, the Participant must be treated as forfeiting the same proportion of each such class of Employer Securities.

(c)   **Usage and Allocation of Forfeitures.** The Administrator may elect to use all or any portion of the Forfeiture Account to pay administrative expenses incurred by the Plan. The portion of the Forfeiture Account that is not used to pay administrative expenses will be used first to restore previous Forfeitures of Participants' Accounts pursuant to Section 5.7 and/or to restore missing Participants' Accounts pursuant to Section 5.13. The portion of the Forfeiture Account that is not used to pay administrative expenses and is not used to satisfy the provisions of the previous sentence will then be allocated, subject to the application of Section 6.4, to the Participant's Account of each Benefiting Participant (as determined under Section 3.1(c)) in the ratio that each Benefiting Participant's Compensation bears to the total Compensation of all Benefiting Participants. Any forfeitures that are not allocated due to application of Section 6.4, will be further allocated among and credited to the Accounts of the remaining Participants who are Non-Highly Compensated Employees who are entitled to share in an allocation of such contributions for the Allocation Period, in the ratio that the Compensation of each Benefiting Participant who is a Non-Highly Compensated Employee eligible for additional allocations under Section 6.4 for the Allocation Period bears to the total Compensation of all Benefiting Participants who are Non-Highly Compensated Employees eligible for additional allocations under Section 6.4 for the Allocation Period, without exceeding the maximum allocation permitted by Section 6.4. Any additional unallocated amounts shall be allocated, and reallocated as necessary, in accordance with the previous sentence until all amounts have been allocated.

3.4   **Top Heavy Minimum Allocation.** In any Top Heavy Plan Year in which a Key Employee receives an allocation of Employer contributions or Forfeitures, each Employee who is described in paragraph (a) below will receive the Top Heavy Minimum Allocation, determined in accordance with the following provisions:

- 19 -

v

(a) **Participants Who Must Receive the Top Heavy Minimum Allocation.** The Top Heavy Minimum Allocation, or such lesser amount as may be permitted under paragraph (b), will be made for each Participant who is a Non-Key Employee and who is employed by an Employer on the last day of the Plan Year, even if such Participant (1) fails to complete any minimum Hours of Service or any minimum period of service required to receive an allocation of Employer contributions or Forfeitures for the Plan Year; or (2) fails to make Elective Deferrals in the case of a 401(k) plan.

(b) **Participation in Multiple Defined Contribution Plans.** If (1) this Plan is not part of a Required Aggregation Group or a Permissive Aggregation Group with a defined benefit plan, (2) this Plan is part of a Required Aggregation Group or a Permissive Aggregation Group with one or more defined contribution plans, (3) a Participant who is described in paragraph (a) participates in this Plan and in one or more defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group, and (4) the allocation of Employer contributions and Forfeitures of each plan that is part of the Required Aggregation Group or the Permissive Aggregation Group (when each plan is considered separately) is insufficient to satisfy the Top Heavy Minimum Allocation requirement with respect to such Participant, the Top Heavy Minimum Allocation requirement will nevertheless be satisfied if the aggregate allocation of Employer contributions and Forfeitures that are made on behalf of such Participant under this Plan and all other defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (and any other defined contribution plan that is sponsored by the Employer) is sufficient to satisfy the Top Heavy Minimum Allocation requirement. However, if the aggregate allocation of Employer contributions and Forfeitures that are made on behalf of a Participant under this Plan and all other defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (and any other defined contribution plan that is sponsored by the Employer) is not sufficient to satisfy the Top Heavy Minimum Allocation requirement, then the Employer will make an additional contribution on behalf of such Participant to this Plan and/or to one or more defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (or any other defined contribution plan that is sponsored by the Employer) in order that the aggregate allocation of Employer contributions and Forfeitures that are made on behalf of such Participant under this Plan and all defined contribution plans that are part of the Required Aggregation Group or the Permissive Aggregation Group (and any other defined contribution plan that is sponsored by the Employer) satisfies the Top Heavy Minimum Allocation requirement.

(c) **DB Plan Part of Required Aggregation Group or Permissive Aggregation Group.** If this Plan is part of a Required Aggregation Group or a Permissive Aggregation Group with a defined benefit plan, the Sponsoring Employer may, in its discretion and in a uniform non-discriminatory manner which is intended to satisfy the requirements of Code §416(f) regarding the preclusion of required duplication and inappropriate omission of Top Heavy minimum benefits or Top Heavy Minimum Allocations, determine to satisfy the requirements of Code §416 with respect to each Participant described in paragraph (a) who participates in this Plan and in the defined benefit plan which is part of the Required Aggregation Group or the Permissive Aggregation Group, by any of the following methods:

(1) **Defined Benefit Minimum Benefit.** A defined benefit minimum, which is an accrued benefit at any point in time equal to at least the product of (A) an Employee's average annual Code §415(c)(3) Compensation for the period of consecutive years (not exceeding five) when the Employee had the highest aggregate Code §415(c)(3) Compensation from the Employer and (B) the lesser of 2% per Year of Service or 1-Year period of service, as applicable, with the Employer or 20%, subject to the rules of Code §416 and the Regulations thereunder.

(2) **Floor Offset Arrangement.** A floor offset approach, pursuant to Revenue Ruling 76-259, under which the defined benefit minimum of the defined benefit plan that is provided pursuant to paragraph (c)(1) is offset by the benefits provided under the defined contribution plan.

(3) **Using Comparability.** A demonstration, using a comparability analysis pursuant to Revenue Ruling 81-202, that the plans are providing benefits at least equal to the defined benefit minimum that is provided pursuant to paragraph (c)(1).

v

(4)    **5% Defined Contribution Allocation.** An allocation of Employer contributions and Forfeitures that are made on behalf of such Participant under this Plan (or under any Employer-sponsored defined contribution plan) equal to 5% of an Employee's Code §415(c)(3) Compensation for each Plan Year that the Required Aggregation Group or the Permissive Aggregation Group is Top Heavy.

(d)    **Frozen DB Plan.** In determining Top Heavy benefits or Top Heavy Minimum Allocations, a defined benefit plan in which no Key Employee and former Key Employee benefits (within the meaning of Code §410(b)) during a Plan Year will be disregarded in determining whether the defined benefit plan is part of a Required Aggregation Group or a Permissive Aggregation Group with this Plan.

(e)    **Contributions That Can Be Used to Satisfy Top Heavy Minimum.** All Employer contributions to this Plan will used in determining if the Employer has satisfied the Top Heavy minimum benefit and/or Top Heavy Minimum Allocation requirements of this Section. Employer contributions that are made on behalf of a Participant to a 401(k) plan by the Employer may also be used.

3.5    **Failsafe Allocation.** If the Plan (or a component of the Plan) for any Plan Year fails to satisfy the nondiscriminatory classification test of Code §410(b)(2)(A)(i) and Regulation §1.410(b)-4 and/or the average benefit percentage test of Code §410(b)(2)(A)(ii) and Regulation §1.410(b)-5, then certain allocations will be made under this Section only to the extent necessary to insure that the Plan (or such component of the Plan) for such Plan Year satisfies one of the tests set forth in either Code §410(b)(1)(A) (in which the Plan initially fails to benefit at least 70% of the non-excludable NHCEs), or Code §410(b)(1)(B) (in which the Plan initially fails to benefit a percentage of the non-excludable NHCEs that is at least 70% of the percentage of the non-excludable HCEs), pursuant to the following rules:

(a)    **Order of Accrual Groups.** To satisfy one of the above tests for such Plan Year, an allocation may be made to certain Employees in the following groups (hereafter known as "Accrual Groups") in the following order: (1) first, an allocation may be made to that group of Employees who were Participants for the Plan Year but who did not receive an allocation for the Plan Year; (2) next, an allocation may be made to that group of Employees who have not yet satisfied the eligibility requirements of Section 2.1 and who are Eligible Employees; (3) next, an allocation may be made to that group of Employees who have satisfied the eligibility requirements of Section 2.1 and who are not Eligible Employees; and (4) finally, an allocation may be made to that group of Employees who have not yet satisfied the eligibility requirements of Section 2.1 and who are not Eligible Employees.

(b)    **Priority of Allocation Within Each Group.** To determine each Employee's priority within an Accrual Group, Employees will first be ranked by their Hours of Service beginning with the highest number. However, before an allocation is made, the Participants in paragraph (a) will be further ranked beginning with those who are employed on the last day of Plan Year.

(c)    **Employees Who Share and the Amount of Allocation.** Only Employees who are required to benefit under the Plan (or the component of the Plan) for the Plan Year in order to satisfy one of the above tests will be entitled to an allocation, even if the number of Employees who are required to benefit is less than the total number of Employees within a specific Accrual Group. Such allocation will be made on the same basis as, and using the same allocation formula and method as, the allocation that is made to each Participant who is an otherwise Benefiting Participant for such Plan Year with respect to the Plan (or such component of the Plan). The right of an Employee who is eligible to receive an allocation under this Section for a Plan Year will be fixed as of the last day of such Plan Year.

3.6    **Rollover Contributions.** Rollover Contributions are not permitted.

3.7    **Transactions Involving Employer Securities.** Employer Securities allocable to a Benefiting Participant's Employer Securities Account, or Employer Securities released from the Unallocated Employer Securities Account during an Allocation Period, will be allocated in accordance with the following provisions:

(a)    **Employer Securities Account.** A Benefiting Participant's Employer Securities Account will be credited with his or her allocable share of (1) Employer Securities (including fractional shares) purchased and paid for by this Plan and designated by the Employer to be held in a Participant's

- 21 -

v

Employer Securities Account; (2) Employer Securities contributed in kind and designated by the Employer to be held in a Participant's Employer Securities Account; (3) in-kind (stock) Dividends and/or S Corporation Distributions; (4) Forfeitures of Employer Securities; (4) Employer Securities purchased by the Trustee using Employer contributions; and (5) Employer Securities released from the Unallocated Employer Securities Account under paragraph (d). Credits of Employer Securities will be recorded in whole and fractional shares, and fractional shares will be computed at least to the nearest 1/100th of a share.

(b) **In-Kind Dividends and S Corporation Distributions.** In-kind (stock) dividends and/or S Corporation Distributions will be allocated to the Account which held the Employer Securities that earned the in-kind Dividend and/or S Corporation Distribution.

(c) **Cash Dividends and S Corporation Distributions.** Cash Dividends and/or S Corporation Distributions on Employer Securities in a Participant's Employer Securities Account or in the Unallocated Employer Securities Account will first be used to repay Current Obligations. To the extent no Current Obligation exists or cash Dividends and/or S Corporation Distributions are not used to purchase Employer Securities or to satisfy general Plan obligations, they will be allocated to Participants' Other Investments Accounts. If cash Dividends and/or S Corporation Distributions are used to repay Current Obligations of the Plan, Employer Securities released from the Unallocated Employer Securities Suspense Account will be allocated first to each Participant's Employer Securities Account such that Employer Securities so allocated will have a fair market value not less than the amount of cash Dividends and/or S Corporation Distributions which would have been allocated to such Participant's Other Investments Account for the Allocation Period. Any Employer Securities released from the Unallocated Employer Securities Suspense Account remaining after application of the preceding sentence will be allocated in accordance with the provisions of Section 3.7(d)(4).

(d) **Unallocated Employer Securities Account.** Employer Securities acquired with an Exempt Loan must initially be allocated to the Unallocated Employer Securities Account and will only be withdrawn and allocated to Participants' Employer Securities Accounts in accordance with the following provisions:

(1) **Method of Withdrawing Securities.** For each Allocation Period during the duration of an Exempt Loan, the number of shares of Employer Securities released from the Unallocated Employer Securities Account will equal the number of shares held therein immediately before release for the current Allocation Period multiplied by a fraction, the numerator of which is the amount of principal and interest paid on the Exempt Loan for the Allocation Period and the denominator of which is the sum of the numerator plus the principal and interest to be paid on the Exempt Loan for all future Allocation Periods. The number of future Allocation Periods must be definitely ascertainable and must be determined without taking into account any possible extensions or renewal periods. If the interest rate under the Exempt Loan is variable, the interest to be paid in future Allocation Periods must be computed using the interest rate applicable as of the end of the Allocation Period.

(2) **Alternative Method of Withdrawing Securities.** Except as specifically provided for in the Exempt Loan, the number of shares of Employer Securities released from the Unallocated Employer Securities Account may be determined in the same manner described in subparagraph (1) except that the number will be based solely on the amount of principal paid for the Allocation Period in relation to the sum of such amount plus the principal to be paid for all future Allocation Periods, provided that (1) the Exempt Loan must provide for annual payments of principal and interest at a cumulative rate that is not less rapid at any time than level annual payments of such amounts for 10 years; (2) interest in any payment is disregarded only to the extent it would be determined to be interest under standard loan amortization tables; and (3) the alternative described in this subparagraph is not applicable from the time that, by reason of a renewal, extension or refinancing, the sum of the expired duration of the Exempt Loan, the renewal period, the extension period, and the duration of a new Exempt Loan exceeds 10 years.

(3) **Limitation on Method for Withdrawing Securities.** Notwithstanding subparagraphs (1) and (2) above, once a method of withdrawing Employer Securities from the Unallocated Employer Securities Account has been elected by the Employer with respect to an Exempt Loan, no other method will be applied with respect to such Exempt Loan.

    (4)    **Method of Allocating Withdrawn Stock.** The Plan must consistently allocate to each Benefiting Participant's Employer Securities Account non-monetary units (shares and fractional shares of Employer Securities) representing each Participant's interest in Employer Securities withdrawn from the Unallocated Employer Securities Suspense Account. Except as limited in the provisions of Section 3.7(f) and Section 6.4, below, after applying allocations required for cash Dividends and/or S Corporation Distributions used to repay Current Obligations of the Plan pursuant to Section 3.7(c), above, any remaining Employer Securities released from the Unallocated Employer Securities Suspense Account will be allocated in the ratio that each Benefiting Participant's Compensation for the Allocation Period bears to the total Compensation of all Benefiting Participants for the Allocation Period. Any Employer Securities released from the Unallocated Employer Securities Account that are not allocated due to application of Section 6.4, will be further allocated among and credited to the Accounts of the remaining Participants who are Non-Highly Compensated Employees who are entitled to share in an allocation of such contributions for the Allocation Period, in the ratio that the Compensation of each Benefiting Participant who is a Non-Highly Compensated Employee eligible for additional allocations under Section 6.4 for the Allocation Period bears to the total Compensation of all Benefiting Participants who are Non-Highly Compensated Employees eligible for additional allocations under Section 6.4 for the Allocation Period, without exceeding the maximum allocation permitted by Section 6.4.  Any additional unallocated amounts shall be allocated, and reallocated as necessary, in accordance with the previous sentence until all amounts have been allocated. With respect to any Employer contributions which are made and used to repay an Exempt Loan, any Employer Securities released from the Unallocated Employer Securities Account with respect to these contributions will be allocated in accordance with the provisions of Section 3.7(d)(4).

(e)    **Code §1042 Stock.** Notwithstanding the foregoing to the contrary, when any portion of the Plan's assets that are attributable to (or allocable in lieu of) Employer Securities acquired by the Plan in a sale to which Code §1042 or Code §2057 applies will be allocated in accordance with the following provisions:

    (1)    **No Allocation Permitted to Certain Participants.** No portion of any such assets may be allocated directly or indirectly under this Plan or any other qualified plan of an Employer or Affiliated Employer (A) during the Non-Allocation Period for the benefit of any taxpayer who makes an election under Code §1042(a) with respect to Employer Securities or any decedent if the executor of the estate of such decedent makes a qualified sale to which Code §2057 applies or for the benefit of any individual who is related to the taxpayer or the decedent within the meaning of Code §267(b); or (B) for the benefit of any other person who owns, after applying Code §318(a), more than 25% of any class of outstanding stock of the Employer or of any corporation which is a member of the same controlled group of corporations within the meaning of Code §409(l)(4) as the Employer; or the total value of any class of outstanding stock of the Employer. For purposes hereof, Code §318(a) will be applied without regard to the employee trust exception in Code §318(a)(2)(B)(i); and a person will be treated as failing to meet the stock ownership limitation set forth herein if such person fails such limitation at any time during the 1-year period ending on the date of sale of qualified securities to the Plan, or on the date as of which such qualified securities are allocated to Participants in the Plan.

    (2)    **Exception for Certain Lineal Descendants.** The restrictions set forth in subparagraph (1) will not apply to any individual who is a lineal descendant of the taxpayer if the aggregate amount allocated to the benefit of all lineal descendants during the Non-Allocation Period does not exceed more than 5% of the Employer Securities (or amounts allocated in lieu thereof) held by the Plan which are attributable to a sale to the Plan by any person related to such descendants within the meaning of Code §267(c)(4) in a transaction to which Code §1042 applied.

    (3)    **Definition of Non-Allocation Period.** The term "Non-Allocation Period" means the 10-year period beginning on the later of the date of the sale of the qualified securities or the date of the allocation attributable to the final payment of acquisition indebtedness incurred in connection with such sale.

v

(f)   **Prohibited Allocation of Employer Securities of an S Corporation.** Notwithstanding any provision of this Plan to the contrary, no assets of the Plan attributable to (or allocable in lieu of) Employer Securities issued by an S Corporation may, during a Nonallocation Year (as defined subparagraph (1) below), be allocated directly or indirectly for the benefit of any Disqualified Person (as defined in subparagraph (2) below) or under any other qualified plan of the Employer, subject to the following provisions:

   (1)   **Nonallocation Year.** The term "Nonallocation Year" means any Plan Year in which (A) the Plan holds Employer Securities of an S Corporation, and (B) Disqualified Persons own at least 50% of such Employer Securities. In determining ownership under clause (B) of the subparagraph (1), the rules of Code §318(a) will apply, except that in applying Code §318(a)(1), the members of an individual's family will include members of the family described in subparagraph (4) below, and Code §318(a)(4) will not apply. In addition, notwithstanding the employee trust exception in Code §318(a)(2)(B)(i), an individual will be treated as owning deemed-owned shares of the individual, and solely for purposes of applying subparagraph (5) below, this subparagraph will be applied after the attribution rules of subparagraph (5) have been applied.

   (2)   **Disqualified Person.** The term "Disqualified Person" means any person whose number of Deemed-Owned Shares in the S Corporation is at least 10% of the corporation's Deemed-Owned Shares, or whose number of Deemed-Owned Shares in the S Corporation, when aggregated with the Deemed-Owned Shares of his or her family members, is at least 20% of the Deemed-Owned Shares of stock in the S Corporation. Any member of a disqualified person's family with Deemed-Owned Shares will be treated as a Disqualified Person if not otherwise treated as a Disqualified Person hereunder.

   (3)   **Deemed-Owned Shares.** The term "Deemed-Owned Shares" means, with respect to any person, (A) Employer Securities of the S corporation allocated to such person under the Plan, and (B) the person's share of such Employer Securities which is held by the Plan but is not allocated to Participants. A person's share of unallocated S Corporation Employer Securities held by the Plan is the amount of such unallocated Employer Securities which would be allocated to him or her if such unallocated Employer Securities were allocated to all Participants in the same proportion as the most recent Employer Securities allocation under the Plan.

   (4)   **Member of the Family.** The term "Member of the Family" means, with respect to any individual, (A) the spouse of the individual; (B) an ancestor or lineal descendant of the individual or the individual's spouse; (C) a brother or sister of the individual or his or her spouse and any lineal descendant of the brother or sister; and (D) the spouse of any individual described in clause (B) or (C). However, a spouse who is legally separated from such individual under a decree of divorce or separate maintenance will not be treated as such individual's spouse.

   (5)   **Prohibited Allocation.** For purposes of this Section, the term "prohibited allocation" means either an "Impermissible Accrual" or an "Impermissible Allocation" as defined below:

      (A)   **Impermissible Accrual.** An Impermissible Accrual occurs to the extent that Employer Securities in an S Corporation owned by the Plan and assets attributable thereto are held under the Plan for the benefit of a Disqualified Person during a Nonallocation Year. For this purpose, assets attributable to such Employer Securities include any distributions, within the meaning of Code §1368, made on S Corporation stock held in a Disqualified Person's Employer Securities Account (including earnings thereon), plus any proceeds from the sale of such Employer Securities (including any earnings thereon). Thus, in the event of a Nonallocation Year, all such Employer Securities and all other Plan assets attributable thereto, including distributions, sales proceeds, and earnings on either distributions or proceeds, held for the account of such Disqualified Person in the Plan during that year are an Impermissible Accrual for the benefit of that person, whether attributable to contributions in the current year or in prior years.

      (B)   **Impermissible Allocation.** An Impermissible Allocation occurs during a Nonallocation Year to the extent that a contribution or other Annual Addition is made to the account of

- 24 -

a Disqualified Person, or the Disqualified Person otherwise accrues additional benefits, directly or indirectly under this Plan or any other plan of the Sponsoring Employer qualified under Code §401(a) (including a release and allocation of assets from a suspense account, as described in Regulation §54.4975–11(c) and (d)) that, for the Nonallocation Year, would have been added to the account hereunder of the Disqualified Person and invested in Employer Securities in an S corporation owned by the Plan but for a Plan provision that precludes such addition to the account of the Disqualified Person and investment in Employer Securities during a Nonallocation Year.

(6)   **Synthetic Equity.**

(A)   In General.  For purposes of subparagraphs (1) and (2), in the case of a person who owns Synthetic Equity, except to the extent otherwise provided in the Regulations, the stock on which the Synthetic Equity is based will be treated as outstanding stock in the S Corporation and the Deemed-Owned Shares of such person if the treatment of Synthetic Equity of one or more such persons results in (A) the treatment of any person as a Disqualified Person, or (B) the treatment of any year as a Nonallocation Year. For purposes hereof, Synthetic Equity is treated as owned by a person in the same manner as stock is treated as owned by a person under Code §318(a)(2) and (3). If, without regard to this subparagraph, a person is treated as a Disqualified Person or a year is treated as a Nonallocation Year, this subparagraph will not be construed to result in the person or year not being so treated. For purposes of this Section, the term "synthetic equity" means any stock option, warrant, restricted stock, deferred issuance stock right, or similar interest or right that gives the holder the right to acquire or receive stock of the S corporation in the future. Except to the extent provided in regulations, synthetic equity also includes a stock appreciation right, phantom stock unit, or similar right to a future cash payment based on the value of such stock or appreciation in such value.

(B)   **Synthetic Equity Determined by Reference to Employer Securities.**  In the case of Synthetic Equity that is determined by reference to Employer Securities, the person who is entitled to the Synthetic Equity is treated as owning the number of shares of Employer Securities deliverable pursuant to such Synthetic Equity. In the case of Synthetic Equity that is determined by reference to shares of stock (or similar interests) in a related entity, the person who is entitled to the Synthetic Equity is treated as owning Employer Securities with the same aggregate value as the number of shares of stock (or similar interests) of the related entity.

(C)   **Synthetic Equity Not Determined by Reference to Employer Securities.**  With respect to Synthetic Equity that is not determined by reference to Employer Securities or by reference to shares in a related entity, the person who is entitled to the Synthetic Equity is treated as owning on any date a number of shares of Employer Securities equal to the present value (on that date) of the Synthetic Equity (with such value determined without regard to any lapse restriction as defined at Regulation §1.83-3(i)) divided by the fair market value of a share of the Employer Securities as of that date. The number of shares of Employer Securities treated as owned by a person who is entitled to Synthetic Equity will be determined on a "determination date," and the number of shares of Synthetic Equity shall be fixed from that determination date through the day before the determination date that is not later than the third anniversary of the identified determination date. For purposes of this Subsection, a "determination date" shall be the first day of a Plan Year. Thus, the number of shares of Synthetic Equity are to be re-determined every three Plan Years, based on the Employer Securities value on a determination date that is not later than the third anniversary of the identified determination date and the aggregate present value of the Synthetic Equity (including all grants made during the three-year period) on that determination date. However, additional accruals, allocations, or grants that are made during such three-year period are taken into account on each determination date during that period, based on the number of Synthetic Equity shares resulting from the additional accrual, allocation, or grant (determined as of the determination date on or next following the date of the accrual, allocation, or grant).

- 25 -

v

(7)   **Reduction of Allocations to Avoid Nonallocation Years.** In the case of any allocation that otherwise would be made pursuant to the terms of this Article that the Administrator determines would cause a Nonallocation Year (as defined in (f)(1) and in the meaning of Code §409(p)(3) and Regulation §1.409(p)-1(c)) to occur if the allocation was to be completed, then in order to avoid the occurrence of a Nonallocation Year, there shall be a pro-rata reduction of the allocation that was intended for each Participant who is both: (i) a Highly Compensated Employee, and (ii) a Disqualified Person (as defined in (f)(2) and in the meaning of Code §409(p)(4) and Regulation §1.409(p)-1(d)), or would be treated as a Disqualified Person if the intended allocation were to be made; however, if a smaller allocation reduction would cause any such Participant to no longer be classified as a Disqualified Person, then the reduction of the intended allocation for that Participant shall be limited to the amount that would cause that Participant to no longer be classified as a Disqualified Person.

(8)   **Code §409(p) Transfers to Non-ESOP Portion of Plan.**

   (A)   **Non-ESOP Portion.** Assets held under the Plan in accordance with this Section are held under a portion of the Plan that is not an employee stock ownership plan (ESOP), within the meaning of Code §4975(e)(7).   Amounts held in the portion of the Plan that is not an ESOP (the "Non-ESOP Portion") shall be held in accounts that are separate from the accounts for the amounts held in the remainder of the Plan (the "ESOP Portion"). Any statements provided to Participants and/or Beneficiaries to show their interest in the Plan shall separately identify the amounts held in each such portion. Except as specifically set forth in this Section, all of the terms of the Plan apply to any amount held under the Non-ESOP Portion of the Plan in the same manner and to the same extent as an amount held under the ESOP Portion of the Plan.

   (B)   **Transfers from ESOP Portion to Non-ESOP Portion of Plan to Avoid Nonallocation Years.**

      (i)   In the case of any event that the Administrator determines would otherwise cause a Nonallocation Year to occur (referred herein as a "nonallocation event"), shares of employer stock held under the Plan before the date of the nonallocation event shall be transferred from the ESOP portion of the Plan to the Non-ESOP portion of the Plan as provided in this paragraph. Events that may cause a Nonallocation Year, include, but are not limited to, a contribution to the Plan in the form of shares of employer stock, a distribution from the Plan in the form of shares of employer stock, a change of investment within a Plan account of a Disqualified Person that alters the number of shares of employer stock held in the account of the Disqualified Person, or the issuance by the employer of synthetic equity as defined by Code §409(p)(6)(C) and Regulation §1.409(p)-1(f). A nonallocation event occurs only if (i) the total number of shares of employer stock that, held in the Employer Securities Account in the ESOP Portion of the Plan for those Participants who are or who would be Disqualified Persons after taking into account the Participant's synthetic equity and the nonallocation event exceeds (ii) the number of shares of employer stock equal to 49.9% of the total number of shares of employer stock outstanding after taking the nonallocation event into account (causing a Nonallocation Year to occur).   The amount transferred under this Section shall be the amount that the Administrator determines to be the minimum amount that is necessary to ensure that a Nonallocation Year does not occur, but in no event is the amount so transferred to be less than the excess of (i) over (ii). The Administrator shall take steps to ensure that all actions necessary to implement the transfer are taken before the nonallocation event occurs.

      (ii)   A.   Except as provided for in paragraph (B), below, at the date of the transfer, the total number of shares transferred, as provided for in paragraph (i), above, shall be charged against the accounts of Participants who are Disqualified Persons (i) by first reducing the Employer Securities Account in the ESOP portion of the Plan for the Participant who is a Disqualified Person whose account has the largest number of

v

shares (with the addition of synthetic equity shares) and (ii) thereafter by reducing the Employer Securities Account in the ESOP Portion of the Plan for each succeeding Participant who is a Disqualified Person who has the largest number of shares in his or her account (with the addition of synthetic equity shares). Immediately following the transfer, the number of transferred shares charged against any Participant's account in the ESOP portion of the Plan shall be credited to an account established for that Participant in the Non-ESOP portion of the Plan.

B. Notwithstanding paragraph (A), above, the number of shares transferred shall be charged against the accounts of Participants who are Disqualified Persons (1) by first reducing the account of the Participant with the fewest shares (including synthetic equity shares) who is a Disqualified Person and who is a Highly Compensated Employee to cause the Participant not to be a Disqualified Person, and (2) thereafter reducing the account of each other Participant who is a Disqualified Persons and a Highly Compensated Employee, in order of who has the fewest ESOP shares (including synthetic equity shares). A transfer under this paragraph only applies to the extent that the transfer results in fewer shares being transferred than in a transfer under paragraph (A), above.

(iii) A. If two or more Participants described in paragraph 3.7(f)(8)(B) have the same number of shares, the account of the Participant with the longest service shall be reduced first.

B. Beneficiaries of the Plan are treated as Plan Participants for purposes of this Section.

(C)   **Income Taxes.** If the Trust owes income taxes as a result of unrelated business taxable income under Code §512(e), or any similar tax imposed by a state or local taxing authority, with respect to shares of employer stock held in the Non-ESOP portion of the Plan, the income tax payments made by the Trustee shall be charged against the accounts of each Participant or Beneficiary who has an account in the Non-ESOP portion of the Plan in proportion to the ratio of the shares of employer stock in such Participant's or Beneficiary's account in the non-ESOP portion of the Plan to the total shares of employer stock in the non-ESOP portion of the Plan. The Employer shall purchase shares of employer stock from the Trustee with cash (based on the fair market value of the shares so purchased) from each such account to the extent cash is not otherwise available to make the income tax payments from the Participant's or Beneficiary's Other Investments Account in the Plan or his or her other defined contribution plan accounts.

### Article 4
### Plan Benefits

4.1 **Benefit Upon Normal Retirement.** Every Participant who has a Termination of Employment with an Employer coinciding with or next following attainment of Normal Retirement Age will be entitled upon such Termination of Employment to receive his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made in accordance with Section 5.1.

4.2 **Benefit Upon Late Retirement.** A Participant who has reached Normal Retirement Age may elect to remain employed and retire at a later date. Such Participant will continue to participate in the Plan and his or her Participant's Account will continue to receive allocations under Article 3. Upon actual retirement, the Participant will be entitled to his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution will be made in accordance with Section 5.1.

4.3 **Benefit Upon Death.** Upon the death of a Participant prior to Termination of Employment, or upon the death of a Terminated Participant prior to distribution of his or her Vested Aggregate Account, his or her Beneficiary will be entitled to the Participant's Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. If any Beneficiary who is living on the date of the Participant's death dies prior to receiving his or her entire death benefit, the portion of such death benefit will be paid to the estate of such deceased Beneficiary. The Administrator's determination that a Participant has died and that a particular person has a right to receive a death benefit will be final. Distribution under this Section will be made in accordance with Section 5.2.

4.4 **Benefit Upon Disability.** If a Participant suffers a Disability prior to Termination of Employment, or if a Terminated Participant suffers a Disability prior to distribution of his or her Vested Aggregate Account balance, he or she will be entitled to his or her Vested Aggregate Account balance determined as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution under this Section will be made in accordance with Section 5.3.

4.5 **Benefit Upon Termination of Employment.** A Terminated Participant will be entitled to his or her Vested Aggregate Account balance as of the most recent Valuation Date coinciding with or immediately preceding the date of distribution. Distribution to a Terminated Participant who does not die prior to distribution or who does not suffer a Disability prior to distribution will be made under Section 5.4.

4.6 **Determination of Vested Interest.** A Participant's Vested Interest in his or her Participant's Account will be determined in accordance with the following provisions:

(a) **100% Vesting Upon Retirement.** A Participant will have a 100% Vested Interest in his or her Participant's Account upon reaching Normal Retirement Age at or prior to Termination of Employment.

(b) **Vesting of Employer Contributions.** Except as otherwise provided in paragraph (a) above, a Participant's Vested Interest in his or her Participant's Account will be determined at any time by the vesting schedule following this paragraph based on the Participant's credited Years of Service on the date the determination is made. No Years of Service will be counted in determining a Participant's Vested Interest under this paragraph that are credited prior to the date a Participant reaches Age 18 or are credited during any period for which the Employer did not maintain this Plan or a predecessor plan (as that term is defined for purposes of Code §411(a)(4)(C) and Regulation §1.411(a)-5(b)(3)(i)).

1 Year of Service...............0% Vested
2 Years of Service...........20% Vested
3 Years of Service...........40% Vested
4 Years of Service...........60% Vested
5 Years of Service...........80% Vested
6 Years of Service..........100% Vested

v

(c)    **Vesting While Performing Qualified Military Service.** In determining the Vested Interest of a Participant who dies while performing Qualified Military Service, Vesting credit will be given for the period of such Participant's Qualified Military Service. In addition, a Participant who suffers a Disability while performing Qualified Military Service will receive Vesting credit for the period of such Participant's Qualified Military Service.

(d)    **Amendments to the Vesting Schedule.** No amendment to the Plan may directly or indirectly reduce a Participant's Vested Interest in his or her Participant's Account. If the Plan is amended in any way that directly or indirectly affects the computation of a Participant's Vested Interest in his or her Participant's Account, or the Plan is deemed amended by an automatic change to or from a Top Heavy Vesting schedule, then the following provisions will apply:

(1)    **Participant Election.** Any Participant with at least three Years of Service for eligibility purposes may, by filing a written request with the Administrator, elect to have the Vested Interest in his or her Participant's Account computed by the Vesting schedule in effect prior to the amendment. A Participant who fails to make an election will have the Vested Interest computed under the new schedule. The period in which the election may be made will begin on the date the amendment is adopted or is deemed to be made and will end on the latest of (A) 60 days after the amendment is adopted; (B) 60 days after the amendment becomes effective; or (C) 60 days after the Participant is issued written notice of the amendment by the Employer or Administrator.

(2)    **Preservation of Vested Interest.** Notwithstanding the foregoing to the contrary, if the vesting schedule is amended, then in the case of an Employee who is a Participant as of the later of the date such amendment is adopted or the date it becomes effective, the Vested Interest in his or her Participant's Account determined as of such date will not be less than his or her Vested Interest computed under the Plan without regard to such amendment.

v

## Article 5
## Distribution of Benefits

5.1   **Distribution of Benefit Upon Retirement.** Unless a cash-out occurs under Section 5.5, the retirement benefit a Participant is entitled to receive under Section 4.1 or 4.2 will be distributed in the following manner:

    (a)   **Form of Distribution.** Unless a faster form of distribution is provided for in a distribution policy that is promulgated under Section 8.6 by the Administrator, a Participant's benefit will be distributed in substantially equal installments over a 5-year period (unless the Participant elects a longer period). If the Participant's Account balance exceeds $1,035,000, the 5-year period will be extended 1 additional year (but not more than 5 additional years) for each $205,000 or fraction thereof by which the Participant's Account balance exceeds $1,035,000. These dollar limits will be adjusted at the same time and in the same manner as provided in Code §415(d).

    (b)   **Partial Distributions.** If a Participant receives a distribution of less than 100% of his or her Vested Aggregate Account balance, the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

    (c)   **Time of Distribution.** Distribution will be made within a reasonable time after the close of the Plan Year in which Participant Terminates Employment on or after his or her Normal Retirement Date, but distribution must begin no later than the Required Beginning Date. Notwithstanding the foregoing, distribution of a Participant's Employer Securities Account will begin no later than one year after the close of the Plan Year in which the Participant Terminates Employment on or after his or her Normal Retirement Date unless the Participant otherwise elects a later distribution date.

5.2   **Distribution of Benefit Upon Death.** Unless a cash-out occurs under Section 5.5, the benefit a deceased Participant's Beneficiary is entitled to receive under Section 4.3 will be distributed in the following manner:

    (a)   **Surviving Spouse.** If a Participant is married on the date of his or her death, the Participant's surviving Spouse will be entitled to receive a death benefit determined in accordance with the following:

        (1)   **Form of Distribution.** Notwithstanding any other Beneficiary designation by a Participant, if a Participant is married on the date of death, the surviving Spouse will be entitled to receive 100% of the Participant's death benefit unless the surviving Spouse has waived that right under Section 5.8. Unless a faster form of distribution is provided for in a distribution policy that is promulgated under Section 8.6 by the Administrator, the benefit will be distributed in substantially equal installments over a 5-year period (unless the surviving Spouse elects a longer period). If the Participant's Account balance exceeds $1,035,000, the 5-year period will be extended 1 additional year (but not more than 5 additional years) for each $205,000 or fraction thereof by which the Participant's Account balance exceeds $1,035,000. These dollar limits will be adjusted at the same time and in the same manner as provided in Code §415(d).

        (2)   **Time of Distribution.** The surviving Spouse may elect (1) to have any death benefit to which he or she is entitled distributed within a reasonable time after the close of the Plan Year in which the Participant dies; or (2) to defer distribution of the benefit, but distribution may not be deferred beyond December 31st of the calendar year in which the deceased Participant would have attained Age 70½. Notwithstanding the foregoing, distribution of a Participant's Employer Securities Account will begin no later than one year after the close of the Plan Year in which the Participant dies unless the Spouse otherwise elects a later distribution date. If the surviving Spouse dies before distribution begins, distribution will be made as if the surviving Spouse were the Participant. Distribution will be considered as having commenced when the deceased Participant would have reached Age 70½ even if payments have been made to the surviving Spouse before that date.

    (b)   **Non-Spouse Beneficiary.** Unless a faster form of distribution is provided for in a distribution policy that is promulgated under Section 8.6 by the Administrator, any death benefit a non-Spouse Beneficiary is entitled to receive will be distributed in substantially equal installments over a 5-year period (unless the surviving Spouse elects a longer period). If the Participant's Account balance

- 30 -

exceeds $1,035,000, the 5-year period will be extended 1 additional year (but not more than 5 additional years) for each $205,000 or fraction thereof by which the Participant's Account balance exceeds $1,035,000. These dollar limits will be adjusted at the same time and in the same manner as provided in Code §415(d). Distribution of a Participant's Employer Securities Account will begin no later than one year after the close of the Plan Year in which the Participant dies unless the Beneficiary otherwise elects a later distribution date.

(c)  **Distribution If the Participant or Other Payee Is In Pay Status.** If a Participant or Beneficiary who has begun receiving distribution of a benefit dies before the entire benefit is distributed, the balance will be distributed to the Participant's Beneficiary (or Beneficiary's beneficiary) at least as rapidly as under the method of distribution being used on the date of the Participant's or Beneficiary's death.

(d)  **Payments to a Beneficiary.** In the absence of a Beneficiary designation or other directive from the deceased Participant to the contrary, any Beneficiary may name his or her own Beneficiary to receive any benefits payable in the event of the Beneficiary's death prior to receiving the entire death benefit to which the Beneficiary is entitled; and if a Beneficiary has not named his or her own Beneficiary, the Beneficiary's estate will be the Beneficiary. If any benefit is payable under this paragraph to a Beneficiary of the deceased Participant's Beneficiary or to the estate of the deceased Participant's Beneficiary or to any other Beneficiary or the estate thereof, subject to the limitations regarding the latest dates for benefit payment in paragraphs (a) and (c) above, the Administrator may (1) continue to pay the remaining value of such benefits in the amount and form already commenced, or pay such benefits in any other manner permitted under the Plan for a Participant or Beneficiary, and (2) if payments have not already commenced, pay such benefits in any other manner permitted under the Plan. Distribution to the Beneficiary of a Beneficiary must begin no later than the date distribution would have been made to the Participant's Beneficiary. The Administrator's determination under this paragraph will be final and will be applied in a non-discriminatory manner that does not discriminate in favor of Participants who are Highly Compensated Employees.

(e)  **Partial Distributions.** If a Participant's Beneficiary receives a distribution of less than 100% of the Participant's Vested Aggregate Account balance, the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

5.3  **Distribution of Benefit Upon Disability.** Unless a cash-out occurs under Section 5.5, the Disability benefit a Participant is entitled to receive under Section 4.4 will be distributed in the following manner:

(a)  **Form of Distribution.** Unless a faster form of distribution is provided for in a distribution policy that is promulgated under Section 8.6 by the Administrator, a Participant's benefit will be distributed in substantially equal installments over a 5-year period (unless the Participant elects a longer period). If the Participant's Account balance exceeds $1,035,000, the 5-year period will be extended 1 additional year (but not more than 5 additional years) for each $205,000 or fraction thereof by which the Participant's Account balance exceeds $1,035,000. These dollar limits will be adjusted at the same time and in the same manner as provided in Code §415(d).

(b)  **Partial Distributions.** If a Participant receives a distribution of less than 100% of his or her Vested Aggregate Account balance, the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

(c)  **Time of Distribution.** Distribution will be made within an administratively reasonable time after the close of the first Plan Year following the Plan Year in which the Participant Terminates Employment because of the Disability unless the Participant otherwise elects a later distribution date.

5.4  **Distribution of Benefit Upon Termination of Employment.** Unless a cash-out occurs under Section 5.5 or a prior distribution has been made under Section 5.2 or 5.3, the benefit a Terminated Participant is entitled to receive under Section 4.5 will be distributed in the following manner:

(a)  **Form of Distribution.** Unless a faster form of distribution is provided for in a distribution policy that is promulgated under Section 8.6 by the Administrator, a Participant's benefit will be distributed in

- 31 -

v

substantially equal installments over a 5-year period (unless the Participant elects a longer period). If the Participant's Account balance exceeds $1,035,000, the 5-year period will be extended 1 additional year (but not more than 5 additional years) for each $205,000 or fraction thereof by which the Participant's Account balance exceeds $1,035,000. These dollar limits will be adjusted at the same time and in the same manner as provided in Code §415(d).

(b)     **Partial Distributions.** If a Participant receives a distribution of less than 100% of his or her Vested Aggregate Account balance, the Administrator will determine the portion (including zero) of the distribution that will be made from each of the Participant's sub-accounts, provided that any such determination is made in a uniform nondiscriminatory manner.

(c)     **Time of Distribution.** Distribution will be made to the Terminated Participant within an administratively reasonable time after the close of the fifth Plan Year following the Plan Year of his or her Termination of Employment, but not later than one year after the close of the fifth Plan Year following the Plan Year in which the Participant incurs his or her Termination of Employment, unless the Participant elects a later distribution date. If a Terminated Participant is reemployed by the Employer as of the last day of the fifth Plan Year following the Plan Year of such Termination of Employment, distribution of his or her Employer Securities Account will be postponed until the Participant is otherwise entitled to a distribution under the Plan.

5.5     **Mandatory Cash-Out of Benefits.** The Vested Aggregate Account of a Terminated Participant who satisfies the requirements of this Section will be mandatorily distributed (a "cash-out") without the Participant's consent in accordance with the following provisions:

(a)     **Cashout Threshold.** The Administrator can only make a distribution under this Section if a Participant's Vested Aggregate Account on the date of distribution does not exceed $1,000 (such amount hereafter referred to as the "Cashout Threshold"). If a Participant would have received a distribution under the preceding sentence but for the fact that the Participant's Vested Aggregate Account exceeded the Cashout Threshold when the Participant Terminated Employment, and if at a later time the Participant's Vested Aggregate Account is reduced to an amount not greater than the Cash-out Threshold in effect at that later time, then the Administrator will distribute such amount or remaining amount in a lump sum without the Participant's consent. Any portion of the Participant's Account which is not Vested will be treated as a Forfeiture.

(b)     **Time and Form of Distribution.** Any distribution under this Section will be made as soon as administratively feasible after the Plan Year in which the Participant Terminates Employment (or, if applicable, as soon as administratively feasible after a Terminated Participant's Vested Aggregate Account no longer exceeds the Cash-out Threshold). Distribution will, at the election of the Participant, be made in the form of a lump sum cash payment or as a direct rollover under Section 5.14. If the Participant fails to make a timely election, distribution will made in the form of a lump sum cash payment not less than 30 days and not more than 180 days (or such other time as permitted by law) after the Code §402(f) notice is provided to the Participant.

5.6     **Restrictions on Immediate Distributions.** If a Participant's Vested Aggregate Account balance exceeds the amount set forth in paragraph (a) of this Section and is Immediately Distributable, such account can only be distributed in accordance with the following provisions:

(a)     **General Rule.** If (1) the Vested Aggregate Account balance of a Terminated Participant exceeds $5,000, or if there are remaining payments to be made with respect to a particular distribution option that previously commenced, and (2) such amount is Immediately Distributable, then the Participant must consent to any distribution of such amount. If (1) the Vested Aggregate Account balance of a Terminated Participant does not exceed $5,000, but (if applicable) exceeds the cash-out threshold set forth in Section 5.5(a), and (2) such amount is Immediately Distributable, then only the Participant (or where the Participant has died, the Participant's Spouse or Beneficiary) must consent to any distribution of such amount.

(b)     **Consent Requirement.** The consent of the Participant to any benefit that is Immediately Distributable must be obtained in writing within the 180-day period ending on the Annuity Starting Date. The Participant is not required to consent to a distribution that is required by Code §401(a)(9) or §415.

- 32 -

v

(c) **Notification Requirement.** The Administrator must notify the Participant of the right to defer any distribution until it is no longer Immediately Distributable. Notification will include a general explanation of the material features and relative values of the optional forms of benefit available in a manner that would satisfy the notice requirements of Code §417(a)(3); and will be provided no less than 30 days or more than 180 days prior to the Annuity Starting Date. However, distribution of a Participant's benefit may begin less than 30 days after the such notice is given if (1) the Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving notice to consider the decision of whether or not to elect a distribution; (2) the Participant, after receiving the notice, affirmatively elects a distribution or a particular distribution option.

(d) **Consent Not Needed on Plan Termination.** If upon Plan termination neither the Employer nor an Affiliated Employer maintains another defined contribution plan (other than an employee stock ownership plan as defined in Code §4975(e)(7)), then the Participant's benefit will, without the Participant's consent, be distributed to the Participant. If the Employer or an Affiliated Employer maintains another defined contribution plan (other than an employee stock ownership plan), then the Participant's benefit will, without the Participant's consent, be transferred to the other plan if the Participant does not consent to an immediate distribution under this Section.

5.7 **Accounts of Rehired Participants.** If a Participant who is not 100% Vested in his or her Participant's Account Terminates Employment, a Forfeiture of all or a portion of the Participant's Account of the Terminated Participant may have occurred, and the Participant is subsequently reemployed by the Employer, then his or her Participant's Account will be administered in accordance with the following:

(a) **Reemployment of a Participant After 5 Consecutive Breaks in Service.** If the Participant is reemployed by the Employer after incurring five consecutive Breaks in Service, then any previous Forfeiture of the Participant's Account will not be restored under the terms of this Plan.

(b) **Reemployment of a Non-Vested Participant Before 5 Consecutive Breaks in Service.** If a Participant's Vested Interest in the entire Participant's Account balance attributable to Employer contributions is 0% on the date that the Participant Terminates Employment, the Participant is deemed to have received a distribution of such Vested Interest on the date of such Termination of Employment pursuant to the Section 3.3(a)(1), a Forfeiture of the Participant's Account balance attributable to Employer contributions occurs on the date of such Termination of Employment pursuant to Section 3.3(a)(1), and the Participant is subsequently reemployed by the Employer before incurring five consecutive Breaks in Service, then the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will be restored, calculated as of the date that the Forfeiture occurred (unadjusted by subsequent gains and losses). Such restoration of the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will occur in the Plan Year that such Participant is reemployed by the Employer.

(c) **Reemployment of a Vested Participant Before 5 Consecutive Breaks in Service.** If a Participant's Vested Interest in the Participant's Account balance attributable to Employer contributions is less than a 100% (but greater than 0%) on the date that the Participant Terminates Employment, a Forfeiture of the non-Vested portion of the Participant's Account balance attributable to Employer contributions of the Terminated Participant may have occurred, and the Participant is subsequently reemployed by the Employer before incurring five consecutive Breaks in Service, then the following provisions apply:

(1) **Distribution Has Occurred But No Forfeiture Has Occurred.** If a Forfeiture of the non-Vested portion of the Participant's Account balance attributable to Employer contributions has not occurred but a distribution of all or a portion of the Participant's Account of the Terminated Participant has occurred, then a separate bookkeeping account will be established for the Participant's Account at the time of distribution; the Participant's Vested Interest in the separate bookkeeping account at any relevant time will be an amount ("X") determined according to the following formula: $X = P(AB + (R \times D)) - (R \times D)$. In applying the formula, "P" is the Vested Interest at the relevant time, "AB" is the respective account balance at the relevant time, "D" is the amount of the distribution, and "R" is the ratio of the respective account balance at the relevant time to the respective account balance after the distribution.

- 33 -

v

    (2) **No Distribution Has Occurred But Forfeiture Has Occurred.** If a Forfeiture of the non-Vested portion of the Participant's Account balance attributable to Employer contributions has occurred and the Terminated Participant is reemployed by the Sponsoring Employer or an Affiliated Employer before incurring five consecutive Breaks in Service and before receiving a distribution of the Vested Interest in his or her Participant's Account balance attributable to Employer contributions, then the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will be restored, calculated as of the date that the Forfeiture occurred (unadjusted by subsequent gains and losses). Such restoration of the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will occur in the Plan Year that such Participant is reemployed by the Employer.

    (3) **Both Distribution and Forfeiture Have Occurred.** If a distribution of all or a portion of the Vested Interest in the Participant's Account of a Terminated Participant has occurred and a Forfeiture of the non-Vested portion of the Participant's Account attributable to Employer contributions has occurred (which may not necessarily occur at the same time that the distribution occurs), then the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will be restored, calculated as of the date the Forfeiture occurred (unadjusted by subsequent gains and losses) and based upon the Sponsoring Employer's decision whether the Participant is required to repay the full amount of all distributions attributable to Employer contributions. With respect to such decision of the Sponsoring Employer whether the Participant is required to repay to the Plan the full amount of all distributions attributable to Employer contributions, in order to have the previous Forfeiture of such Participant's Account balance attributable to Employer contributions be restored, the following provisions will apply:

        (A) **Precedent Established.** Once such a decision by the Sponsoring Employer is made, it will establish precedence for the Plan and cannot be changed, altered or modified.

        (B) **Time of Restoration If Repayment Is Not Required.** If, based upon the Sponsoring Employer's decision, the Participant is not required to repay to the Plan the full amount of all distributions which were attributable to Employer contributions in order to have the previous Forfeiture of such Participant's Account balance attributable to Employer contributions be restored, then such restoration will occur in the Plan Year in which the Participant is reemployed by the Employer.

        (C) **Time of Restoration If Repayment Is Required.** If, based upon the Sponsoring Employer's decision, the Participant is required to repay to the Plan the full amount of all distributions which were attributable to Employer contributions in order to have the previous Forfeiture of such Participant's Account attributable to Employer contributions be restored, then such repayment by the Participant must be made before the earlier of (i) five years after the Participant's Reemployment Commencement Date, or (ii) the date on which the Participant incurs five consecutive Breaks in Service following the date of distribution of either the entire or the remaining Vested Interest in the Participant's Account. Such restoration of the previous Forfeiture of such Participant's Account balance attributable to Employer contributions will occur in the Plan Year that the Participant repays to the Plan the full (or any remaining) amount of the distribution which was attributable to Employer contributions.

  (d) **Sources for Restoration.** The sources to restore a previous Forfeiture of the non-Vested portion of the Participant's Account balance attributable to Employer contributions pursuant to this Section will be made first by using available Forfeitures to restore the previous Forfeiture and, if such available Forfeitures are insufficient to restore the previous Forfeiture, by the Employer making a special Employer contribution to the Plan to the extent necessary to restore the previous Forfeiture.

**5.8** **Spousal Consent Requirements.** A surviving Spouse's election not to receive a death benefit under Section 5.2 will not be effective unless (1) the election is in writing; (2) the election designates a specific Beneficiary or form of benefit that cannot be changed without spousal consent (or the Spouse's consent expressly permits designations by the Participant without any requirement of further spousal consent); and (3) the Spouse's consent acknowledges the effect of the election and is witnessed by the Administrator or a notary public.

5.9     **Required Minimum Distributions.** All distributions will be determined and made in accordance with the final Regulations under Code §401(a)(9), including the incidental death benefit rules of Code §401(a)(9)(G). Pursuant to those Regulations, all distributions will be determined in accordance with the following:

(a)     **General Rules.** All distributions hereunder will be made in accordance with these general rules: (1) the requirements of this Section will take precedence over any inconsistent Plan provisions; and (2) all distributions required under this Section will be determined and made in accordance with the Regulations under Code §401(a)(9).

(b)     **Time and Manner of Distribution.** All required minimum distributions will be made from the Plan in the following time and in the following manner:

    (1)     **Required Beginning Date.** The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

    (2)     **Death of Participant Before Distributions Begin.** If the Participant dies before distribution begins, the Participant's entire interest will be distributed (or begin to be distributed) not later than set forth in the following provisions:

        (A)     **5-Year Rule Applies to All Distributions to Designated Beneficiaries.** If the Participant dies before distributions begin and there is a Designated Beneficiary, the Participant's entire interest will be distributed to the Designated Beneficiary by December 31 of the calendar year containing the fifth anniversary of the Participant's death. If the Participant's surviving Spouse is the Participant's sole Designated Beneficiary and the surviving Spouse dies after the Participant but before distributions to either the Participant or the surviving Spouse begin, this subparagraph will apply as if the surviving Spouse were the Participant. This subparagraph also applies to all distributions.

        (B)     **Date Distributions Are Deemed To Begin.** For purposes of this subparagraph (b)(2) and paragraph (d), unless subparagraph (b)(2)(B)(iv) above applies, distributions are considered to begin on the Participant's Required Beginning Date. If subparagraph (b)(2)(B)(iv) above applies, distributions are considered to begin on the date distributions are required to begin to the surviving Spouse under subparagraph (b)(2)(B)(i) above. If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving Spouse before the date distributions are required to begin to the surviving Spouse under subparagraph (b)(2)(B)(i)), then the date distributions are considered to begin is the date distributions actually commence.

    (3)     **Forms of Distribution.** Unless the Participant's interest is distributed as an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first Distribution Calendar Year distributions will be made in accordance with paragraphs (c) and (d). If the Participant's interest is distributed as an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code §401(a)(9) and the Regulations.

(c)     **Required Minimum Distributions During the Participant's Lifetime.** The amount of required minimum distributions during a Participant's lifetime will be determined as follows:

    (1)     **Amount of Required Distribution Each Distribution Calendar Year.** During the Participant's lifetime, the minimum amount that will be distributed each Distribution Calendar Year is the lesser of (A) the quotient obtained by dividing the Participant's Account Balance by the distribution period in the Uniform Lifetime Table set forth in Regulation §1.401(a)(9)-9, using the Participant's age as of the Participant's birthday in the Distribution Calendar Year; or (B) if the Participant's sole Designated Beneficiary for the Distribution Calendar Year is the Participant's Spouse, then the quotient obtained by dividing the Participant's Account Balance by the number in the Joint and Last Survivor Table set forth in Regulation §1.401(a)(9)-9, using

v

the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the Distribution Calendar Year.

(2) **Required Minimum Distributions Continue Through Year of Participant's Death.** Required minimum distributions will be determined under this paragraph (c) beginning with the first Distribution Calendar Year and up to and including the Distribution Calendar Year that includes the Participant's date of death.

(d) **Required Minimum Distributions After the Participant's Death.** Required minimum distributions will be made after a Participant's death in accordance with the following provisions:

(1) **Death On or After Distributions Begins.** If a Participant dies on or after the date distribution begins, then the amount of a required minimum distribution will be determined as follows:

(A) **Participant Survived by Designated Beneficiary.** If the Participant dies on or after the date distributions begin and there is a Designated Beneficiary, then the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the longer of the remaining Life Expectancy of the Participant or the remaining Life Expectancy of the Designated Beneficiary, determined in accordance with the following:

(i) **Calculation of Participant's Remaining Life Expectancy.** The Participant's remaining Life Expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

(ii) **Surviving Spouse Is Sole Designated Beneficiary.** If the Participant's surviving Spouse is the Participant's sole Designated Beneficiary, then the remaining Life Expectancy of the surviving Spouse is calculated for each Distribution Calendar Year after the year of the Participant's death using the surviving Spouse's age as of the Spouse's birthday in that Distribution Calendar Year. For Distribution Calendar Years after the year of the surviving Spouse's death, the remaining Life Expectancy of the surviving Spouse is calculated using the age of the surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death, reduced by one for each subsequent calendar year.

(iii) **Surviving Spouse Is Not Sole Designated Beneficiary.** If the Participant's surviving Spouse is not the Participant's sole Designated Beneficiary, then the Designated Beneficiary's remaining Life Expectancy is calculated using the age of the Beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent calendar year.

(B) **No Beneficiary Is Designated.** If the Participant dies on or after the date distributions begin and there is no Designated Beneficiary as of September 30 of the year after the year of the Participant's death, then the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the Participant's remaining Life Expectancy calculated using the age of the Participant in the year of death, reduced by one each subsequent year.

(2) **Death Before the Date Distribution Begins.** If a Participant dies before the date distribution begins, then the amount of a required minimum distribution will be determined as follows:

(A) **Participant Survived by Designated Beneficiary.** If (i) a Participant (or, if no election is made by the Participant prior to the Participant's death, then the Participant's Designated Beneficiary) is permitted to elect the Life Expectancy rule of subparagraph (b)(2)(B); (ii) the Participant dies before the date distributions begin; and (iii) there is a Designated Beneficiary, then the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing

- 36 -

the Participant's Account Balance by the remaining Life Expectancy of the Participant's Designated Beneficiary, determined as provided in subparagraph (d)(1).

(B) **No Beneficiary Is Designated.** If the Participant dies before the date distributions begin and there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, then distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

**5.10 Statutory Commencement of Benefits.** Unless the Participant otherwise elects, distribution of a Participant's benefit must begin no later than the 60th day after the latest of the close of the Plan Year in which the Participant (1) reaches the earlier of Age 65 or Normal Retirement Age; (2) reaches the 10th anniversary of the year he or she began Plan participation; or (3) Terminates Employment. However, the failure of a Participant to consent to a distribution while a benefit is Immediately Distributable will be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this Section.

**5.11 Post-Termination Earnings.** As of the Valuation Date coinciding with or next following the date a Participant Terminates Employment for any reason, the Administrator will, until a distribution is made to the Participant or the Participant's Beneficiary in accordance with Sections 5.1, 5.2, 5.3, 5.4, or 5.5, direct the Trustee in a uniform nondiscriminatory manner to either (a) invest the Participant's Account balance determined as of such Valuation Date in a separate interest bearing account; or (b) leave the Participant's Account balance as part of the general Trust Fund. If the Participant's Account balance remains as part of the general Trust Fund, then such account will either (a) share in the allocation of net earnings and losses under Section 3.2 as a non-segregated account, or (b) be granted interest at a rate consistent with the interest bearing investments of the Trust Fund.

**5.12 Distribution in the Event of Legal Incapacity.** If any person entitled to benefits (the "Payee") is under any legal incapacity by virtue of age or mental condition, payments may be made in one or more of the following ways as directed by the Administrator: (a) to the Payee directly; (b) to a court-appointed guardian of the Payee; (c) to the person or entity holding a valid power of attorney of the Payee or the Payee's estate; (d) any other person or entity authorized under State (or Commonwealth) law to receive benefits on behalf of the Payee; or (e) if the Payee is a minor, to the authorized person or entity of the Payee (e.g., custodian or guardian) under any Uniform Transfers to Minors Act or Uniform Gifts to Minors Act.

**5.13 Missing Payees and Unclaimed Benefits.** With respect to a Participant or Beneficiary who has not claimed any benefit (the "missing payee") to which such missing payee is entitled, and with respect to any Participant or Beneficiary who has not satisfied the administrative requirements for benefit payment, the Administrator may elect to either (1) to segregate the benefit into an interest bearing account, in which event an annual maintenance fee as may be set from time to time in a written administrative policy established by the Sponsoring Employer may be assessed against the segregated account; (2) subject to a written administrative policy established by the Administrator, distribute the benefit at any time in any manner which is sanctioned by the Internal Revenue Service and/or the Department of Labor; or (3) treat the entire benefit as a Forfeiture. If a missing payee whose benefit has been forfeited is located, or if a payee whose benefit has been forfeited for failure to satisfy the administrative requirements for benefit payment subsequently satisfies such administrative requirements and claims his or her benefit, and if the Plan has not terminated (or if the Plan has terminated, all benefits have not yet been paid), then the benefit will be restored. The Administrator, on a case by case basis, may elect to restore the benefit by the use of earnings from non-segregated assets of the Fund, by Employer contributions, or by any combination thereof. However, if any such payee has not been located (or satisfied the administrative requirements for benefit payment) by the time the Plan terminates and all benefits have been distributed from the Plan, the Forfeiture of such unpaid benefit will be irrevocable.

**5.14 Direct Rollovers.** Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election, a Distributee may elect, at the time and in the manner prescribed by the Plan, to have any portion of an eligible rollover distribution that is equal to at least $500 paid directly to an Eligible Retirement Plan specified by the Distributee in a direct rollover. If an eligible rollover distribution is less than $500, then a Distributee may not make the election in the preceding sentence to rollover a portion of the eligible rollover distribution.

(a) **Definitions.** As used in this Section, the following words and phrases have the following meanings:

v

(1)  **Direct Rollover.** The term "Direct Rollover" means a payment by the Plan to the Eligible Retirement Plan that is specified by the Distributee.

(2)  **Distributee.** The term "Distributee" means an Employee or former Employee. An Employee's or former Employee's surviving Spouse and an Employee's or former Employee's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order as defined in Code §414(p) are also Distributees with regard to the interest of the Spouse or former Spouse.

(3)  **Eligible Retirement Plan.** The term "Eligible Retirement Plan" means (A) an individual retirement account described in Code §408(a); (B) an individual retirement annuity described in Code §408(b); (C) an annuity plan described in Code §403(a); (D) an annuity contract described in Code §403(b); (E) a qualified trust described in Code §401(a); (F) an eligible deferred compensation plan under Code §457(b) maintained by a State (or Commonwealth), a political subdivision of a State (or Commonwealth), or any agency or instrumentality of a State (or Commonwealth) or political subdivision of a State (or Commonwealth); and which agrees to separately account for amounts transferred therein from this Plan; or (G) a Roth individual retirement account as described in Code §408A(b). This definition of Eligible Retirement Plan will also apply in the case of a distribution to a surviving Spouse, or to a Spouse or former Spouse who is the alternate payee under a qualified domestic relation order under Code §414(p); such distribution will be made in the same manner as if the Spouse was the Employee. If any portion of an Eligible Rollover Distribution is attributable to distributions from an individual's Roth Elective Deferral Account, then an Eligible Retirement Plan with respect to such portion will only be another plan's designated Roth account of the individual from whose account the payments or distributions were made, or such individual's Roth individual retirement account as described in Code §408A(b).

(4)  **Eligible Rollover Distribution.** The term "Eligible Rollover Distribution" means any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: (A) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; (B) any distribution to the extent that such distribution is a required minimum distribution under Code §401(a)(9); (C) if applicable to the Plan, the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to Employer securities); (D) if applicable to the Plan, corrective distributions of: (i) Excess Deferrals as described in Regulation §1.402(g)–1(e)(3) including any income allocable to such corrective distributions; (ii) Excess Contributions under a 401(k) Plan described in Regulation §1.401(k)–1(f)(4) including any income allocable to such corrective distributions; and (iii) Excess Aggregate Contributions described in Regulation §1.401(m)–2(b)(2) including any income allocable to such distributions; (E) if applicable to the Plan, loans that are treated as deemed distributions pursuant to Code §72(p) (F) if applicable to the Plan, dividends paid on Employer securities as described in Code §404(k); (G) if applicable to the Plan, the costs of life insurance coverage (P.S. 58 costs); (H) if applicable to the Plan, prohibited allocations that are treated as deemed distributions pursuant to Code §409(p); (I) if applicable to the Plan, the portion of any distribution which is attributable to a financial hardship distribution; (J) if applicable to the Plan, a distribution that is a permissible withdrawal from an eligible automatic contribution arrangement within the meaning of Code §414(w); and (K) any other distribution that is reasonably expected to total less than $200 during a year.

(b)  **Direct Rollover By a Non-Spouse Beneficiary.** A Beneficiary who (a) is other than the Participant's Spouse and (b) is considered to be a Designated Beneficiary under Code §401(a)(9)(E) (known as a "Non-Spouse Designated Beneficiary") may establish an individual retirement account under Code §408(a) or an individual retirement annuity under Code §408(b) (known as an "Inherited IRA") into which all or a portion of a death benefit (to which such Non-Spouse Designated Beneficiary is entitled) can be transferred in a direct trustee-to trustee transfer (a direct rollover). Notwithstanding the above, any amount payable to a Non-Spouse Designated Beneficiary that is deemed to be a required minimum distribution pursuant to Code §401(a)(9) may not be transferred into such Inherited IRA. The Non-

- 38 -

v

Spouse Designated Beneficiary may deposit into such Inherited IRA all or any portion of the death benefit that is deemed to be an eligible rollover distribution (but for the fact that the distribution is not an eligible rollover distribution because the distribution is being paid to a Non-Spouse Designated Beneficiary). In determining the portion of such death benefit that is considered to be a required minimum distribution that must be made from the Inherited IRA, the Non-Spouse Designated Beneficiary may elect to use either the 5-year rule or the life expectancy rule, pursuant to Regulation §1.401(a)(9)-3, Q&A-4(c). Any distribution made pursuant to this Section is not subject to the direct rollover requirements of Code §401(a)(31), the notice requirements of Code §402(f), or the mandatory withholding requirements of Code §3405(c). If a Non-Spouse Designated Beneficiary receives a distribution from the Plan, then the distribution is not eligible for the "60-day" rollover rule. If the Participant's Non-Spouse Designated Beneficiary is a trust, then the Plan may make a direct rollover to an individual retirement account on behalf of the trust, provided the trust satisfies the requirements to be a Designated Beneficiary within the meaning of Code §401(a)(9)(E). In order to be able to roll over the distribution, the distribution otherwise must satisfy the definition of an eligible rollover distribution. Any such distribution is not subject to the direct rollover requirements of Code §401(a)(31) (including Code §401(a)(31)(B), the notice requirements of Code §402(f) or the mandatory withholding requirements of Code §3405(c)).

5.15  **Distributions of Stock.** All distributions made under the other provisions of this Article 5 will be in the form of cash or Employer Securities, or both, subject to the following provisions:

(a)  **Participant May Demand Employer Securities.** Prior to a distribution, the Administrator will advise a Participant or Beneficiary in writing of his or her right to demand that benefits be distributed solely in Employer Securities. If the Participant or Beneficiary fails to make such demand in writing within 90 days after receipt of such written notice, the Participant's Vested Aggregate Account will be distributed in the form of Employer Securities to the extent they are allocated to the Participant's Employer Securities Account, and the balance of the Vested Aggregate Account will be distributed in cash. Notwithstanding any other provision of the Plan to the contrary, if the Employer is an S Corporation as defined in Code §1361, or if the charter or by-laws of the Employer restrict the ownership of substantially all outstanding Employer Securities to Employees or the Trust, then the Administrator may restrict distributions made under this Article 5 to be in the form of cash or the Administrator may permit partial or full distributions in the form of Employer Securities subject to requirements of Section 5.20.

(b)  **Stock Must Be Distributed In Whole Shares.** If a Participant or Beneficiary demands that benefits be distributed solely in Employer Securities, distribution will be made entirely in whole shares of Employer Securities. Any balance in a Participant's Account not attributable to Employer Securities will be applied by the Trustee to acquire for distribution the maximum number of whole shares of Employer Securities at the then fair market value. Any unexpended balance in the Participant's Account will be distributed in cash. If the Trustee is unable to purchase the Employer Securities required for the distribution, the Trustee will make distribution in cash within one year after the date the distribution was to have been made, except in the case of a retirement distribution which must be made within 60 days after the close of the Plan Year in which retirement occurs.

(c)  **Restrictions on Distributed Employer Securities.** Except as provided herein, distributed Employer Securities may be restricted as to sale or transfer by the by-laws or articles of incorporation of the Employer if the restrictions are applicable to all Employer Securities of the same class. If a Participant is required to offer the sale of his or her Employer Securities to the Employer before offering them to a third party, the Employer may not pay a price that is less than that which is offered to the Distributee by another potential buyer making a bona fide offer, and the Trustee may not pay a price that is less than the fair market value of the Employer Securities.

(d)  **Multiple Classes of Employer Securities Acquired With Exempt Loan.** If Employer Securities which were acquired with an Exempt Loan and which are available for distribution consist of more than one class of security, a Participant's or Beneficiary's distribution must receive substantially the same proportion of each such class of such security.

- 39 -

v

5.16   **Cash Dividends on Employer Securities.** At the discretion of the Administrator, cash dividends received on Employer Securities allocated to Participants' Employer Securities Accounts may be distributed currently (or within 90 days after the end of the Plan Year in which such dividends are paid to the Plan) in cash to such Participants on a nondiscriminatory basis. Any such distribution of cash dividends will be limited to Participants who are still Employees, and will be further limited to dividends on shares of Employer Securities in which each such Participant has a Vested Interest.

5.17   **Right of First Refusal.** If Employer Securities that are not Readily Tradable on an Established Securities Market are distributed, then except as otherwise provided in this Section, if any Participant, Beneficiary, or any other person to whom such securities are distributed (the "Selling Participant") at any time desires to sell some or all of such securities (the "Offered Securities") to a third party (the "Third Party"), then the Selling Participant must give written notice thereof to the Employer and Administrator, subject to the following:

    (a)   **Requirements of Written Notice.** The written notice required to be given hereunder must contain the number of shares offered for sale, the proposed terms of the sale, and the names and addresses of both the Selling Participant and the Third Party.

    (b)   **Trust Fund and Employer.** Both the Plan and Employer will have the right of first refusal for a period of 14 days from the date the Selling Participant gives written notice to the Employer and Administrator (such 14 day period to run concurrently against the Plan and the Employer) to acquire the Offered Securities. As between the Plan and Employer, the Plan has priority to acquire the shares pursuant to the right of first refusal. The selling price and terms will be the same as offered by the Third Party.

    (c)   **Third Parties.** If the Plan and the Employer do not exercise their respective rights of first refusal within the required 14 day period provided above, the Selling Participant will have the right, at any time following the expiration of such 14 day period, to dispose of the Offered Securities to the Third Party, provided, however, that no disposition will be made to the Third Party on terms more favorable to the Third Party than those set forth in the written notice delivered by the Selling Participant. If a Third Party is offered terms more favorable than those set forth in the written notice delivered to the Plan and the Employer, then the Offered Securities will again be subject to the right of first refusal.

    (d)   **Time of Closing.** The closing pursuant to the exercise of the right of first refusal will take place at such place as is agreed upon between the Administrator and the Selling Participant, but not later than 10 days after the Employer or the Plan has notified the Selling Participant of the exercise of the right of first refusal. At closing, the Selling Participant will deliver certificates representing the Offered Securities duly endorsed in blank for transfer, or with stock powers attached duly executed in blank with all required transfer tax stamps attached or provided for, and the Employer or the Trustee will deliver the purchase price, or an appropriate portion thereof, to the Selling Participant.

    (e)   **Employer Securities Acquired With an Exempt Loan.** Notwithstanding the foregoing, Employer Securities acquired with an Exempt Loan will be subject to a right of first refusal only for so long as such stock is not publicly traded on an established securities market. The selling price and other terms under the right of first refusal must not be less favorable to the seller than the greater of (1) the value of the Employer Securities as determined under regulation §54.4975-11(d)(5), or (2) the purchase price of the Employer Securities and other terms offered by a buyer (other than the Employer or the Plan) making a good faith offer to purchase such stock. The right of first refusal must lapse no later than 14 days after the Selling Participant gives written notice to the Administrator and Employer that an offer from a Third Party has been received for the Offered Securities. The right of first refusal will comply with paragraphs (a) through (c) above, except to the extent they conflict with this paragraph.

5.18   **Put Option.** If Employer Securities which are not Readily Tradable on an Established Securities Market are distributed to a Participant, he or she will have a right to require the Employer to repurchase such Employer Securities under a fair valuation formula, subject to the following provisions:

v

(a) **Stock Acquired With an Exempt Loan.** Employer Securities acquired with an Exempt Loan will be subject to a put option if such securities (1) are not Readily Tradable on an Established Securities Market, or (2) are subject to a trading limitation when distributed. A trading limitation is a restriction under any federal or state securities law, or an agreement, not prohibited by this Section, which would make such stock not as freely tradable as stock not subject to such restriction.

(b) **Conditions of Exercise.** The put option may only be exercised by a Participant, by the Participant's donees, or by a person (including an estate or its distributee) to whom the Employer Securities passes upon a Participant's death. The put option must permit a Participant to put the Employer Securities to the Employer. Under no circumstances may the put option bind the Plan, but it must grant the Plan an option to assume the rights and obligations of the Employer at the time the put option is exercised. If it is known at the time a loan is made that federal or state law will be violated by the Employer's honoring such put option, the put option must permit the Employer Securities to be put, in a manner consistent with law, to a third party (for example, an affiliate of the Employer or a shareholder other than the Plan) that has substantial net worth at the time the Exempt Loan is made and whose net worth is reasonably expected to remain substantial.

(c) **Duration of Put Option.** The put option will begin as of the day following the date the Employer Securities are distributed and end 60 days thereafter. If not exercised within the 60-day period, an additional 60 day-period will begin on the first day after the new determination of the value of the Employer Securities by the Trustee in the following Plan Year. The period during which a put option is exercisable does not include any time when a distributee is unable to exercise it because the party bound by the option is prohibited from honoring it by federal or state law.

(d) **Manner of Exercise.** The put option will be exercised by the holder notifying the Employer in writing that the put option is being exercised. The notice will state the name and address of the holder and the number of shares to be sold.

(e) **Terms of Payment.** The price at which a put option must be exercised is the value of the Employer Securities determined by an independent appraiser as of the Valuation Date coinciding with or immediately preceding the date the put option is exercised. Payment must be reasonable. The deferral of payment is reasonable if adequate security and reasonable interest are provided for any credit extended and if the cumulative payments at any time are not less than the aggregate of reasonable periodic payments as of such time. Periodic payments are reasonable if annual installments, beginning 30 days after the date the put option is exercised, are substantially equal. The payment period may generally not be more than 5 years after the date the put option is exercised, but it may be extended to a date no later than the earlier of 10 years from the date the put option is exercised or the date the proceeds of the loan used by the Plan to acquire the Employer Securities subject to the put option are entirely repaid.

(f) **Payment Restrictions.** Payment under a put option cannot be restricted by the provisions of a loan or any other arrangement, including the terms of the Employer's articles of incorporation or bylaws, unless so required under applicable state law. An arrangement involving the Plan that creates a put option cannot provide for the issuance of put options other than provided for under this Section. The Plan cannot otherwise obligate itself to acquire Employer Securities from a particular holder thereof at an indefinite time determined upon the happening of an event such as the death of the holder.

(g) **Payment Requirements for Total Distributions.** Notwithstanding the foregoing, if a distribution of such stock constitutes a Total Distribution, payment of the fair market value of a Participant's Employer Securities Account will be made in 5 substantially equal annual payments. The first installment will be paid not later than 30 days after the Participant exercises the put option. The Plan will pay a reasonable rate of interest and provide adequate security on amounts not paid after 30 days. For purposes of this Section, the term Total Distribution means the distribution with one taxable year to the recipient of the balance of his Employer Securities Account.

(h)   **Payment Requirements for Installment Distributions.** Notwithstanding paragraph (g) above, if the distribution does not constitute a Total Distribution, the Plan will pay the Participant an amount equal to the fair market value of the Employer Securities repurchased no later than 30 days after the Participant exercises the put option.

5.19   **Non-Terminable Rights and Protections.** Except as otherwise provided in Sections 5.17 and 5.18, no Employer Securities acquired with an Exempt Loan may be subject to a put, call, or other option, or buy-sell or similar arrangement when held by and distributed from the Plan, whether or not the Plan is then an Employee Stock Ownership Plan. The rights and protections granted in this Section and in Sections 5.17 and 5.18 are non-terminable and will continue to exist under the terms of the Plan as long as any Employer Securities acquired with an Exempt Loan is held by the Plan or by any Participant or any other person for whose benefit such protections and rights have been created, and neither the repayment of such loan nor the failure of the Plan to be an Employee Stock Ownership Plan, nor any amendment of the Plan, will cause a termination of the protections and rights.

5.20   **Mandatory Repurchase for Distributions Made by Certain Corporations.** Notwithstanding any other provision of the Plan to the contrary, if the Employer is an S Corporation as defined in Code §1361, or if the charter or by-laws of the Employer restrict the ownership of substantially all outstanding Employer Securities to Employees or the Trust, then upon any distribution (including a direct rollover) of a Participant's Vested Interest in his or her Employer Securities Account, the Employer must repurchase such Employer Securities contemporaneously with, and effective on the same day as, the distribution occurs. If any such distribution is made as a direct rollover to a Participant's individual retirement account, no income (including tax-exempt income), loss, deduction, or credit attributable to the distributed Employer Securities under Code §1366 can be allocated to Participant's individual retirement account.

5.21   **Financial Hardship Distributions.** Hardship distributions are not permitted.

5.22   **Pre-Retirement Distributions.** No distributions are permitted before a Participant Terminates Employment.

5.23   **Distribution of Transfer Contributions.** A Participant's Transfer Contribution Account will be distributed from the Plan at the same time and in the same manner as the Participant's Account is distributed under Section 5.1, 5.2, 5.3, or 5.4; provided, however, that if the Transfer Contributions are elective contributions as defined in Regulation §1.401(k)-1(g)(3) (including any qualified non-elective contributions, qualified matching contributions, and ADP safe harbor contributions) which are transferred to this Plan in a direct or indirect trustee-to-trustee transfer from another qualified plan and which are subject to the limitations in Regulation §1.401(k)-1(d), then the distribution of such Transfer Contributions (including post-transfer earnings thereon) will be subject to the limitations in Regulation §1.401(k)-1(d).

5.24   **Transfers to Nonqualified Foreign Trusts.** Notwithstanding anything contained in the Plan, a transfer from this Plan to a nonqualified foreign trust is treated as a distribution. In the case of a transfer to an ERISA §1022(i)(1) plan, the transfer is not treated as a distribution from the transferor plan and the transfer will not be treated as causing the transferor plan to fail to satisfy the requirements of Code §401(a).

### Article 6
### Code § 415 Limitations

6.1   **Maximum Annual Additions.** The maximum Annual Addition made to a Participant's various accounts maintained under the Plan for any Limitation Year will not exceed the lesser of the Dollar Limitation in Section 6.1(a) or the Compensation Limitation Section 6.1(b) below, as follows:

    (a)   **Dollar Limitation.** The Dollar Limitation is $51,000 as adjusted in accordance with Code §415(d).

    (b)   **Compensation Limitation.** The Compensation Limitation is an amount equal to 100% of the Participant's Compensation for the Limitation Year. However, this limitation will not apply to any contribution made for medical benefits within the meaning of Code §401(h) or Code §419A(f)(2) after Termination of Employment which is otherwise treated as an Annual Addition under Code §415(l)(1) or Code §419A(d)(2).

    (c)   **Special ESOP Rules.** For purposes of this Section, (1) in determining the amount of the Employer's contribution for purposes of paragraph (a) and (b) above, the amount of Employer contributions will be determined based upon the lesser of (A) the fair market value of the Employer Securities allocated to the Participant's Account from Employer contributions to the Plan (determined at the time of the contribution by the most recent valuation) plus any contributions which are not used to purchase Employer Securities or pay on an Exempt Loan; and (B) the amount of the Employer's cash contribution to the Plan; and (2) in any Plan Year in which the Employer is not an S Corporation as defined in Code §1361, if no more than one-third of Employer contributions for that Plan Year that are deductible under Code §404(a)(9) are allocated to HCEs, the limitations of this Section will not apply to Forfeitures of Employer Securities acquired with an Exempt Loan or to Employer contributions that are deductible under Code §404(a)(9)(B) and are charged against a Participant's Account.

6.2   **Adjustments to Maximum Annual Addition.** In applying the limitation on Annual Additions set forth in Section 6.1 the following adjustments must be made:

    (a)   **Short Limitation Year.** In a Limitation Year of less than 12 months, the Defined Contribution Dollar Limitation in Section 6.1(a) will be adjusted by multiplying it by the ratio that the number of months in the short Limitation Year bears to 12.

    (b)   **Participation in Multiple Employer-Sponsored Defined Contribution Plans.** If a Participant participates in multiple defined contribution plans sponsored by an Employer or Affiliated Employer which have different Anniversary Dates, the maximum Annual Addition in this Plan for the Limitation Year will be reduced by the Annual Additions credited to the Participant's accounts in the other defined contribution plans during the Limitation Year. If a Participant participates in multiple defined contribution plans sponsored by an Employer or Affiliated Employer which have the same Anniversary Date, then (1) if only one of the plans is subject to Code §412, Annual Additions will first be credited to the Participant's accounts in the plan subject to Code §412; and (2) if none of the plans are subject to Code §412, the maximum Annual Addition in this Plan for a given Limitation Year will either (A) equal the product of (i) the maximum Annual Addition for such Limitation Year minus any other Annual Additions previously credited to the Participant's account(s), multiplied by (ii) a fraction, the numerator of which is the Annual Additions which would be credited to a Participant's accounts hereunder without regard to the Annual Additions limitation of Section 6.1 and the denominator of which is the Annual Additions for all plans described in this paragraph, or (B) be reduced by the Annual Additions credited to the Participant's accounts in the other defined contribution plans for such Limitation Year.

6.3   **Aggregation of Plans.** All defined benefit plans (whether terminated or not) sponsored by an Employer or Affiliated Employer will be treated as one defined benefit plan, all defined contribution plans (whether terminated or not) sponsored by an Employer or Affiliated Employer will be treated as one defined contribution plan, and all Employers and Affiliated Employers will be considered a single Employer, determined in accordance with the following provisions:

v

(a)   **General Rule.** Except as provided in this Section and Regulation §1.415(f)-1, for purposes of applying the limitations of this Section and Code §415(c) applicable to a Participant for a particular Limitation Year all defined contribution plans (without regard to whether a plan has been terminated) ever maintained by an Employer or Affiliated Employer (or a predecessor Employer) under which the Participant receives Annual Additions are treated as one defined contribution plan.

(b)   **Affiliated Employers and Leased Employees.** All Employees of all Affiliated Employers are treated as employed by a single Employer for Code §415 purposes. Any defined contribution plan maintained by any Affiliated Employer is deemed maintained by all Affiliated Employers. Furthermore, under Code §414(n), with respect to any recipient for whom a Leased Employee performs services, the Leased Employee is treated as an Employee of the recipient, but contributions or benefits provided by the leasing organization that are attributable to services performed for the recipient are treated as provided under the plan maintained by the recipient. However, under Code §414(n)(5), the rule of the previous sentence does not apply to a Leased Employee with respect to services performed for a recipient if (A) the Leased Employee is covered by a plan that is maintained by the leasing organization and that meets the requirements of Code §414(n)(5)(B); and (B) Leased Employees do not constitute more than 20% of the recipient's non-highly compensated workforce.

(c)   **Formerly Affiliated Plan of an Employer.** A Formerly Affiliated Plan of an Employer is taken into account in applying the aggregation rules of this Section, but the Formerly Affiliated Plan of an Employer is treated as if it had terminated immediately prior to the cessation of affiliation, and had purchased annuities to provide benefits. For purposes of this paragraph, the term "Formerly Affiliated Plan of an Employer" means a plan that, immediately prior to the Cessation of Affiliation, was actually maintained by one or more of the entities that constitute the Employer (as determined under the employer affiliation rules described in Regulation §1.415(a)-1(f)(1) and (2)), and immediately after the Cessation of Affiliation, is not actually maintained by any of the entities that constitute the Employer (as determined under the employer affiliation rules described in Regulation §1.415(a)-1(f)(1) and (2)). For purposes of this paragraph, the term "Cessation of Affiliation" means the event that causes an entity to no longer be aggregated with one or more other entities as a single Employer under the employer affiliation rules described in Regulation §1.415(a)-1(f)(1) and (2) (such as the sale of a subsidiary outside a controlled group), or that causes a plan to not actually be maintained by any of the entities that constitute the Employer under the employer affiliation rules of Regulation §1.415(a)-1(f)(1) and (2) (such as a transfer of plan sponsorship outside of a controlled group).

(d)   **Predecessor Employer.** For purposes of Code §415 and Regulations thereunder, a former employer is a predecessor employer with respect to a Participant in the Plan maintained by the Employer if the Employer maintains the Plan under which the Participant had accrued a benefit while performing services for the former employer (for example, the Employer assumed sponsorship of the former employer's plan, or the Plan received a transfer of benefits from the former employer's plan), but only if that benefit is provided under the Plan maintained by the Employer. In applying the limitations of Code §415 to a Participant in the Plan maintained by the Employer, the Plan must take into account benefits provided to the Participant under plans that are maintained by the predecessor employer and that are not maintained by the Employer; the Employer and predecessor employer constituted a single Employer under the rules described in Regulation §1.415(a)-1(f)(1) and (2) immediately prior to the cessation of affiliation (as if they constituted two, unrelated employers under the rules described in Regulation §1.415(a)-1(f)(1) and (2) immediately after the cessation of affiliation) and cessation of affiliation was the event that gives rise to the predecessor employer relationship, such as a transfer of benefits or plan sponsorship. However, with respect to the Employer of the Participant, a former entity that antedates the Employer is a predecessor employer with respect to the Participant if, under the facts and circumstances, the Employer constitutes a continuation of all or a portion of the trade or business of the former entity. This occurs where formation of the Employer constitutes a mere formal or technical change in the employment relationship and continuity otherwise exists in the substance and administration of the business operations of the former entity and the Employer.

(e)   **Nonduplication.** In applying the limitations of Code §415 to the Plan maintained by an Employer, if the Plan is aggregated with another plan pursuant to the aggregation rules of this Section, then a Participant's benefits are not counted more than once in determining the Participant's aggregate Annual Additions, pursuant to the rules of Regulation §1.415(f)-1(d)(1).

v

(f) **Previously Unaggregated Plans.** The following rule applies to situations in which two or more existing plans, which previously were not required to be aggregated pursuant to Code §415(f), are aggregated during a particular Limitation Year and, as a result, the limitations of Code §415(b) or (c) are exceeded for that Limitation Year. Two or more defined contribution plans that are not required to be aggregated pursuant to Code §415(f) as of the first day of a Limitation Year satisfy the requirements of Code §415 with respect to a Participant for the Limitation Year if they are aggregated later in that Limitation Year, provided that no Annual Additions are credited to the Participant's Account after the date on which the plans are required to be aggregated.

(g) **Multiple Plan Fraction.** The provisions of Code §415(e) shall not apply to this Plan.

6.4 **No Allocations in Excess of Annual Addition Limits.** Subject to the limitations of this Article, no portion of any Employer contributions, Employer Securities released from the Unallocated Employer Securities Account or any forfeitures which would have been allocated to a Participant under this Plan for a Limitation Year, but which cause a Participant to exceed the limitations imposed by this Article. Instead, such unallocated Employer contributions, Employer Securities released from the Unallocated Employer Securities Account or forfeitures shall instead be further allocated among and credited to the Accounts of the remaining Participants who are Non-Highly Compensated Employees who are entitled to share in the allocation of Employer contributions, Employer Securities released from the Unallocated Employer Securities Account and forfeitures for that year, in accordance with the terms of Sections 3.1(b), 3.7(d)(4) and 3.3(c), without exceeding the limitations of this Article for any of these Participants until all unallocated Employer contributions, Employer Securities released from the Unallocated Employer Securities Account and forfeitures have been fully allocated.

6.5 **Adjustment for Excessive Annual Additions.** If the Annual Additions allocated to a Participant's Account, after application of Section 6.4, exceeds the maximum Annual Addition permitted under this Section, then the Sponsoring Employer will follow the rules of any Employee Plans Compliance Resolution System (EPCRS) or similar successor program that is issued by the Internal Revenue Service, making corrections first from this Plan and then from all other defined contribution plans sponsored by the Employer and Affiliated Employers treated as a single Employer for Code §415 purposes after corrections are made for this Plan.

- 45 -

v

**Article 7**
**Employer Securities, Loans, Insurance and Directed Investments**

7.1    **Voting Employer Securities.** The Trustee will vote all Employer Securities held by it at such time and in such manner as the Administrator decides, subject to the following provisions:

(a)    **Employer Securities Pledged As Security.** If any agreement entered into by the Trustee provides for voting of any Employer Securities pledged as security for any obligation of the Plan, such Employer Securities will be voted in accordance with such agreement.

(b)    **Non-Registration-Type Stock.** With respect to Employer Securities that are not registration-type securities, each Participant may direct the Trustee as to the manner in which Employer Securities allocated to his or her Employer Securities Account are to be voted on any corporate matter which involves the voting of such securities with respect to the approval or disapproval of a corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business, or such similar transaction as may be prescribed in Treasury regulations.

(c)    **Failure of Participant to Give Directions.** If a Participant has the right to direct the Trustee as to the manner in which Employer Securities allocated to his Employer Securities Account are to be voted and such Participant fails or refuses to give the Trustee timely instructions (or instructions are invalidated for any reason) as to how to vote any Employer Securities as to which the Trustee otherwise has the right to vote, the Trustee may not exercise its power to vote such Employer Securities.

7.2    **Restrictions on Employer Securities Transactions.** The Plan may not obligate itself to acquire Employer Securities from a particular holder thereof at an indefinite time determined upon the happening of an event such as the death of the holder. Furthermore, the Plan may not obligate itself to acquire Employer Securities under a put option binding upon the Plan. However, the Plan may be given an option to assume, at the time a put option is exercised, the rights and obligations of the Employer under a put option binding upon the Employer. In addition, all purchases of Employer Securities will be made at a price which, in the judgment of the Administrator, does not exceed the fair market value thereof. All sales of Employer Securities will be made at a price which, in the judgment of the Administrator, is not less than the fair market value thereof.

7.3    **Exempt Loans.** All loans to the Plan made or guaranteed by a disqualified person must satisfy all requirements applicable to Exempt Loans under Regulation §54.4975-7(b)(4) to §54.4975-7(b)(7), Regulation §54.4975-7(b)(13), Department of Labor Regulation §2550.408b-3, and all provisions of those regulations applicable to Employer Securities purchased with the proceeds of an Exempt Loan or used as collateral for an Exempt Loan must be complied with, including, but not limited to, the following provisions:

(a)    **Definition of "Disqualified Person."** For purposes of this Section, a "disqualified person" is any person who is a disqualified person under Code §4975 or a party in interest under ERISA.

(b)    **Types of Loans and Guarantees.** A loan for purposes of this Section includes a direct loan of cash, a purchase-money transaction, or an assumption of the obligation of the Trust. A guarantee for purposes of this Section includes an unsecured guarantee and the use of assets of a disqualified person as collateral for a loan, even though the use of assets may not be a guarantee under applicable state law.

(c)    **Term of Loan.** An Exempt Loan must be for a specific term. Such loan may not be payable at the demand of any person, except in the case of default, but only to the extent of any late payments and interest thereon.

(d)    **Interest Rate.** An Exempt Loan must provide for a reasonable rate of interest. However, the interest rate and the price of the Employer Securities purchased with the proceeds of an Exempt Loan must not be such that Plan assets can be drained off.

(e)    **Loan Must Primarily Benefit Participants and Beneficiaries.** An Exempt Loan must primarily be for the benefit of Plan Participants and their Beneficiaries.

(f) **Use of Proceeds.** The proceeds of an Exempt Loan must be used within a reasonable time to acquire Employer Securities, to repay the Exempt Loan, or to repay prior Exempt Loans. The proceeds of a new loan used to repay a prior Exempt Loan must also satisfy the other requirements of this Section.

(g) **Put Option.** Except for the put option described in Section 5.18 of the Plan, no Employer Securities acquired with the proceeds of an Exempt Loan may be subject to a put, call or other option, or a buy-sell or other arrangement while held by, or when distributed, from the Plan, whether or not the Plan has continued to operate as an employee stock ownership plan.

(h) **Collateral for Loan.** An Exempt Loan must be without recourse against the Plan. Furthermore, the only assets of the Plan that can be given as collateral on an Exempt Loan are either Employer Securities which are acquired with the proceeds of the Exempt Loan or Employer Securities which were used as collateral on a prior Exempt Loan repaid with the proceeds of the current Exempt Loan.

(i) **Liability of Plan to Loan Payee.** No person who is entitled to payment under an Exempt Loan will have any right to (1) the assets of the Plan, other than to the collateral given for the Exempt Loan; (2) any contributions, other than contributions of Employer Securities, made to the Plan to repay the Exempt Loan; and (3) earnings attributable to such collateral and the investment of such contributions.

(j) **Maximum Annual Repayment.** Payments made during the Plan Year with respect to an Exempt Loan cannot exceed an amount equal to the sum of the contributions and earnings received during or prior to the Plan Year, less such payments made in prior Plan Years. In addition, such contributions and earnings must be accounted for separately until such time as the Exempt Loan is repaid in full.

(k) **Default.** In the event of a default on an Exempt Loan, the value of Plan assets transferred in satisfaction of the loan cannot exceed the amount of default. If a lender is a "disqualified person," an Exempt Loan must provide for a transfer of Plan assets upon default only upon and to the extent of the failure of the Plan to meet the payment schedule of the loan. For purposes hereof, the making of a guarantee does not make a person a lender.

7.4 **Diversification Rights of Qualified Participants.** Notwithstanding any provision in the Plan to the contrary, a Qualified Participant will be permitted to direct the Trustee as to the investment of amounts credited to his or her Employer Securities Account in accordance with the following provisions:

(a) **Definitions.** For purposes of this Section, the term Qualified Election Period means the six-Plan Year period beginning with the Plan Year in which the Participant first becomes a Qualified Participant; and the term Qualified Participant means an Employee who has attained at least Age 55 and has completed at least 10 Years of Service in the Plan. A Year of Service, for this purpose, shall be calculated in the same manner as a Year of Service defined in Section 1.95(b) for determining a Participant's Vested Interest in his or her Participant's Account.

(b) **Method of Direction.** The Participant's direction will be provided to the Administrator in writing, and will be effective no later than 180 days after the close of the Plan Year to which the direction applies.

(c) **Amount Subject to Diversification.** A Qualified Participant may elect within 90 days after the close of each Plan Year in the Qualified Election Period to direct the Trustee as to the investment of 25% of the total number of shares of Employer Securities that have ever been allocated to the Qualified Participant's Employer Securities Account on or before the end of the most recent Allocation Period less the number shares of Employer Securities previously distributed (other than through diversification), transferred, or delivered pursuant to a prior diversification election under this paragraph. Within 90 days after the close of the last Plan Year in a Participant's Qualified Election Period, a Qualified Participant may direct the investment of 50% of the total number of shares of Employer Securities that have ever been allocated to the Qualified Participant's Employer Securities Account on or before the end of the most recent Allocation Period less the number shares of Employer Securities previously distributed (other than through diversification), transferred, or delivered pursuant to a prior diversification election under this paragraph.

(d) **Small Account Exception.** Notwithstanding paragraph (b), if the fair market value of a Qualified Participant's Employer Securities Account is $500 or less on the Valuation Date immediately preceding the first day the Qualified Election Period, such Employer Securities Account will not be subject to diversification hereunder. In determining if the fair market value exceeds $500, Employer Securities held in all employee stock ownership plans and tax credit employee stock ownership plans maintained by the Employer or an Affiliated Employer will be considered as held by the Plan.

(e) **Investment Options.** Subject to a written policy adopted the Administrator, the portion of a Qualified Participant's Employer Securities Account covered by the diversification election herein will either (1) be distributed to the Qualified Participant within 90 days after the last day of the period in which the election can be made, but any part of such distribution consisting of Employer Securities will be subject to the put option requirements of the Plan, and the entire such distribution, if it is in excess of $5,000, will be subject to the consent requirements under Section 5.8; (2) be transferred no later than 90 days after the last day of the period in which the election can be made to another qualified defined contribution plan of the Employer that accepts such transfers, provided such plan permits Employee-directed investments in at least three distinct investment options and does not invest in Employer Securities to a substantial degree; or (3) be invested, at the election of the Qualified Participant, in one or more alternative investments, provided that if the Administrator elects to offer this option as part of the written policy adopted hereunder, the Plan must provide at least three distinct investment options.

7.5 **Loans to Participants.** Loans to Participants are not permitted.

7.6 **Insurance on Participants.** The purchase of a life insurance policy or annuity contract is not permitted.

7.7 **Directed Investment Accounts.** Participants are not permitted to direct the investment of any portion of their accounts under the Plan.

- 48 -

**Article 8**
**Duties of the Administrator**

8.1 **Appointment, Resignation, Removal and Succession.** The Sponsoring Employer will serve as the Administrator unless the Sponsoring Employer elects to appoint a Committee or another Administrator. Each Administrator that is appointed will continue until his death, resignation, or removal , and any Administrator may resign by giving 30 days written notice to the Sponsoring Employer. If an Administrator dies, resigns, or is removed , his successor will be appointed as promptly as possible, and such appointment will become effective upon its acceptance in writing by such successor. Pending the appointment and acceptance of any successor Administrator, any then acting or remaining Administrator will have full power to act.

8.2 **General Powers and Duties.** The discretionary powers and duties of the Administrator will include (a) appointing the Plan's attorney, accountant, actuary, or any other party needed to administer the Plan; (b) directing the Trustees with respect to payments from the Trust Fund; (c) deciding if a Participant is entitled to a benefit; (d) communicating with Employees regarding their Plan participation and benefits, including the administration of all claims procedures; (e) filing any returns and reports with the Internal Revenue Service, Department of Labor, or other governmental agency; (f) reviewing and approving any financial reports, investment reviews, or other reports prepared by any party under (e) above; (g) establishing a funding policy and investment objectives consistent with the purposes of the Plan and ERISA; (h) construing and resolving any question of Plan interpretation; and (i) making any findings of fact the Administrator deems necessary to proper Plan administration. Notwithstanding any contrary provision of this Plan, benefits under this Plan will be paid only if the Administrator decides in its discretion that the applicant is entitled to them. The Administrator's interpretation of Plan provisions, and any findings of fact, including eligibility to participate and eligibility for benefits, are final and will not be subject to "de novo" review unless shown to be arbitrary and capricious.

8.3 **Functions of Committee.** If a Committee is established, a member of the Committee will serve until his or her death, disability, removal by the Sponsoring Employer, or resignation. If a vacancy arises from the death, disability, removal, or resignation of a member of the Committee, the Sponsoring Employer may, but is not required to, appoint a successor to serve in his or her place. The Committee will select a chairman and secretary from among its members. Members of the Committee will serve without compensation. The Committee will act by majority vote. The proper expenses of the Committee, and the compensation of its agents, if any, that are appointed pursuant to Section 8.7, will be paid directly by the Employer.

8.4 **Multiple Administrators.** If more than one Administrator has been appointed by the Sponsoring Employer, the Administrators may delegate specific responsibilities among themselves, including the authority to execute documents unless the Sponsoring Employer revokes such delegation. The Sponsoring Employer and Trustee will be notified in writing of any such delegation of responsibilities, and the Trustee thereafter may rely upon any documents executed by the appropriate Administrator.

8.5 **Correcting Administrative Errors.** The Administrator will take such steps as it considers necessary and appropriate to remedy administrative or operational errors, including, but not be limited to, the following: (a) any action pursuant to (1) any Employee Plans Compliance Resolution System (EPCRS) that is issued by the Internal Revenue Service, (2) any asset management or fiduciary conduct error correction program that is issued by the Department of Labor, (3) the Regulations, or (4) any other correction program issued by any Department or governmental agency; (b) a reallocation of Plan assets; (c) an adjustment in the amount of future payments to any Participant, Beneficiary or Alternate Payee; and (d) the institution, prosecution, and/or settlement of legal actions to recover benefit payments made in error or on the basis of incorrect or incomplete information.

8.6 **Promulgating Notices and Procedures.** The Sponsoring Employer and Administrator are given the power and responsibility to promulgate certain written notices, policies and/or procedures under the terms of the Plan and disseminate them to Participants, and the Administrator may satisfy such responsibility by the preparation of any such notice, policy and/or procedure in a written form which can be published and communicated to a Participant in one or more of the following ways: (a) by distribution in hard copy; (b) through distribution of a summary plan description or summary of material modifications thereto which sets forth the policy or procedure with respect to a right, benefit or feature offered under the Plan; (c) by e-mail, either to a Participant's personal e-mail address or his or her Employer-maintained e-mail address; and (d) by

v

publication on a web-site accessible by the Participant, provided the Participant is notified of said web-site publication. Any notice, policy and/or procedure provided through an electronic medium will only be valid if the electronic medium which is used is reasonably designed to provide the notice, policy and/or procedure in a manner no less understandable to the Participant than a written document, and under such medium, at the time the notice, policy and/or procedure is provided, the Employee may request and receive the notice, policy and/or procedure on a written paper document at no charge.

8.7 **Employment of Agents and Counsel.** The Administrator may appoint actuaries, accountants, custodians, counsel, agents, consultants, service companies and other persons deemed necessary or desirable in the administration and operation of the Plan. Any person or company so appointed will exercise no discretionary authority over investments or the disposition of Trust assets, and their services and duties will be ministerial only and will be to provide the Plan with those things required by law or by the terms of the Plan without in any way exercising any fiduciary authority or responsibility under the Plan. The duties of a third party Administrator will be to safe-keep the records for all Participants and to prepare all required actuarial services and disclosure forms under the supervision of the Administrator and any fiduciaries of the Plan. It is expressly stated that the third party Administrator's services are only ministerial in nature and that under no circumstances will such third party Administrator (a) exercise any discretionary authority whatsoever over Plan Participants, Plan investments, or Plan benefits; or (b) be given any authority or discretion concerning the management and operation of the Plan that would cause them to become fiduciaries of the Plan.

8.8 **Compensation and Expenses.** The Administrator may receive such compensation as agreed upon between the Sponsoring Employer and the Administrator, but any person who already receives full-time pay from the Employer may not receive any fees from the Plan for services to the Plan as Administrator or in any other capacity, except for reimbursement for expenses actually and properly incurred. The Sponsoring Employer will pay all "settlor" expenses (as described in DOL Advisory Opinion 2001-01-A) incurred by the Administrator, the Committee or any party appointed under Section 8.7 in the performance of their duties. The Sponsoring Employer may, but is not required to pay, all "non-settlor" expenses incurred by the Administrator, the Committee, or any party appointed under Section 8.7 in the performance of their duties. Any "non-settlor" expenses incurred by the Administrator, the Committee or any party appointed under Section 8.7 that the Sponsoring Employer elects not to pay will be reimbursed from Trust Fund assets. Any expenses paid from the Trust Fund will be charged to each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all the Participants' Accounts maintained by this Plan, or in any other reasonable method elected by the Administrator.

8.9 **Claims Procedures.** The claims procedure required under §503 of ERISA and the Regulations thereunder is set forth in a written policy established by the Administrator. Such policy will be the sole and exclusive remedy for an Employee, Participant or Beneficiary (each, a "Claimant") to make a claim for benefits under the Plan.

8.10 **Qualified Domestic Relations Orders.** The Administrator will determine if a domestic relations order (DRO) received by the Plan is a Qualified Domestic Relations Order (QDRO) based on an administrative policy regarding Qualified Domestic Relations Orders that is promulgated under Section 8.6 by the Administrator.

8.11 **Appointment of Investment Manager.** The Administrator, with the consent of the Employer, may appoint an Investment Manager to manage and control the investment of all or any portion of the Trust. Each Investment Manager will be a person (other than the Trustee) who (a) has the power to manage, acquire, or dispose of Plan assets, (b) is an investment adviser, a bank, or an insurance company as described in ERISA §3(38)(B), and (c) acknowledges fiduciary responsibility to the Plan in writing. The Administrator will enter into an agreement with the Investment Manager specifying the duties and compensation of the Investment Manager and specifying any other terms and conditions under which the Investment Manager will be retained. The Trustee is not liable for any act or omission of an Investment Manager and is not liable for following an Investment Manager's advice with respect to duties delegated by the Administrator to the Investment Manager. The Administrator can determine the portion of the Plan's assets to be invested by a designated Investment Manager and can establish investment objectives and guidelines for the Investment Manager to follow.

v

## Article 9
## Trustee Provisions

If any Trust assets are invested in a separate trust or custodial account maintained by a Trustee or custodian, the provisions of the separate Trust or custodial agreement will supersede all provisions of this Article with respect such assets except, in the absence of a specific provision in such separate Trust or custodial agreement regarding the valuation of securities held by the Trust under Section 9.3. If such separate trust or custodial account should for any reason fail, be found invalid or terminate prior to the termination of this Plan and the distribution of all the assets hereof, this will be deemed to have again become effective immediately prior to such failure, invalidity or termination.

9.1   **Appointment, Resignation, Removal and Succession.** This Plan will have one or more individual Trustees, a corporate Trustee, or any combination thereof, appointed as follows:

    (a)   **Appointment.** Each Trustee will be appointed and will serve until a successor has been named or until such Trustee's resignation, death, incapacity, or removal, in which event the Sponsoring Employer will name a successor Trustee. The term Trustee will include the original and any successor Trustees.

    (b)   **Resignation.** A Trustee may resign at any time by giving written notice to the Sponsoring Employer, unless such notice is waived by the Sponsoring Employer. The Sponsoring Employer may remove a Trustee at any time by giving such Trustee 30 days (or such longer period as set forth in the agreement governing the Trust) written notice. Such removal may be with or without cause. Unless waived in writing by the Sponsor, if any Trustee who is an Employee or an elected or appointed official resigns or Terminates Employment with the Sponsoring Employer or an Adopting Employer, such termination will constitute an immediate resignation as a Trustee of the Plan.

    (c)   **Successor Trustee.** Each successor Trustee will succeed to the title to the Trust by accepting the appointment in writing and by filing such acceptance with the former Trustee and the Sponsoring Employer. The former Trustee, upon receipt of such acceptance, will execute all documents and perform all acts necessary to vest the Trust Fund's title of record in any successor Trustee. No successor Trustee will be personally liable for any act or failure to act of any predecessor Trustee. If the Sponsoring Employer fails to timely name a successor Trust, the Administrator shall be the successor Trustee.

    (d)   **Merger.** If a corporate Trustee, before or after qualification, changes its name, consolidates or merges with another corporation, or otherwise reorganizes, any resulting corporation which succeeds to the fiduciary business of such Trustee will become a Trustee hereunder in lieu of such corporate Trustee.

9.2   **Investment Alternatives of the Trustee.** The Trustee will implement an investment program designed to invest primarily in Employer Securities and to accomplish the Employer's other investment objectives. In addition to powers given by law, the Trustee will have the rights and authorities described in the Trust.

9.3   **Valuation of the Trust.** On each Valuation Date, the Trustee will determine the net worth of the Trust Fund. All valuations must be made in good faith and based on all relevant factors for determining the fair market value of securities. In the case of a transaction between the Plan and a disqualified person, value must be determined as of the date of the transaction. For all other purposes, value must be determined as of the most recent Valuation Date. An independent appraisal will not in itself be a good faith determination of value in the case of a transaction between a Plan and a disqualified person. However, in other cases, a determination of fair market value based on at least an annual appraisal independently arrived at by a person who customarily makes such appraisals and who is independent of any part to a transaction under Regulation §1.4975-7(b)(9) and (12) will be deemed to be a good faith determination of value.

9.4   **Compensation and Expenses.** The Trustee will be reimbursed for all of its expenses, either from the Trust Fund or the Sponsoring Employer, and will be paid reasonable compensation as agreed upon from time to time with the Sponsoring Employer; but no person who receives full time pay from the Employer will receive any fees for services to the Plan as Trustee or in any other capacity, except for reimbursement of expenses properly and actually incurred. Any expenses paid from the Trust will be charged to each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all the Participants' Accounts maintained by this Plan, or in any other reasonable method elected by the Administrator.

**9.5** **Payments From the Trust Fund.** The Trustee will pay Plan benefits and other payments as the Administrator directs, and the Trustee will not be responsible for the propriety of such payments. Any payment made to a Participant, or a Participant's legal representative or Beneficiary in accordance with the terms of the Plan will, to the extent of such payment, be in full satisfaction of all claims arising against the Trust, the Trustee, the Employer, and the Administrator. Any payment or distribution made from the Trust is contingent on the recipient executing a receipt and release acceptable to the Trustee, Administrator, or Employer.

**9.6** **Payment of Taxes.** The Trustee will pay all taxes of the Trust Fund, including property, income, transfer and other taxes which may be levied or assessed upon or in respect of the Trust Fund or any money, property or securities forming a part of the Trust Fund. The Trustee may withhold from distributions to any payee such sum as the Trustee may reasonably estimate as necessary to cover federal and state taxes for which the Trustee may be liable, which are, or may be, assessed with regard to the amount distributable to such payee. Prior to making any payment, the Trustee may require such releases or other documents from any lawful taxing authority and may require such indemnity from a payee or distributee as the Trustee deems necessary.

**9.7** **Accounts, Records and Reports.** The Trustee will keep accurate records reflecting its administration of the Trust and will make them available to the Administrator for review and audit. At the request of the Administrator, the Trustee will, within 90 days of such request, file with the Administrator an accounting of its administration during such period or periods as the Administrator determines. The Administrator will review the accounting and notify the Trustee within 90 days if the report is disapproved, providing the Trustee with a written description of the items in question. The Trustees will have 60 days to provide the Administrator with a written explanation of the items in question. If the Administrator again disapproves of the report, the Trustee will file its accounting in a court of competent jurisdiction for audit and adjudication.

**9.8** **Employment of Agents and Counsel.** The Trustee may employ such agents, counsel, consultants, or service companies as it deems necessary and may pay their reasonable expenses and compensation. The Trustee will not be liable for any action taken or omitted by the Trustee in good faith pursuant to the advice of such agents and counsel. Any agent, counsel, consultant, service company and/or its successors will exercise no discretionary authority over investments or the disposition of Trust assets, and their services and duties will be ministerial only and will be to provide the Plan with those things required by law or by the terms of the Plan without in any way exercising any fiduciary authority or responsibility under the Plan.

**9.9** **Division of Duties.** The division of duties of the Trustees of this Plan will be governed by the following provisions:

(a) **No Guarantee Against Loss.** The Trustees will have the authority and discretion to manage and control the Trust Fund to the extent provided in this instrument, but they do not guarantee the Trust Fund in any manner against investment loss or depreciation in asset value, or guarantee the adequacy of the Fund to meet and discharge all or any liabilities of the Plan. Furthermore, the Trustees will not be liable for the making, retention or sale of any investment or reinvestment made by it, as herein provided, or for any loss to or diminution of the Trust Fund, or for any other loss or damage which may result from the discharge of its duties hereunder, except to the extent it is judicially determined that the Trustees have failed to exercise the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and like aims.

(b) **Representations of the Sponsoring Employer.** The Sponsoring Employer warrants that all directions issued to the Trustees by it or the Administrator will be in accordance with the terms of the Plan.

(c) **Directions by Others.** The Trustees are not answerable for an action taken pursuant to any direction, consent, certificate, or other paper or document on the belief that the same is genuine and signed by the proper person. All directions by the Sponsoring Employer, a Participant or Administrator must be in writing. The Administrator will deliver to the Trustee (1) certificates evidencing the individual or individuals authorized to act as the Administrator and (2) specimens of their signatures.

- 52 -

v

(d)   **Duties and Obligations Limited by the Plan.** The duties and obligations of the Trustee are limited to those expressly imposed upon it by the Plan or subsequently agreed upon by the parties. Responsibility for administrative duties required under the Plan or applicable law not expressly imposed upon or agreed to by the Trustee, will rest solely with the Sponsoring Employer and Administrator.

(e)   **Trustees Not Responsible for Application of Payments.** The Trustees will not be responsible in any way for the application of any payments it is directed to make or for the adequacy of the Fund to meet and discharge any and all liabilities under the Plan.

(f)   **Multiple Trustees.** If more than one Trustee is appointed, any single Trustee may act independently in undertaking any act and/or transaction on behalf of the Trustees, including signing documents or checks, unless the Sponsoring Employer requires that all acts and/or transactions taken on behalf of the Trust, including signing documents or checks, must have the consent of a majority of the Trustees. The Sponsoring Employer may from time to time also place other restrictions on the Trustees.

(g)   **Trustees as Participants or Beneficiaries.** Trustees will not be prevented from receiving any benefits to which they may be entitled as Participants or Beneficiaries as long as the benefits are computed and paid on a basis consistent with the terms of the Plan as applied to other Participants and Beneficiaries.

(h)   **Limitation of Liability.** No Trustee will be liable for the act of any other Trustee or fiduciary unless the Trustee has knowledge of such act.

(i)   **No Self-Dealing.** The Trustees will not (1) deal with the assets of the Trust in their own interest or for their own account; (2) in their individual or in any other capacity, act in any transaction involving the Trust on behalf of a party (or represent a party) whose interests are adverse to the interests of the Plan, or its Participants or Beneficiaries; or (3) receive any consideration for their own personal accounts from any party dealing with the Plan in connection with a transaction involving assets of the Trust.

9.10   **Investment Manager.** The Trustee is not liable for acts or omissions of an Investment Manager appointed by the Administrator under Section 8.11, and the Trustee is not liable for following the advice of an Investment Manager with respect to any duties delegated by the Administrator to the Investment Manager.

9.11   **Exclusive Benefit Rule.** All contributions made by the Employer to the Trust Fund will be used for the exclusive benefit of the Participants and their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the costs of maintaining the Plan.

9.12   **Application of Cash.** Employer contributions made to the Plan in cash and other cash received by the Trustee will first be applied to pay Current Obligations. To the extent the Plan holds any additional cash after satisfying its Current Obligations, any such available funds shall be consistently applied in manner described below:

(a)   Cash shall first be used, if necessary, to diversify the Accounts of any Qualified Participants, as provided in Section 7.4.

(b)   If there is cash in the Plan beyond the needs of (a), above, then such cash shall be used to diversify the Employer Securities Accounts of any Terminated Participants by exchanging Employer Securities in said Employer Securities Accounts for property other than Employer Securities, as provided in Section 5.11.

(c)   If there is cash in the Plan beyond the needs of (a) and (b), above, then the Administrator may direct the Trustee to use such cash to fund the purchase of any Employer Securities distributed pursuant to a put option as provided in Section 5.18.

v

## Article 10
### Adopting Employer Provisions

**10.1   Plan Contributions.** Unless otherwise agreed to by the parties, or unless otherwise required by law, no Employer will have any obligation to make contributions to this Plan for or on behalf of the Employees of any other Employer. If any Employer is unable to make a contribution for any Plan Year, any Employer which is an Affiliated Employer of such Employer may make an additional contribution to the Plan on behalf of any Employee of the non-contributing Employer.

**10.2   Plan Amendments.** Any amendment to this Plan that is adopted by the Sponsoring Employer, at any time, will be deemed to be accepted by any Adopting Employer.

**10.3   Plan Expenses.** Any expenses paid from the Trust will be charged to each Adopting Employer in the ratio that each Adopting Employer's Participants' Accounts bears to the total of all the Participants' Accounts maintained by this Plan, or in any other reasonable method elected by the Administrator.

**10.4   Employee Transfers.** An Employee's transfer to or from the Sponsoring Employer to an Adopting Employer (or vice versa) will not affect his or her Participant's Account balance and total Years of Service or Periods of Service. With respect to an Employee who transfers from the Sponsoring Employer or an Adopting Employer to an Affiliated Employer that is not an Adopting Employer (or vice versa), the rules described in Section 2.1(e) shall determine the Employee's status as an Eligible Employee under the Plan.

**10.5   Multiple Employer Provisions Under Code §413(c).** Notwithstanding any other provision in the Plan, unless the Plan is a collectively bargained plan under Regulation §1.413-1(a), the following provisions apply to any Adopting Employer that is not also an Affiliated Employer:

(a)   **Instances of Separate Employer Testing.** Employees of any such Adopting Employer will be treated separately for testing under Code §401(a)(4), §401(k), §401(m) and, if the Sponsoring Employer and the Adopting Employer do not share Employees, Code §416. Furthermore, the terms of Code §410(b) will be applied separately on an employer-by-employer basis by the Sponsoring Employer (and the Adopting Employers which are part of the Affiliated Group which includes the Sponsoring Employer) and each Adopting Employer that is not an Affiliated Employer of the Sponsoring Employer, taking into account the generally applicable rules described in Code §401(a)(5), §414(b) and §414(c).

(b)   **Instances of Single Employer Testing.** Employees of the Adopting Employer will be treated as part of a single Employer plan for purposes of eligibility to participate under Article 2 and under the provisions of Code §410(a). Furthermore, the terms of Code §411 relating to Vesting will be applied as if all Employees of all such Adopting Employers and the Sponsoring Employer were employed by a single Employer, except that the rules regarding Breaks in Service will be applied under such Regulations as may be prescribed by the Secretary of Labor.

(c)   **Common Provisions.** Contributions made by any Adopting Employer will be held in a common Trust Fund with contributions made by the Sponsoring Employer, and all contributions will be available to pay benefits of any Participant who is an Employee of the Sponsoring Employer or any such Adopting Employer. Failure of the Sponsoring Employer or an Adopting Employer to satisfy the qualification requirements under the provisions of Code §401(a), as modified by the provisions of Code §413(c), will result in the disqualification of the Plan for all such Employers maintaining the Plan.

**10.6   Termination of Adoption.** An Adopting Employer may terminate adoption of the Plan by delivering written notice to the Sponsoring Employer, to the Administrator and to the Trustee. Upon such termination, the Adopting Employer may request a transfer of Trust Fund assets attributable to its Employees to a successor qualified retirement plan maintained by the Adopting Employer or its successor. If such request is not made by the Adopting Employer, or if the Administrator refuses to make the transfer because in its opinion a transfer would operate to the detriment of any Participant, would jeopardize the continued qualification of the Plan, or would not comply with any requirements of the Code, Regulations, or rules promulgated by the Department of Treasury or Internal Revenue Service, then termination of adoption by an Adopting Employer as described herein will not be considered a distributable event; distribution of a Participant's Account of an Employee of the Adopting Employer will be made in accordance with the provisions of Article 5 upon the

death, retirement, Disability, or the Termination of Employment from the Adopting Employer or former Adopting Employer, as if termination of adoption by the Adopting Employer had not occurred.

v

**Article 11**
**Amendment, Termination, Merger and Transfers**

11.1   **Plan Amendment.** The Plan can be amended at any time in accordance with the following provisions:

(a)   **General Requirements.** An amendment must be in writing. However, no amendment or modification (1) can increase the responsibilities of the Trustee or Administrator without their written consent; (2) can deprive any Participant or Beneficiary of the benefits to which he is entitled from the Plan; (3) can result in a decrease in the amount of any Participant's Account except as may be permitted under the terms of Code §412(d)(2) if applicable; or (4) can, except as otherwise provided, permit any part of the Trust Fund (other than as required to pay taxes and administration expenses) to be used for or diverted to purposes other than the exclusive benefit of the Participants or their Beneficiaries, or cause or permit any portion of the Trust Fund to revert to or become the property of the Employer. In addition, unless the provisions of paragraph (e) are satisfied, no amendment to the Plan will have the effect of eliminating or restricting the ability of a Participant or other payee to receive payment of his or her Account balance or benefit entitlement under a particular optional form of benefit provided under the Plan. Any amendment to the Plan by the Sponsoring Employer under this Section also applies to any Affiliated Employer that participates under the Plan as an Adopting Employer. The Sponsoring Employer's amendment of the Plan from one type of defined contribution plan (e.g., an employee stock ownership plan) into another type of defined contribution plan (e.g., a profit sharing plan) will not result in a partial termination or any other event that would require full vesting of some or all Plan Participants.

(b)   **Elimination of Optional Forms of Benefit.** No Plan amendment will be effective to eliminate or restrict an optional form of benefit. However, the preceding sentence will not apply to a Plan amendment that eliminates or restricts the ability of a Participant to receive payment of the Participant's Account under a particular optional form of benefit (including installments) if the amendment provides a single-sum distribution form that is otherwise identical to the optional form of benefit being eliminated or restricted. For this purpose, a single-sum distribution form is otherwise identical only if the single-sum distribution form is identical in all respects to the eliminated or restricted optional form of benefit (or would be identical except that it provides greater rights to the Participant) except with respect to the timing of payments after commencement.

(c)   **Certain Corrective Amendments.** In order to satisfy the minimum coverage requirements of Code §410(b), the nondiscriminatory amount requirement of Regulation §1.401(a)(4)-1(b)(2) or the nondiscriminatory plan amendment requirement of Regulation §1.401(a)(4)-1(b)(4), a corrective amendment or change of the choice of options in the Plan may retroactively increase allocations for Employees who benefited under the Plan during the Plan Year being corrected, or may grant allocations to Employees who did not benefit under the Plan during the Plan Year being corrected. To satisfy the nondiscriminatory current availability requirement of Regulation §1.401(a)(4)-4(b) for benefits, rights or features, a corrective amendment or change of the choice of options in Plan may make a benefit, right or feature available to Employees to whom it was previously not available. A corrective amendment or change of the choice of options in the Plan will not be effective prior to the date of adoption unless it satisfies the applicable requirements of Regulation §1.401(a)(4)-11(g)(3)(ii) through (vii), including the requirement that, in order to be effective for the preceding Plan Year, such amendment or change of the choice of options in the Plan must be adopted by the 15th day of the 10th month after the close of the preceding Plan Year.

11.2   **Termination By Sponsoring Employer.** The Sponsoring Employer at any time can terminate the Plan and Trust in whole or in part in accordance with the following provisions:

(a)   **Termination of Plan.** The Sponsoring Employer can terminate the Plan and Trust by filing written notice thereof with the Administrator and Trustee and by completely discontinuing contributions to the Plan. Upon any such termination, the Trust Fund will continue to be administered until complete distribution has been made to the Participants and other payees, which distribution must occur as soon as administratively feasible after the termination of the Plan, and must be made in accordance with the provisions of Article 5 of the Plan. However, the Administrator may elect not to distribute the Accounts of Participants and other payees upon termination of the Plan but instead to transfer the

- 56 -

v

entire Trust Fund assets and liabilities attributable to this terminated Plan to another qualified plan maintained by the Employer or its successor.

(b) **Vesting Requirement Upon Plan Termination.** Upon a complete termination of the Plan or upon a complete discontinuance of contributions under the Plan, the following Participants will have a 100% Vested Interest in their Participants' Accounts: (1) employed Participants who are affected by such complete termination or, if applicable, such complete discontinuance of contributions; (2) Participants who have not Terminated Employment with the Employers; and (3) Participants who have Terminated Employment with the Employer and who (A) have not incurred five consecutive Breaks in Service or (B) have not received a complete distribution of their Vested Aggregate Account balance.

(c) **Vesting Requirement Upon Partial Termination.** Upon partial termination of the Plan, only a Participant who has Terminated Employment because of the event which causes the partial termination but who has not incurred five consecutive Breaks in Service will have a 100% Vested Interest in his or her Participant's Account as of the date of partial termination.

(d) **Discontinuance of Contributions.** The Sponsoring Employer may at any time completely discontinue contributions to the Plan but continue the Plan in operation in all other respects, in which event the Trust will continue to be administered until eventual distribution of all benefits has been made to the Participants and other payees in accordance with Article 5 after their retirement, death, Disability or Termination of Employment. Any discontinuance of contributions without a notice of termination from the Sponsoring Employer to the Administrator and Trustee will not constitute a Plan termination.

**11.3   Merger or Consolidation.** This Plan and Trust may not be merged or consolidated with, nor may any of its assets or liabilities be transferred to, any other plan, unless the benefits payable to each Participant if the Plan was terminated immediately after such action would be equal to or greater than the benefits to which such Participant would have been entitled if this Plan had been terminated immediately before such action. If the Employer acquires another company in a "Section 410(b)(6)(c) transaction, employees of the acquired company may be excluded from this Plan regardless of the provisions of Section 2.1 of the Plan during the period beginning on the date of the transaction and ending on the last day of the Plan Year beginning after the date of the Transaction. A Section 410(b)(6)(c) transaction is an asset or stock acquisition, merger, or similar transaction involving a change in the employer of the employees of a business.

**11.4   Plan-to Plan Transfers.** To permit Participants to consolidate all qualified defined contribution plan accounts into a single plan for investments, distributions, loans and other administrative purposes, the Sponsoring Employer may permit Participants to transfer amounts to and from this Plan under the following rules:

(a) **Transfers to This Plan.** If permitted by the Sponsoring Employer and subject to the provisions of this Section, then a Participant may request that such Participant's entire account balance (both the vested interest and the non-vested interest) in another qualified defined contribution plan maintained by the Sponsoring Employer (or an Adopting Employer) be transferred in cash or in property into this Plan. Such transferred amount into this Plan will be considered a Transfer Contribution.

(b) **Transfers From This Plan.** If permitted by the Sponsoring Employer, then a Participant may request that such Participant's Account balance (both the Vested Interest and the Non-Vested Interest) in this Plan be transferred in cash or in property into another qualified defined contribution plan of the Sponsoring Employer (or an Adopting Employer).

(c) **Limitation on Transfer.** A transfer under this Section is only permitted if the Participant is ineligible to actively participate at the same time in the Sponsoring Employer's (or an Adopting Employer's) plan from which the transfer is being made (the transferor plan) and the Sponsoring Employer's (or an Adopting Employer's) plan into which the transfer is being made (the transferee plan).

(d) **Plan Accounts.** Transfer Contributions from another qualified defined contribution plan into this Plan will maintain all attributes with which such contributions were imbued in the other defined contribution plan (including the distribution limitations described in Regulation §1.401(k)-1(d)). Such Transfer Contributions will be accounted for separately in this Plan.

(e) **Protected Benefits.** Any Transfer Contributions into this Plan that have benefits, rights and features (including certain optional forms of benefit payments, such as annuities) required to be preserved by Code §411(d)(6) will continue to be preserved and protected in this Plan to the extent required by Code §411(d)(6). The Sponsoring Employer (or an Adopting Employer) reserves the right to eliminate any benefits, rights and features (including certain optional forms of benefit payments) of any Transfer Contributions into this Plan, to the extent permitted under Code §411(d)(6).

(f) **Vesting.** Transfer Contributions must Vest at least as rapidly under this Plan (the transferee plan) as they would Vest under the plan from which the transfer is being made (the transferor plan), as if the transfer had not occurred. If this Plan is the transferee plan and the Vesting schedule under the transferor plan is less favorable than the Vesting schedule under this Plan, the Administrator may apply, in a non-discriminatory manner, the Vesting schedule of this Plan to the Transfer Contributions.

(g) **Transfer Requests Subject to Administrative Approval.** Any transfer under this Section must be in cash or property acceptable to the Trustee. Any benefits, rights and features of a Transfer Contribution required to be protected by Code §411(d)(6) must be acceptable to and approved by the Administrator.

(h) **Application of this Section.** The provisions of this Section will apply to all Transfer Contributions, regardless of whether a Transfer Contribution was an elective transfer initiated by the Participant.

11.5 **Transfer of Plan Sponsorship.** The sponsorship of the Plan cannot be transferred from the Sponsoring Employer or any Adopting Employer to an unrelated taxpayer unless the transfer is in connection with a transfer of business assets or operations from the Employer to the unrelated taxpayer. Any transfer of Plan sponsorship which does not satisfy the requirements of this Section will deemed a violation of the exclusive benefit requirements set forth in Section 12.17 of the Plan.

## Article 12
## Miscellaneous Provisions

12.1 **No Contract of Employment.** Except as otherwise provided by law, none of the establishment of this Plan, any modification hereto, the creation of any fund or account, nor the payment of any benefits, will be construed as giving any Participant or other person any legal or equitable rights against the Employer, any officer or Employee thereof, or the Trustee, except as herein provided. Further, under no circumstances will the terms of employment of any Participant be modified or otherwise affected by this Plan.

12.2 **Title to Assets.** No Participant or Beneficiary will have any right to, or any interest in, any assets of the Trust upon separation of employment with the Employer, Affiliated Employer, or Adopting Employer, except as otherwise provided by the terms of the Plan.

12.3 **Fiduciaries and Bonding.** Plan fiduciaries will have only those powers and duties that are specifically given to them under the terms of the Plan and Trust. Every Plan fiduciary other than a bank, an insurance company, a broker-dealer who is registered under the Securities Exchange Act of 1934 §15(b) and who is subject to the fidelity bond requirements of a self-regulatory organization as defined in ERISA §412(a) as amended by the Pension Protection Act of 2006, or a Plan fiduciary of a Sponsoring Employer that has no common-law employees, will be bonded in an amount that is not less than 10% of the amount of funds under such fiduciary's direct or indirect control; however, such bond will not be less than $1,000 nor more than $1,000,000 (or such other amount as may be required by law). The bond will provide protection to the Plan against any loss for acts of fraud or dishonesty by a fiduciary acting alone or in concert with others. The cost of such bond will be an expense of either the Sponsoring Employer or the Plan, at the election of the Sponsoring Employer.

12.4 **Severability of Provisions.** If any Plan provision is held invalid or unenforceable, such invalidity or unenforceability will not affect any other provision of this Plan, and this Plan will be construed and enforced as if such provision had not been included.

12.5 **Interpretation of the Plan.** The following provisions apply to the interpretation of the Plan and Trust:

(a) **Names.** Names that are used in this Plan should be used consistently in any appendixes, policies, procedures, and/or any other documents which are legally binding upon the Plan. However, in documents that are not considered to be part of this Plan, appendixes, policies or procedures that are not legally binding upon the Plan; and that may be are distributed to individuals (such as the SPDs, SMMs, notices, and election forms), names may use plain English terms.

(b) **Gender.** Words that are used in the masculine gender may be construed as though they are also used in the feminine or neuter gender, where applicable (and vice versa).

(c) **Number.** Words that are used in the singular form may be construed as though they are also used in the plural form, where applicable (and vice versa).

(d) **Headings and Subheadings.** Headings and subheadings are inserted for convenience of reference. Headings and subheadings constitute no part of this Plan and are not to be considered in its construction or interpretation.

(e) **Single Subparagraphs.** This Plan may have Sections and/or paragraphs that contain a single subparagraph; such document construction will not constitute a Scrivener's error.

(f) **Effective Dates.** This Plan contains various effective dates, which include, but are not limited to: (1) the effective date of the Plan and, if applicable, the effective date of the amended and restated Plan; and (2) the effective dates of legally required or permitted provisions.

(g) **Application of Law.** This Plan will be construed and interpreted in accordance with the Code and ERISA. However, if the Plan needs to be construed and interpreted according to a State's or Commonwealth's laws (to the extent that such laws are not preempted by the provisions of the Code and ERISA), then this Plan will be construed and interpreted according to the laws of the State or Commonwealth in which the Sponsoring Employer maintains its principal place of business.

- 59 -

v

**12.6** **Legal Action.** Unless otherwise prohibited by law, either the Sponsoring Employer or the Trust, in the sole discretion of the Sponsoring Employer, will reimburse the Trustee and/or the Administrator for all costs, attorneys fees and other expenses associated with any such claim, suit or proceeding.

**12.7** **Qualified Plan Status.** This Plan is intended to be a qualified retirement plan under the provisions of Code §401(a), while the Trust is intended to be a tax exempt trust under Code §501(a).

**12.8** **Mailing of Notices to Administrator, Employer or Trustee.** Notices, documents or forms required to be given to or filed with the Administrator, Employer or Committee will be either hand delivered or mailed by first class mail, postage prepaid, to the Committee or the Employer, at the Employer's principal place of business. Any notices, documents or forms required to be given to or filed with the Trustee will be either be hand delivered or mailed by first class mail, postage prepaid, to the Trustee at its principal place of business.

**12.9** **Participant Notices and Waivers of Notices.** Whenever written notice is required to be given under the terms of this Plan, it will be deemed to be given on the date such written notice is either hand delivered to the recipient or deposited at a United States Postal Service Station, first class mail, postage paid. Notice may be waived by any party entitled to receive written notice concerning any matter under the terms of this Plan.

**12.10** **No Duplication of Benefits.** There will be no duplication of benefits under the Plan because of employment by more than one participating Employer or Affiliated Employer.

**12.11** **Evidence Furnished Conclusive.** Anyone required to give evidence under the terms of the Plan may do so by certificate, affidavit, document or other information that the person to act in reliance may consider pertinent, reliable and genuine, and to have been signed, made or presented by the proper party or parties. The Plan fiduciaries will be fully protected in acting and relying upon any evidence described under this Section.

**12.12** **Release of Claims.** A payment to a Participant or Beneficiary, his or her legal representative, or to a guardian or committee appointed for such Participant or Beneficiary, will, to the extent thereof, be in full satisfaction of all claims hereunder against the Administrator and Trustee, either of whom may require such Participant, legal representative, Beneficiary, guardian or committee, as a condition precedent to such payment, to execute a receipt and release thereof in such form as determined by the Administrator.

**12.13** **Multiple Copies of Plan And/or Trust.** This Plan, the related Trust Agreement and the related may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same Agreement or Trust Agreement, as the case may be, and will be binding on the respective successors and assigns of the Employer and all other parties.

**12.14** **Limitation of Liability and Indemnification.** In addition to and in furtherance of any other limitations provided in the Plan, and to the extent permitted by applicable law, the Employer will indemnify and hold harmless its board of directors (collectively and individually), if any, the Committee (collectively and individually), if any, and its officers, Employees, and agents against and with respect to any and all expenses, losses, liabilities, costs, and claims, including legal fees to defend against such liabilities and claims, arising out of their good-faith discharge of responsibilities under or incident to the Plan, excepting only expenses and liabilities resulting from willful misconduct. This indemnity will not preclude such further indemnities as may be available under insurance purchased by the Employer or as may be provided by the Employer under any by-law, agreement, vote of shareholders or disinterested directors, or otherwise, as such indemnities are permitted under state law. Payments with respect to any indemnity and payment of expenses or fees under this Section will be made only from assets of the Employer, and will not be made directly or indirectly from assets of the Trust.

**12.15** **Written Elections and Forms.** Whenever the word "written" or the words "in writing" are used, such words will include any method of communication permitted by the Department of Labor with respect to such documentation. In a similar manner, the word "form" will include any other method of election permitted under current law. Such alternative methods will include, but not be limited to, electronic modes to the extent permitted by law.

**12.16** **Assignment and Alienation of Benefits.** Except as may otherwise be permitted under Code §401(a)(13)(C), or as may otherwise be permitted under a Qualified Domestic Relations Order as provided in Section 8.10, no right or claim to, or interest in, any part of the Trust Fund, or any payment therefrom, will be assignable,

v

transferable, or subject to sale, mortgage, pledge, hypothecation, commutation, anticipation, garnishment, attachment, execution, or levy of any kind, and the Trustees will not recognize any attempt to assign, transfer, sell, mortgage, pledge, hypothecate, commute, or anticipate the same, except to the extent required by law.

**12.17 Exclusive Benefit Rule.** All contributions made by an Employer to the Trust Fund will be used for the exclusive benefit of the Participants who are Employees of the Employer or Adopting Employer and for their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the costs of maintaining the Plan. All contributions made by an Adopting Employer who is not an Affiliated Employer will be used for the exclusive benefit of the Participants who are Employees of the Adopting Employer and for their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the Adopting Employers' proportionate costs of maintaining the Plan.

**12.18 Notice and Consent Requirements.** This Section applies to any Notices/Forms and Participant Elections under the Plan:

    (a)    **Right to Defer Distribution.** Notices/Forms that relate to distributions will include a description of a Participant's right (if any) to defer receipt of a distribution and will describe the consequences of failing to defer receipt of the distribution, pursuant to the Regulations and other guidance provided by the Treasury and/or Labor. Notices/Forms that are delivered to Participants before the 90th day after the issuance of Regulations (unless future guidance requires otherwise) will include at a minimum: (1) a description indicating the investment options available under the Plan (including fees) that will be available if the Participant defers distribution; and (2) the portion of the summary plan description that contains any special rules that might materially affect a Participant's decision to defer.

    (b)    **Electronic Notice and Consent.** The use of an electronic medium to provide Notices/Forms and to make Participant Elections with respect to the Plan is permitted pursuant to the rules of this Section.

        (1)    **Requirements of Electronic System.** The following rules relate to the design of an electronic system used to deliver Forms/Notices and to make Participant Elections: (A) the electronic system must be reasonably designed to provide the information in the Form/Notice to a Recipient in a manner that is no less understandable to the Recipient than a written paper document; and (B) the electronic system must be designed to alert the Recipient, at the time that a Form/Notice is provided, to the significance of the information in the Form/Notice (including identification of the subject matter of the Form/Notice), and provide any instructions needed to access the Form/Notice, in a manner that is readily understandable.

        (2)    **Consumer Consent Requirements.** With respect to a Notice/Form, the following consumer consent requirements must be satisfied and, pursuant to E-SIGN §101(c)(6), the Notice/Form is not provided through an oral communication or a recording of an oral communication:

            (A)    **Consent to Electronic Delivery.** The Recipient must affirmatively consent to the delivery of the Notice/Form using an electronic medium. This consent must be either (i) made electronically in a manner that reasonably demonstrates that the Recipient can access the Notice/Form in the electronic medium in the form that will be used to provide the notice; or (ii) made using a written paper document (or any other permitted form under the Regulations), but only if the Recipient confirms the consent electronically in a manner that reasonably demonstrates that the Recipient can access the Notice/Form in the electronic medium in the form that will be used to provide the notice.

            (B)    **Withdrawal of Consumer Consent.** The consent under paragraph (A) to receive electronic delivery of Notices/Forms may be withdrawn by the Recipient at any time, and subsequent Notices/Forms cannot be delivered electronically.

            (C)    **Required Disclosure Statement.** The Recipient, prior to consenting under subparagraph (A), must be provided with a clear and conspicuous statement containing the following disclosures: (i) the statement informs the Recipient [a] of any right to have the Notice/Form provided using a written paper document or other non-electronic form; and [b] how, after having provided consent to receive the Notice/Form electronically, the Recipient may, upon request, obtain a paper copy of the Notice/Form and whether any

fee will be charged for such copy; (ii) the statement informs the Recipient of the right to withdraw consent to receive electronic delivery of a Notice/Form on a prospective basis at any time and explains the procedures for withdrawing that consent and any conditions, consequences, or fees in the event of the withdrawal; (iii) the statement informs the Recipient whether the consent to receive electronic delivery of a Notice/Form applies only to the particular transaction that gave rise to the Notice/Form or to other identified transactions that may be provided or made available during the course of the parties' relationship. The statement may provide that a Recipient's consent to receive electronic delivery will apply to all future Forms/Notices of the Recipient relating to the Plan until the Recipient is no longer a Participant in the Plan (or withdraws the consent); (iv) the statement describes the procedures to update information needed to contact the Recipient electronically; and (v) the statement describes the hardware and software requirements needed to access and retain the Notice/Form.

(D) **Post-Consent Change in Hardware or Software Requirements.** If there is a change in the hardware or software requirements needed to access or retain the Notice/Form after a Recipient provides consent to receive electronic delivery and such change creates a material risk that the Recipient will not be able to access or retain the Notice/Form in electronic format, then (i) the Recipient must receive a statement of [a] the revised hardware or software requirements for access to and retention of the Notice/Form; and [b] the right to withdraw consent to receive electronic delivery without the imposition of any fees for the withdrawal and without the imposition of any condition or consequence that was not previously disclosed in paragraph (C); and (ii) the Recipient must reaffirm consent to receive electronic delivery in accordance with subparagraph (A).

(E) **Exemption from Consumer Consent Requirements.** If the requirements of this paragraph (E) are satisfied, then the other requirements of paragraph (2) do not apply. This paragraph (E) constitutes an exemption from the Consumer Consent Requirements of E-SIGN §101(c). The electronic medium used to provide a Notice/Form must be a medium that the Recipient has the effective ability to access. At the time that the Notice/Form is provided, the Recipient must be advised that he or she may request and receive the Notice/Form in writing on paper at no charge, and, upon request, that Notice/Form must be provided to the Recipient at no charge.

(3) **Participant Elections via Electronic Delivery.** Participant Elections may be made electronically, subject to the following rules:

(A) **Effective Ability to Access.** The electronic medium used to make a Participant Election must be a medium that the person eligible to make the election is effectively able to access. If the appropriate individual is not effectively able to access the electronic medium for making the Participant Election, then the Participant Election will not be treated as made available to that individual.

(B) **Authentication.** The electronic system used in making Participant Elections must be reasonably designed to preclude any person other than the appropriate individual from making the election, based upon the facts and circumstances, including, but not limited to, whether the Participant Election has the potential for a conflict of interest between the individuals involved in the election.

(C) **Opportunity to Review.** The electronic system used in making Participant Elections must provide the person making the election with a reasonable opportunity to review, confirm, modify, or rescind the terms of the election before the election becomes effective.

(D) **Confirmation of Action.** The person making the Participant Election must receive, within a reasonable time, a confirmation of the effect of the election through a written paper document or an electronic medium under a system that satisfies the requirements of subparagraph (2) above.

v

(E) **Witnessing by a Plan Representative or Notary Public.** If a Participant Election is required to be witnessed by a Plan representative or a notary public (such as a spousal consent under Code §417), the signature of the individual making the Participant Election must be witnessed in the physical presence of a Plan representative or a notary public. An electronic notarization acknowledging a signature (in accordance with E-SIGN §101(g) and state law applicable to notary publics) will be given legal effect if the signature of the individual is witnessed in the physical presence of a notary public. Future guidance by the Treasury will apply hereto without the necessity of amending this paragraph.

(4) **Non-applicability of Rules.** The rules of this Section do not apply to any notice, election, consent, disclosure, or obligation required under the provisions of Title I or IV of ERISA, over which the Department of Labor or the Pension Benefit Guaranty Corporation has interpretative and enforcement authority. The rules in this Section also do not apply to Code §411(a)(3)(B) (relating to suspension of benefits) or any other Code provision over which Department of Labor or the Pension Benefit Guaranty Corporation has similar interpretative authority.

(5) **Retention of Electronic Records.** If an electronic record of a Notice/Form or a Participant Election is not maintained in a form that is capable of being retained and accurately reproduced for later reference, then the legal effect, validity, or enforceability of such electronic record may be denied, pursuant to E-SIGN §101(e).

(c) **Notification Period.** With respect to any Notice/Form that describes the Normal Form of Distribution and/or the Optional Forms of Distribution, and any Participant Election with respect to any distribution delivered to a Participant, the window for giving such Notice/Forms and Participant Elections will begin not later than 180 days and not earlier than 30 days prior to the Annuity Starting Date (unless future guidance requires/permits otherwise). Notwithstanding anything in this Section to the contrary, distribution of a benefit may begin less than 30 days after such Notice/Form and/or Participant Election is given if (1) the Administrator clearly informs the Participant that he or she has a right to a period of at least 30 days after receiving such Notice/Form and/or Participant Election to consider the decision of whether or not to elect a distribution; (2) the Participant, after receiving such Notice/Form and/or Participant Election, affirmatively elects a distribution (or a particular distribution option); and (3) if the Plan is a money purchase plan or the Normal Form of Distribution is a Qualified Joint and Survivor Annuity, the Participant does not revoke the election at any time prior to the expiration of the 7-day period that begins on the date such Notice/Form and/or Participant Election is given.

**12.19 Coordination With USERRA.** Notwithstanding any other provision of the Plan, contributions, benefits and service credit with respect to Qualified Military Service will be provided in accordance with the requirements of USERRA and with Code §414(u).

**12.20 Dual and Multiple Trusts.** Plan assets are may be held in two or more separate trusts, or in trust and by an insurance company or by a trust and under a custodial agreement. Assets may also be held in a common trust.

v

This Plan has been executed by the Sponsoring Employer as of the day, month and year set forth on page 1 of this Agreement.

Constellis Group, Inc.

By: _Ignacio Balderas_

Name:   Ignacio Balderas

Title:     Chief Executive Officer

[Signature Page to the Constellis Employee Stock Ownership Plan]

## Constellis Employee Stock Ownership Plan
## Additional Employer Adoption Agreement

**This Agreement** is made and entered into as of the date below between **Constellis Group, Inc.** (the Sponsor) and **Triple Canopy, Inc.** (the Adopting Employer).

### Introduction

- The Sponsor previously established the Constellis Employee Stock Ownership Plan (hereafter called the Plan) which the Adopting Employer wishes to adopt;

- Effective January 1, 2013, the Adopting Employer hereby adopts the Plan subject to the following conditions:

  (1) The Adopting Employer agrees to abide by such rules and procedures as the Administrator deems necessary for the proper administration of the Plan.

  (2) Employees of the Adopting Employer will be given credit for all Years of Service or Periods of Service earned with the Employer and other Adopting Employers.

  (3) Employees of the Employer and other Adopting Employers will be given credit for all Years of Service or Periods of Service earned with the Adopting Employer.

**This Agreement** is hereby executed by the parties hereto this _____30th_____ day of December, 2013.

**Constellis Group, Inc.**

By _____
Name:   Ignacio Balderas
Title:   Chief Executive Officer

**Triple Canopy, Inc.**

By _____
Name:   Ignacio Balderas
Title:   Chief Executive Officer

[Adoption Agreement for the Constellis Employee Stock Ownership Plan]

## Constellis Employee Stock Ownership Plan
## Additional Employer Adoption Agreement

**This Agreement** is made and entered into as of the date below between **Constellis Group, Inc.** (the Sponsor) and **Triarc Business Services, LLC** (the Adopting Employer).

### Introduction

- The Sponsor previously established the Constellis Employee Stock Ownership Plan (hereafter called the Plan) which the Adopting Employer wishes to adopt;

- Effective January 1, 2013, the Adopting Employer hereby adopts the Plan subject to the following conditions:

  (1) The Adopting Employer agrees to abide by such rules and procedures as the Administrator deems necessary for the proper administration of the Plan.

  (2) Employees of the Adopting Employer will be given credit for all Years of Service or Periods of Service earned with the Employer and other Adopting Employers.

  (3) Employees of the Employer and other Adopting Employers will be given credit for all Years of Service or Periods of Service earned with the Adopting Employer.

**This Agreement** is hereby executed by the parties hereto this _20th_ day of December, 2013.

**Constellis Group, Inc.**

By _____
Name:   Ignacio Balderas
Title:    Chief Executive Officer

**Triarc Business Services, LLC**

By _____
Name:   Ignacio Balderas
Title:    President

[Adoption Agreement for the Constellis Employee Stock Ownership Plan]

## CONSTELLIS EMPLOYEE STOCK OWNERSHIP PLAN
## ADMINISTRATIVE POLICY REGARDING THE CLAIMS PROCEDURE

In accordance with Section 8.9 of the Constellis Employee Stock Ownership Plan (the "Plan"), the rules and procedures set forth below (hereafter called the "Policy") govern claims for benefits under the Plan. This Policy is the sole and exclusive remedy for an Employee, Participant or Beneficiary (each a "Claimant") to make a claim for benefits, and this Policy will be administered and interpreted in a manner consistent with the requirements of ERISA §503 and the regulations in effect thereunder. All claims determinations made by the Administrator, by the Appropriate Named Fiduciary, and/or by the Committee (if one is appointed under Section 8.3 of the Plan) will be made in accordance with this Policy and will be applied consistently to similarly situated Claimants.

### DEFINITIONS

In applying the terms of this Policy, any terms used herein which are also used in the Plan will have the same meaning ascribed to them under this Policy as ascribed to them under the terms of the Plan except as may otherwise be provided in this Policy. In addition, the following terms specific to this Policy will have the following meanings:

APPROPRIATE NAMED FIDUCIARY. For purposes of this Policy, the term "Appropriate Named Fiduciary" means (a) if a Committee has been appointed by the Sponsoring Employer under Section 8.3 of the Plan, the Committee; or (b) if a Committee has not been appointed pursuant to Section 8.3 of the Plan, the Administrator (and if a Committee has not been appointed, any reference to Committee will be considered a reference to the Administrator).

### INITIAL DETERMINATION OF A CLAIM

A Claimant (or the Claimant's authorized representative) may file a claim for a Plan benefit to which the Claimant believes he or she is entitled. Claims must be filed in writing with the Administrator. The Administrator, in its sole and complete discretion, will make all initial determinations as to the right of any person to benefits. If the claim is denied in whole or in part, the Administrator will send the Claimant a written or electronic notice (which electronic notice must comply with the standards imposed by Department of Labor Regulation §2520.104b-1(c)(1)(i), (iii), and (iv)) informing the Claimant of the denial. The notice of denial will be given as provided in the next section below.

### NOTICE OF A CLAIM DENIAL

The written or electronic notice of the denial will be given within a reasonable period of time (but no later than 90 days) from the date the Administrator receives the written claim, unless special circumstances require an extension of time for processing the claim. In no event may the extension exceed 90 days from the end of the initial 90-day period. If an extension is necessary, the Administrator will send the Claimant a written notice prior to the expiration of the initial 90-day period in which the Administrator indicates the special circumstances requiring an extension and the date by which the Administrator expects to render a decision. The notice must be written in a manner calculated to be understood by the Claimant and must contain the following information: (a) the specific reason or reasons for the denial; (b) reference to the specific plan provisions on which the denial is based; (c) a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; (d) a description of the Plan's review (i.e., appeal) procedures and the time limits applicable to such procedures; and (e) a description of the Claimant's right to bring a civil action under ERISA §502(a) following an adverse benefit determination on review.

### APPEALING THE DENIAL OF A CLAIM

If the Administrator denies a claim in whole or in part, the Claimant may elect to appeal the denial. If the Claimant does not appeal the denial pursuant to the procedures set forth in this Policy, the denial will be final, binding and unappealable. Appeals will be filed in accordance with, and will be determined subject to, the following provisions:

(a) WHEN THE APPEAL MUST BE FILED. The written request for appeal must be filed by the Claimant (or by the Claimant's authorized representative) with the Appropriate Named Fiduciary within 60 days after the date on which the Claimant receives the Administrator's notice of denial.

(b) REVIEW OF THE CLAIM FOLLOWING AN APPEAL. If a request for an appeal is timely filed, the Appropriate Named Fiduciary will conduct a full and fair review of the claim and the denial. As part of this review, the Claimant may submit written comments, documents, records, and other information relating to the claim, and the review will take into account all such comments, documents, records, or other information submitted by the Claimant,

without regard to whether such information was submitted or considered in the Administrator's initial benefit determination. The Claimant also may obtain, free of charge and upon request, records and other information relevant to the claim, without regard to whether such information was relied upon by the Administrator in making the initial benefit determination. As a result of this review, the Appropriate Named Fiduciary will, in its sole and complete discretion, determine whether to uphold all or part of the initial claim denial.

(c) NOTICE OF DENIAL OF THE CLAIM. If the Appropriate Named Fiduciary determines pursuant to the review under paragraph (b) above that all or part of the initial denial should be upheld, the Administrator will send the Claimant a written or electronic notice informing the Claimant of its decision to uphold all or part of the initial denial. The notice of denial must be written in a manner calculated to be understood by the Claimant and must contain (a) the specific reason or reasons for the denial; (b) a specific reference to pertinent Plan provisions on which the denial is based; (c) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents and other information relevant to the claim; and (d) an explanation of the Claimant's right to request arbitration and the applicable time limits for doing so; and (e) a description of the Claimant's right to bring a cause of action under ERISA §502(a).

(d) WHEN THE NOTICE MUST BE GIVEN. If the Administrator is serving as the Appropriate Named Fiduciary, the notice will be given within a reasonable period of time (but no later than 60 days) after the date the Appropriate Named Fiduciary receives the request for appeal, unless special circumstances require an extension of time for reviewing the claim. In no event may the extension exceed 60 days from the end of the initial 60-day period. If an extension is necessary, prior to the expiration of the initial 60-day period, the Administrator will send the Claimant a written notice, indicating the special circumstances requiring an extension and the date by which the Appropriate Named Fiduciary expects to render a decision. However, if the Committee is serving as the Appropriate Named Fiduciary and the Committee holds regularly scheduled meetings on a quarterly or more frequent basis, notice will be given at the next regularly scheduled meeting if the Committee receives the written request for appeal more than 30 days prior to its next regularly scheduled meeting, or at the regularly scheduled meeting immediately following the next regularly scheduled meeting if the Committee receives the written request for appeal within 30 days of the next regularly scheduled meeting. If special circumstances require an extension, the decision may be postponed to the third regularly scheduled meeting following the Committee's receipt of the written request for appeal if, prior to the expiration of the initial time period for review, the Claimant is provided with written notice indicating the special circumstances requiring an extension and the date by which the Committee expects to render a decision. If the extension is required because the Claimant has not provided information that is necessary to decide the claim, the Committee may suspend the review period from the date on which notice of the extension is sent to the Claimant until the date the Claimant responds to the request for additional information. The Committee must notify the Claimant of its decision as soon as possible, but not later than 5 days after the decision is made.

## VOLUNTARY ARBITRATION

If (a) a Claimant wishes to contest a final decision of the Appropriate Named Fiduciary, and (b) the Claimant voluntarily chooses not to bring a civil action under ERISA §502(a) following an adverse benefit determination on appeal, then the Claimant and the Appropriate Named Fiduciary may agree to arbitration. If a Claimant agrees to arbitration, then a written request for arbitration must be filed by the Claimant (or the Claimant's authorized representative) with the Administrator within 60 days (or such additional time as the Administrator may deem appropriate) after the date the Claimant receives the written decision of the Appropriate Named Fiduciary. The Claimant and the Administrator will each name an arbitrator within 20 days after the Administrator receives the Claimant's written request for arbitration. The two arbitrators will jointly name a third arbitrator within 15 days after their appointment. If either party fails to select an arbitrator within the 20 day period, or if the two arbitrators fail to select a third arbitrator within 15 days after their appointment, then the Administrator will determine that either (a) the arbitration will cease, or (b) the presiding judge of the county court (or its equivalent) in the county in which the principal office of the Sponsoring Employer is located will appoint the other arbitrator or arbitrators. The arbitrators will render a decision within 60 days after the appointment of the third arbitrator and will conduct all proceedings pursuant to the laws of the state in which the Sponsoring Employer's principal place of business is located and the then current Rules of the American Arbitration Association governing commercial transactions, to the extent such rules are not inconsistent with applicable state law. The cost of arbitration will be borne by the losing party or, if the decision is not clearly in favor of one party or the other, in the manner determined by the arbitrators. Pursuant to the Claimant's voluntary choice to pursue arbitration, the arbitrators' decision will be final, binding and unappealable.

v

## CONSTELLIS EMPLOYEE STOCK OWNERSHIP PLAN
## ADMINISTRATIVE POLICY REGARDING QUALIFIED DOMESTIC RELATIONS ORDERS

In accordance with Section 8.10 of the Constellis Employee Stock Ownership Plan (the "Plan"), Code §414(p)(6)(B), and ERISA §206(d)(3)(G)(ii), the rules and procedures set forth below (hereafter called the "Policy") govern the determination of whether a Domestic Relations Order constitutes a Qualified Domestic Relations Order, and the distribution of benefits to Alternate Payees under a Qualified Domestic Relations Order. This Policy will be administered and interpreted in a manner consistent with the requirements of ERISA §206(d)(3) and the regulations thereunder, as well as Code §414(p) and the regulations in effect thereunder. All determinations made by the Administrator and/or by the Committee (if one has been appointed under Section 8.3 of the Plan) will be made in accordance with this Policy.

### DEFINITIONS

In applying this Policy, any terms used herein which are also used in the Plan will have the same meaning ascribed to them under this Policy as are ascribed to them under the terms of the Plan except as may otherwise be provided in this Policy. In addition, the following terms that are specific to this Policy will have the following meanings:

1.  **ALTERNATE PAYEE.** The term "Alternate Payee" means any Spouse, former Spouse, child or other dependent of a Participant who is recognized by a Domestic Relations Order as having a right to receive all, or a portion of, the benefits payable under the Plan with respect to a Participant. The Administrator is not required by ERISA §206(d)(3) or any other ERISA provision to review the correctness of a determination by a competent State (or Commonwealth) authority that an individual is in fact a Spouse, former Spouse, child, other dependent, or surviving Spouse of the Participant under a State's (or Commonwealth's) domestic relations law.

2.  **DOMESTIC RELATIONS ORDER.** The term "Domestic Relations Order" means any judgment, decree, or order (including approval of a property settlement agreement) within the meaning of ERISA §206(d)(3)(B)(ii) which (a) relates to the provision of child support, alimony payments, or marital property rights to a Spouse, former Spouse, child, or other dependent of a Participant; and (b) is made pursuant to a State's (or Commonwealth's) domestic relations law (including a community property law) by a State (or Commonwealth) authority with jurisdiction over such matters. Such State (or Commonwealth) must be part of the United States of America. A Domestic Relations Order will not affect a Participant's benefits unless it is determined to be a Qualified Domestic Relations Order.

3.  **EARLIEST RETIREMENT AGE.** The term "Earliest Retirement Age" means the earlier of (a) the date on which the Participant is entitled to a distribution under this Plan; or (b) the later of (1) the date the Participant attains age 50, or (2) the earliest date on which the Participant could receive benefits under this Plan if the Participant Terminated Employment with the Employer.

4.  **EIGHTEEN-MONTH PERIOD.** The term "Eighteen-Month Period" means a period of eighteen (18) months during which the Administrator must preserve the Segregated Amounts for the benefit of an Alternate Payee. The Eighteen-Month Period begins as of the later of (a) the date upon which the Plan receives the Domestic Relations Order, or (b) the QDRO Distribution Starting Date.

5.  **QDRO DISTRIBUTION STARTING DATE.** The term "QDRO Distribution Starting Date" means either (a) the date on which the benefit payment is required to be made to an Alternative Payee pursuant to a Qualified Domestic Relations Order; or (b) the date on which the commencement of benefit payments is required to begin to an Alternative Payee pursuant to a Qualified Domestic Relations Order. For purposes of the QDRO Distribution Starting Date, this Policy establishes that a Qualified Domestic Relations Order may provide for the benefit payment (or the commencement of benefit payments) to an Alternative Payee prior to the time that a Participant has Terminated Employment., but only if such benefit payment (or the commencement of benefit payments) is to be made on or after the date that the Participant reaches or would have reached the Participant's Earliest Retirement Age.

6.  **QUALIFIED DOMESTIC RELATIONS ORDER (OR QDRO).** The terms "Qualified Domestic Relations Order" and "QDRO" mean a Domestic Relations Order that (a) the Administrator (or Committee, if applicable) deems to be qualified under the requirements of ERISA §206(d)(3)(B)(i); (b) creates or recognizes the existence of an Alternate Payee's right, or assigns to an Alternate Payee the right, to receive all or a portion of the benefits payable with respect to a Participant; and (c) satisfies the following:

v

(a) DOMESTIC RELATIONS ORDER MUST CLEARLY SPECIFY CERTAIN FACTS. A Domestic Relations Order satisfies the requirements of this subparagraph only if the Domestic Relations Order clearly specifies (1) the name and the last known mailing address (if any) of the Participant and the name and mailing address of each Alternate Payee covered by the Domestic Relations Order; (b) the amount or percentage of the Participant's benefits to be paid by the Plan to each such Alternate Payee, or the manner in which such amount or percentage is to be determined; (c) the number of payments or period to which such Domestic Relations Order applies; and (d) each plan (including, if applicable, this Plan) to which such Domestic Relations Order applies.

(b) DOMESTIC RELATIONS ORDER MUST NOT ALTER AMOUNT OR FORM OF BENEFITS. A Domestic Relations Order satisfies the requirements of this paragraph only if it (1) does not require the Plan to provide any type or form of benefit, or any option, not otherwise provided under the Plan; (2) does not require the Plan to provide increased benefits (determined on the basis of actuarial value); (3) does not require the payment of benefits to an Alternate Payee which are required to be paid to another Alternate Payee under another Domestic Relations Order previously determined to be a QDRO; and (4) does not require the benefit payment (or the commencement of benefit payments) be made to an Alternative Payee prior to the QDRO Distribution Starting Date.

7. SEGREGATED AMOUNTS. The term "Segregated Amounts" means, if the QDRO Distribution Starting Date occurs prior to the determination that the Domestic Relations Order is a QDRO (or such other event(s) that would cause a distribution to be made to a Participant (or such other person) prior to a distribution to be made an Alternate Payee), the amounts that would be payable to an Alternate Payee under the terms of the Domestic Relations Order during the Eighteen-Month Period (if the Domestic Relations Order had been determined to be a Qualified Domestic Relations Order). During the Eighteen-Month Period, the Administrator will take steps to ensure that the Segregated Amounts that would be payable to the Alternate Payee are not distributed to the Participant or any other person.

## RIGHTS AND RESPONSIBILITIES

In addition to any rights of an Alternate Payee and any responsibilities of the Administrator that may be set forth elsewhere in this Policy, an Alternate Payee has the following rights and the Administrator has the following responsibilities:

1. ALTERNATE PAYEE MAY DESIGNATE A REPRESENTATIVE. An Alternate Payee has the right to designate a representative to receive copies of notices and information sent to the Alternate Payee regarding a Domestic Relations Order.

2. ADMINISTRATOR WILL SUPPLY INFORMATION TO ALTERNATE PAYEE. The Administrator will promptly supply to an Alternate Payee (including a prospective Alternate Payee):

(a) EXPLANATION OF PLAN AND BENEFITS. An explanation of the Plan and a Participant's benefits that are available to assist a prospective Alternate Payee in preparing a Qualified Domestic Relations Order, such as a Summary Plan Description (SPD), plan document, individual benefit and/or account statements, and any model Qualified Domestic Relations Orders that have been developed for use by the Plan.

(b) TIME LIMITS. A description of any time limits set by the Administrator for making determinations.

(c) PROTECTION OF PENSION BENEFITS. A description of the steps that the Administrator will take to protect and preserve pension assets or benefits upon receipt of a Domestic Relations Order (for example, a description of when and under what circumstances Plan assets will become Segregated Amounts or benefit payments will be delayed, will be suspended, or will become Segregated Amounts).

(d) REVIEW PROCESS. A copy of the Plan's Administrative Policy Regarding the Claims Procedure, for obtaining a review of the Administrator's determination as to whether a Domestic Relations Order is a QDRO.

3. DISCLOSURE RIGHTS TO ALTERNATE PAYEE. An Alternate Payee under a QDRO generally will be considered a beneficiary under the Plan. Accordingly, the Alternate Payee must be furnished, upon written request, copies of a variety of documents, including the latest Summary Plan Description (SPD), the latest annual report, any final annual report, and the bargaining agreement, trust agreement, contract, or other instrument under which the Plan is established or operated. The Administrator may impose a reasonable charge to cover the cost of furnishing such copies. When benefit payments to the Alternate Payee commence under the Qualified Domestic Relations Order, the Alternate Payee will be treated as a "beneficiary receiving benefits under the Plan" and will be furnished automatically and free of charge the Summary Plan Description (SPD), summaries of material Plan changes, and the Plan's summary annual report.

v

4. **ADMINISTRATOR'S DUTY TO ACCOUNT FOR AND PROTECT ALTERNATE PAYEE INTEREST UNDER A QDRO.** If the Domestic Relations Order is determined to be a QDRO prior to the QDRO Distribution Starting Date, then the Administrator has a continuing duty to account for and to protect the Alternate Payee's interest in the Plan to the same extent that the Administrator is obliged to account for and to protect the interests of the Participant.

5. **ADMINISTRATOR MAY SEND MATERIALS IN WRITING OR ELECTRONICALLY.** With respect to any notices, SPDs, summaries of material Plan changes, summary annual reports, and any other required disclosures, the Administrator will send such materials either in writing or electronically (so long as such materials (a) are not prohibited from being delivered electronically, and (b) comply with the standards imposed by Labor Regulation §2520.104b-1(c)).

## DETERMINATION PROCEDURE

1. **DETERMINE IF A COURT ORDER IS A DOMESTIC RELATIONS ORDER.** The Administrator will review any court judgment, decree, or order presented to the Plan to ascertain whether the judgment, decree, or order is a Domestic Relations Order. No judgment, decree, or order will constitute a Domestic Relations Order unless (a) it relates to child support, alimony payments, or marital property rights to a Spouse, former Spouse, child, or other dependent of a Participant, and (b) it is made pursuant to a State (or Commonwealth) domestic relations law (including a community property law) by a State (or Commonwealth) authority with jurisdiction over such matters. A foreign (non-U.S.) court judgment, decree, or order will not constitute a Domestic Relations Order. However, a Domestic Relations Order will not affect a Participant's benefits unless it is determined to be a Qualified Domestic Relations Order.

2. **NOTIFY THE AFFECTED PARTIES THAT A DOMESTIC RELATIONS ORDER HAS BEEN RECEIVED.** If the Administrator determines that the court judgment, decree, or order that the Plan has received is a Domestic Relations Order, then the Administrator must promptly notify the Participant and each Alternate Payee of the receipt of such Domestic Relations Order. The Administrator must also promptly supply the Participant and each Alternate Payee with a copy of this Policy, for determining whether the Domestic Relations Order is a Qualified Domestic Relations Order.

3. **DETERMINE IF THE DOMESTIC RELATIONS ORDER IS ALSO A QUALIFIED DOMESTIC RELATIONS ORDER.** A Domestic Relations Order will only affect a Participant's benefits if the Administrator determines it is a Qualified Domestic Relations Order as defined in the Definition section of this policy, subject to the following provisions:

   (a) **ADMINISTRATOR MAY SUPPLEMENT A DOMESTIC RELATIONS ORDER WITH FACTUAL IDENTIFYING INFORMATION.** If a Domestic Relations Order fails to specify factual identifying information that is easily obtainable by the Administrator, then the Administrator will supplement the Domestic Relations Order with the appropriate identifying information rather than rejecting the Domestic Relations Order as not being a QDRO. For instance, a Domestic Relations Order will not fail to be Qualified Domestic Relations Order if the Domestic Relations Order misstates/misspells the Plan's name or the names of a Participant or Alternate Payees (and the Administrator can clearly determine the correct names), or a Domestic Relations Order omits the addresses of the Participant and/or the Alternate Payees (and the Administrator's records include this information).

   (b) **ADMINISTRATOR MAY MAKE PRELIMINARY REVIEW AND POSTPONE FINAL DETERMINATION.** The Administrator may establish a process for providing preliminary or interim review of a Domestic Relations Order, and for postponing a final determination whether a Domestic Relations Order is a QDRO for a limited period, to permit a prospective Alternate Payee to correct defects prior to or within the Eighteen-Month Period.

   (c) **ADMINISTRATOR MAY SUBMIT QUESTION TO COURT.** If the Administrator is unable to reach a determination whether the Domestic Relations Order constitutes a QDRO (with the advice of counsel), then the Administrator will submit the question to a court of competent jurisdiction for a determination whether the Domestic Relations Order is a QDRO.

4. **NOTIFY AFFECTED PARTIES.** The Administrator will promptly notify the Participant and each Alternate Payee of the determination as to whether the Domestic Relations Order constitutes a QDRO. The notice of the Administrator's determination should be written in a manner that can be easily understood by the parties. If the Administrator rejects the Domestic Relations Order as a QDRO, then the rejection notice will provide (a) the reasons why the Domestic Relations Order is not a QDRO; (b) references to the Plan provisions upon which the Administrator's determination is based; (c) an explanation of any time limits that apply to rights available to the parties under the Plan (such as the duration of any protective actions that the Administrator will take); and (d) a description of any additional material, information, or modifications necessary for the Domestic Relations Order to constitute a QDRO and an explanation of why such material, information, or modifications are necessary.

v

## INTERIM PROCEDURES FOR PARTICIPANTS IN PAY STATUS

Regarding any Participant whose benefits are in pay status during any period in which a determination is being made whether a Domestic Relations Order constitutes a QDRO (either by the Administrator or a court of competent jurisdiction), the Administrator will separately account for the Segregated Amounts which would otherwise be payable to the Alternate Payee during the determination period (as if the Domestic Relations Order had been found to constitute a QDRO). Furthermore, the Administrator will take steps to ensure that the Segregated Amounts that would be payable to the Alternate Payee are not distributed to the Participant or any other person.

## DISTRIBUTION

WITHIN AND AFTER THE EIGHTEEN-MONTH PERIOD. If it is determined that a Domestic Relations Order constitutes a QDRO within the Eighteen-Month Period, the Administrator will pay the Segregated Amounts to the entitled Alternate Payee. The distribution of the Segregated Amounts may be made in one lump sum payment (even if the Plan does not permit any lump sum distributions, so long as the lump sum distribution of the Segregated Amounts is made in accordance with the QDRO). However, if (a) it is determined that a Domestic Relations Order does not constitute a QDRO within the Eighteen-Month Period, or the issue as to whether the Domestic Relations Order is a QDRO has not been resolved by the end of the Eighteen-Month Period, and (b) the Participant (or such other person) is entitled to a distribution from the Plan, the Administrator will pay the Segregated Amounts to the Participant (or such other person) who would have been entitled to the distribution of the Segregated Amounts (if there had not been a Domestic Relations Order). Distribution of the Segregated Amounts may be made in one lump sum payment at the election of the Participant (or such other person) even if the Plan does not permit lump sum distributions. If it is later determined that the Domestic Relations Order constitutes a QDRO after the Eighteen-Month Period, the QDRO will only be applied on a prospective basis and the Alternate Payee will not be entitled to any Segregated Amounts.

v

## CONSTELLIS EMPLOYEE STOCK OWNERSHIP PLAN

## FIRST AMENDMENT

WHEREAS, Constellis Group, Inc., a Delaware corporation (the "Company"), adopted and executed a certain employee stock ownership plan, called the "Constellis Employee Stock Ownership Plan," effective as of January 1, 2013 (the "Plan"), and

WHEREAS, the Company maintains the Plan for the benefit of its employees and the employees of certain affiliated companies; and

WHEREAS, on June 6, 2104, Wilmington Trust Retirement and Institutional Services Company, in its capacity as trustee (the "Trustee") of the Constellis Employee Stock Ownership Trust (the "Trust"), established pursuant to the Plan, entered into a contract to effectuate the sale of all stock of the Company in the Trust to Constellis Holdings, Inc.; and

WHEREAS, Section 11.1 of the Plan provides that the Plan can be amended at any time; and

WHEREAS, the Company now desires to continue the Plan without interruption by amending and converting it to a profit sharing plan.

NOW, THEREFORE, the Plan is hereby amended in the following manner, effective on the date this First Amendment is executed, as follows:

1.      The Plan shall be a "profit-sharing plan" as that term is used in Code §401 and shall no longer be an "employee stock ownership plan" as that term is defined under Internal Revenue Code §4975(e)(7) as a plan designed to invest primarily in qualifying Employer Securities.

2.      The Plan shall no longer have Exempt Loans as defined in Section 1.33 of the Plan.

3.      The name of the Plan shall change from the Constellis Employee Stock Ownership Plan to the Constellis Profit Sharing Plan.

4.      Article I shall be amended by adding the following new definition:

**Conversion Effective Date.** The term "Conversion Effective Date" means the date the Plan converted from being an employee stock ownership to a profit sharing plan pursuant to this First Amendment to the Plan.

5.      The proceeds from the sale of Employer Securities in the Unallocated Employer Securities Account shall be allocated to Participant's Accounts in the same manner as the provisions of Section 3.1(b) of the Plan.

6.      Section 5.15 of the Plan ("Distributions of Stock"), is amended by changing the title to "Form of Distributions" and deleting the first sentence of Section 5.15 in its entirety and replacing it with the following, "All distributions under the other provisions of this Article 5 will be made solely in the form of cash. Prior to the Conversion Effective Date, all distributions made under the other provisions of this Article 5 will be in the form of cash or Employer Securities, or both, subject to the following provisions:"

7.      Sections 3.7(d), 3.7(e), 3.7(f), 5.20, 6.1(c), 7.1, 7.3, 7.4, 7.5 of the Plan shall no longer be applicable after the Conversion Effective Date.

8.      Participants shall become Vested in their Participant's Accounts as of the Conversion Effective Date in accordance with the complete discontinuance of contribution provisions of Section 11.2(b) of the Plan.

9.      In all other respects, except as hereinbefore modified, the terms of the Plan are hereby ratified and confirmed.

[*Signatures appear on the following page(s)*]

2

IN WITNESS WHEREOF, Constellis Group, Inc. has caused this instrument to be duly executed and its seal to be hereunto affixed as of this _____ day of June, 2014.

CONSTELLIS GROUP, INC.

By:_____

IN WITNESS WHEREOF, Constellis Group, Inc. has caused this instrument to be duly executed and its seal to be hereunto affixed as of this  25th day of  July , 2014.

CONSTELLIS GROUP, INC.

By: _____

[Signature Page to First Amendment to Constellis Employee Stock Ownership Plan]

4