# EXHIBIT 2

**EXECUTION DRAFT**

**Constellis Employee Stock Ownership Trust**

**Effective as of January 1, 2013**

v

## TABLE OF CONTENTS

ARTICLE I NAME AND ACCEPTANCE.................................................................. 1

ARTICLE II MANAGEMENT AND CONTROL OF TRUST FUND....................................... 2

ARTICLE III PROVISIONS RELATED TO INVESTMENT OF TRUST FUND ..................... 9

ARTICLE IV VALUATION OF TRUST FUND ....................................................... 11

ARTICLE V NO REVERSION TO EMPLOYER...................................................... 11

ARTICLE VI CHANGE OF TRUSTEE ................................................................ 11

ARTICLE VII ADDITIONAL EMPLOYERS .......................................................... 12

ARTICLE VIII AMENDMENT AND TERMINATION ............................................... 13

ARTICLE IX INDEMNIFICATION, APPOINTMENT OF INVESTMENT
          MANAGER, AND APPOINTMENT OF ANCILLARY TRUSTEE........... 14

ARTICLE X MISCELLANEOUS ......................................................................... 17

### Constellis Employee Stock Ownership Trust

**THIS TRUST AGREEMENT**, made as of the date hereof, by and between Constellis Group, Inc., a Delaware corporation (the "Company"), and Wilmington Trust Retirement and Institutional Services Company, not in its corporate capacity but solely in its capacity as trustee, and its successors and assigns in the trust hereby evidenced (the "Trustee").

### WITNESSETH THAT:

**WHEREAS,** the Company now desires to establish the Plan into two separate documents, the "Constellis Employee Stock Ownership Plan," hereinafter referred to as the "Plan," effective as of January 1, 2013 and the "Constellis Employee Stock Ownership Trust," hereinafter referred to as the "Trust," effective as of January 1, 2013;

**WHEREAS,** the Trustee accepts the Trust, which is and becomes a part of the Plan, and agrees to perform the obligations set forth in this Trust;

**WHEREAS,** the Trust shall be interpreted, whenever possible, to comply with the terms of the Code, ERISA, and all formal Regulations and rulings; and

**WHEREAS,** capitalized terms used but not defined herein shall have the respective meanings given to such terms in the Plan.

**NOW, THEREFORE,** pursuant to the authority delegated to the undersigned officers of the Company by resolution of its board of directors (the "Board") and the authority delegated to the Trustee under the Trust;

**IT IS AGREED,** by and between the parties hereto, that the trust provisions contained herein shall constitute the agreement between the Company and the Trustee in connection with the Plan and the Trust;

**IT IS FURTHER AGREED,** that the Trustee hereby accepts its appointment as such under this Trust on the date hereof, effective as of January 1, 2013; and

**IT IS FURTHER AGREED,** by and between the parties hereto as follows:

### ARTICLE I
### NAME AND ACCEPTANCE

**1.01.** **Name**. This Trust Agreement and Trust hereby shall be known as the "Constellis Employee Stock Ownership Trust."

**1.02.** **Acceptance**. The Trustee accepts the Trust established and continued herein which is and becomes part of the Plan and agrees to perform the obligations imposed under this Trust Agreement.

v

## ARTICLE II
## MANAGEMENT AND CONTROL OF TRUST FUND

**2.01.** **Trust Fund**. The "Trust Fund" as of any date means all property of every kind held or acquired by the Trustee pursuant to this Trust. "Trust Fund" is also referred to as "Trust Assets." The Trustee shall manage, administer and invest all contributions made to the Trust by the Employer or Employers under the Plan as one Trust Fund. The Trustee shall not be responsible in any way for the adequacy of the Trust Fund to satisfy and discharge any and all liabilities under the Plan or for the proper application of distributions made or other action taken upon direction of the Administrator. If, for any reason, it becomes necessary to determine the portion of the Trust Fund allocable to Employees and former Employees of any Employer as of any date, the Administrator shall specify such date as an Accounting Date, and after all adjustments required under the Plan as of that Accounting Date have been made, the portion of the Trust Fund attributable to such Employees and former Employees shall be determined and shall consist of an amount equal to the aggregate of the Account Balances of Employees and former Employees of that Employer plus an amount equal to any allocable contributions made by that Employer since the close of the immediately preceding Plan Year.

**2.02.** **Plan Administration**. The Administrator under the Plan is the Sponsoring Employer, unless a Committee is appointed to be the Administrator. The Trustee shall be fully protected by the Company in relying on any communication sent by any person authorized by the Administrator and shall not be required to verify the accuracy or validity of any signature. Any provision or reference herein to the direction of the Trustee by the Administrator shall include such direction by such Committee or such person authorized by the Administrator. Notwithstanding the provisions herein, the Trustee: (a) shall act in accordance with its obligations under ERISA; and (b) is the sole discretionary fiduciary with respect to borrowing money for the purpose of purchasing Employer Securities and for the purchase or sale of Employer Securities.

**2.03.** **Exercise of Trustee's Duties**. The Trustee shall discharge its duties hereunder solely in the interest of Plan Participants and other persons entitled to benefits under the Plan, and:

(a)     for the exclusive purpose of:

(i)     providing benefits to Participants and other persons entitled to benefits under the Plan; and

(ii)     defraying reasonable expenses of administering the Plan;

(b)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

(c)     in accordance with the terms of this Trust Agreement to the extent, in the good faith judgment of the Trustee, that the Trust Agreement is consistent with the provisions of the Code and ERISA.

**2.04.   General Powers**.   The Trustee has full authority, subject to direction by the Administrator, with regard to the investment and reinvestment of the Trust Fund, except with respect to:  (i) the initial investment in Company Stock in the Trust Fund, for which the Trustee shall have full authority and discretion without regard to the direction of the Administrator, (ii) Trust Assets under the control or direction of a properly appointed Investment Manager and (iii) Trust Assets properly subject to Employer or Administrator investment direction, subject to any investment policy established by the Administrator.  Subject to the provisions of **Sections 2.02, 2.03** and **Article III** herein, with respect to the Trust Fund, the powers, rights and duties of the Trustee shall be limited to the following, in addition to those provided elsewhere in this Trust, or by applicable law:

(a)     To invest the Trust Fund primarily in Company Stock (provided the Trustee does not pay in excess of adequate consideration, as defined by ERISA).

(b)     At the direction of the Administrator, to invest or reinvest the Trust Fund in any common or preferred stocks, open-end or closed-end mutual funds, money market funds, put and call options traded on a national exchange, United States retirement plan bonds, corporate bonds, debentures, convertible debentures, commercial paper, U.S. Treasury bills, U.S. Treasury notes and other direct or indirect obligations of the United States Government or its agencies, limited partnerships, limited liability companies, insurance contracts of any type, mortgages, notes or other property of any kind, real or personal, and to buy or sell options on common stock on a nationally recognized exchange with or without holding the underlying common stock, to buy and sell commodities, commodity options and contracts for the future delivery of commodities, and to make any other investments the Administrator deems appropriate, as a prudent person would do under like circumstances with due regard for the purposes of the Plan.  Any investment made or retained by the Administrator in good faith will be proper but must be of a kind (with the exception of Company Stock) constituting a diversification considered by law suitable for trust investments; provided, that the Trustee shall follow the directions of the Administrator with respect to such investment or reinvestment of the Trust Fund and the Trustee shall have no duty or obligation to review the assets from time to time so acquired, nor to make any recommendations with respect to the investment, reinvestment or retention thereof, and the Trustee shall have no liability for any losses arising from investments made in accordance with such directions, or lack thereof;

(c)     At the direction of the Administrator, to retain in cash (pending investment, reinvestment or the distribution of Dividends) such reasonable amount as may be required to satisfy liquidity needs of the Trust and for the proper administration of the Trust and to invest such cash as provided in **Section 3.01** herein, provided, however, unless specifically directed otherwise by the Administrator, Trustee may

retain reasonable amounts of cash, in its discretion, without any liability for interest;

(d)   At the direction of the Administrator, to invest at a reasonable rate of interest or in a common trust fund, as described in Code Section 584, or in a collective investment fund, the provisions of which govern the investment of such assets and which the Plan incorporates by this reference and which conforms to the rules of the Comptroller of the Currency;

(e)   To provide information, at the request of the Administrator, that is available to the Trust to enable the Company to file all tax returns required for the Trust and Plan required of the Trustee;

(f)   To receive and to hold all contributions paid to it under the Plan; provided, however, that the Trustee shall have no duty to require any contributions to be made to it, to determine that the contributions received by it comply with the provisions of the Plan or with any resolution of the Board providing therefor;

(g)   At the direction of the Administrator, to make distributions from the Trust, at such times and in such amounts of Company Stock and/or cash, to the persons entitled thereto under the Plan.  Any undistributed portion of a Participant's Account under the Plan shall be retained in the Trust.  If distribution is made in the form of Company Stock, the Trustee shall cause the Company to issue an appropriate stock certificate to the persons entitled thereto, to be delivered to such person by the Trustee, provided, however, that the Trustee and the Company shall comply with the provisions of the Plan relating to the repurchase of Company Stock by the Trust or the Company.  Any cash distribution shall be made by the Trustee furnishing a check to the Participant.  The Trustee shall have no obligation to search for or ascertain the whereabouts of any payee or distributee of benefits from the Trust Fund;

(h)   At the direction of the Administrator, to vote Company Stock as provided in the Plan, and any other stocks, bonds or other securities held in the Trust, or otherwise consent to or request any action on the part of the issuer in person, by proxy or power of attorney;

(i)   To contract or otherwise enter into transactions between itself, as Trustee, and the Company or any Employer, or any Company shareholder or other individual, for the purpose of acquiring or selling Company Stock and, subject to the provisions of **Section 2.03** herein, to retain such Company Stock; provided that in the event that the Company, in its sole discretion, registers the Company Stock under the Securities Act of 1933 and/or qualifies the Company Stock under the "Blue Sky" laws of any state or states, then such registration or qualification will be made in accordance with applicable laws;

v

(j)     At the direction of the Administrator, to compromise, contest, arbitrate, settle or abandon claims and demands by or against the Trust and Trust Fund;

(k)     At the direction of the Administrator, to begin, maintain or defend any litigation necessary in connection with the investment, reinvestment and administration of the Trust, and, to the extent not paid from the Trust Fund and subject to **Section 9.01** herein, the Employers shall indemnify the Trustee against all expenses and liabilities reasonably sustained or anticipated by it by reason thereof (including reasonable attorneys' fees);

(l)     At the direction of the Administrator, to retain any funds or property subject to any dispute without liability for the payment of interest, or to decline to make payment or delivery thereof until final adjudication is made by a court of competent jurisdiction;

(m)     To report to the Company as of the last day of each Plan Year, as of any Accounting Date (or as soon thereafter as practicable), or at such other times as may be required under the Plan, the then net worth of the Trust Fund, which is the fair market value of all property held in the Trust Fund, reduced by any liabilities other than liabilities to Participants (and their Beneficiaries) in the Plan, as determined by the Trustee;

(n)     To furnish to the Administrator an annual statement of account or accounts, showing the condition of the Trust Fund and the net worth of the Trust Fund at the end of the Plan Year, all investments, receipts, disbursements and other transactions made by the Trustee during the Plan Year covered by the statement, and such other information as the Trustee may possess which the Company requires in order to comply with Section 103 of ERISA. The Trustee shall keep accurate accounts of all investments and earnings thereon, and all accounts, books and records related to such investments shall be open to inspection by any person designated by the Company, the Employer or the Administrator at reasonable times and may be audited from time to time by any person or persons as the Company, Employer or the Administrator may specify in writing. All accounts of the Trustee shall be kept on an accrual basis. The Administrator may direct the Trustee to furnish the Administrator, Company or Employer with any information relating to the Trust Fund. If, during the term of this Trust, the Department of Labor issues Regulations under ERISA regarding the valuation of Company Stock or other assets for purposes of the reports required by ERISA, the Trustee shall use such valuation methods for purposes of the accounts described by this subparagraph. If there is not a generally recognized market (as contemplated by Section 3(18)(A) of ERISA) for shares of Company Stock, as determined by the Trustee, all valuations of such securities shall be made by an "Independent Appraiser" (as described in Section 401(a)(28)(C) of the Code) retained by the Trustee, and reviewed and finalized by the Trustee, in accordance with Section 3(18)(B) of ERISA. The Company or the Administrator may approve such accounting by written notice of approval delivered to the Trustee or by failure to

v

express objection to such accounting in writing delivered to the Trustee within 60 days from the date upon which the accounting was delivered to the Company. Nothing herein shall require the Company or the Administrator to approve or otherwise determine the correctness of the Trustee's valuation of Company Stock. Upon the receipt of a written approval of the accounting, or upon the passage of the period of time within which objection may be filed without written objections having been delivered to the Trustee, such accounting shall be deemed to be approved, and the Trustee shall be released and discharged as to all items, matters and things set forth in such account, as fully as if such accounting had been settled and allowed by decree of a court of competent jurisdiction in an action or proceeding in which the Trustee, the Company, the Administrator and all persons having or claiming to have any interest in the Trust Fund or under the Plan were parties;

(o)     At the direction of the Administrator, to pay any estate, inheritance, income or other tax, charge or assessment attributable to any benefit which it shall or may be required to pay or withhold; and to require before paying or withholding such amounts, such release or other document from any taxing authority and such indemnity from the intended payee or distributee as the Trustee shall deem necessary for its protection;

(p)     To employ and to reasonably rely upon information and advice furnished by agents, attorneys, independent appraisers, independent financial advisors, accountants or other persons of its choice for such purposes as the Trustee considers desirable;

(q)     To assume, until advised to the contrary by the Company, the Administrator or the Internal Revenue Service, that the Trust evidenced by this Agreement is entitled to tax exemption under Section 501(a) of the Code and the Plan is qualified under Section 401(a) of the Code;

(r)     At the direction of the Administrator, to exercise any options, subscription rights and other privileges with respect to the Trust Fund, subject to the provisions of **Article III** herein;

(s)     To register ownership of any securities or other property held by it in its own name, with or without the addition of words indicating that such securities are held in a fiduciary capacity, and may hold any securities in bearer form, but the books and records of the Trustee shall at all times reflect that all such investments are part of the Trust;

(t)     At the direction of the Administrator, to perform any and all other acts which are necessary or appropriate for the proper management, investment and distribution of the Trust Fund;

(u)     At the direction of the Administrator, to borrow money, to assume indebtedness, extend mortgages and encumber by mortgage or pledge; provided, however, if any loan transaction is with a "disqualified person" (as that term is defined in Section 4975 of the Code) or a "disqualified person" guarantees a loan to the Plan or Trust, the following terms and conditions apply to such loan:

    (i)     The Trust will use the proceeds of the loan within a reasonable time after receipt only for any of the following purposes: (A) to acquire Company Stock, (B) to repay such loan, or (C) to repay a prior Exempt Loan. No financed Company Stock may be subject to a put, call or other option, or buy-sell or similar arrangement while held by and when distributed from the Trust, whether or not the Plan is then an employee stock ownership plan.

    (ii)     The interest rate of the loan may not be more than a reasonable rate of interest.

    (iii)     Any collateral the Trust pledges to the creditor must consist only of the assets purchased by the borrowed funds and those assets the Trust used as collateral on any prior Exempt Loan repaid with the proceeds of the current Exempt Loan.

    (iv)     The creditor may have no recourse against the Trust under the loan except with respect to such collateral given for the loan, contributions (other than contributions of Company Stock) that the Company makes to the Trust to meet its obligations under the loan, and earnings attributable to such collateral and the investment of such contributions. The Administrator must account separately for such contributions and earnings on the books of account of the Plan until the Trust repays the loan.

    (v)     In the event of default upon the loan, the value of Trust Assets transferred in satisfaction of the loan must not exceed the amount of default, and if the lender is a "disqualified person", the loan must provide for transfer of Trust Assets upon default only upon and to the extent of the failure of the Trust to meet the payment schedule of the loan.

    (vi)     In accordance with directions from the Administrator, the Trustee must add and maintain all assets acquired with the proceeds of an Exempt Loan in a suspense account. The Administrator's directions to the Trustee to withdraw assets from the suspense account will apply the provisions of Treasury Regulation Section 54.4975-7(b)(8) and (15) as if all securities in the suspense account were encumbered. Upon the payment of any portion of the loan, the Trustee will effect the release of assets in the suspense account from encumbrances in accordance with the terms of the Plan, as directed by the Administrator.

(v)     Notwithstanding the foregoing, if the Plan ceases to be an employee stock ownership plan after the Trust repays the Exempt Loan, the Leveraged Company Stock shall continue to be subject to the provisions of Treasury Regulation Section 54.4975-7(b)(4), (10), (11) and (12) relating to put, call or other options and to buy-sell or similar arrangements, except to the extent these Regulations are inconsistent with Code Section 409(h).

**2.05.   Responsibility of Trustee.**  The powers, duties and responsibilities of the Trustee shall be limited to those set forth in this Trust Agreement, or as later agreed upon by the Trustee, the Company and the Administrator in writing, and nothing contained in the Plan shall by implication be deemed to impose any additional powers, duties or responsibilities on the Trustee. The Administrator shall provide all documents and instruments governing the Plan to the Trustee and amendments made to such documents on a timely basis.   To the extent reference to documents and instruments governing the Plan is required in order for the Trustee to perform any powers, duties and responsibilities under this Trust Agreement, performance of such powers, duties and responsibilities shall be limited to the extent the Administrator timely provided such documents to the Trustee.   The documents and instruments governing the Plan shall not be amended to affect the Trustee's responsibilities rights, duties, liabilities, and indemnities under this Trust Agreement without its prior written consent.

**2.06.   Compensation and Expenses**.   The Trustee shall be entitled to reasonable compensation for its services, as agreed to between the Company and the Trustee from time to time in writing, and to reimbursement of all reasonable expenses incurred by the Trustee in the administration of the Trust.   The Trustee is authorized to pay from the Trust Fund all expenses reasonably incurred by the Trustee, to the extent such fees and expenses are for the ordinary and necessary administration and operation of the Trust, including its compensation, compensation to any agents employed by the Trustee and any reasonable accounting and reasonable legal expenses.   If the Trustee is to pay such expenses from the Trust Fund but there are not sufficient amounts in the Trust Fund to pay such expenses, the Trustee has the right, to the extent the Company does not pay such expenses, (a) to offset the amounts due to it against the Trust Fund and the Trustee shall be authorized to sell Trust assets of the Trust Fund; or (b) to put Company Stock to the Company pursuant to **Section 3.05** hereof, to the extent necessary to obtain sufficient cash to pay such expenses.   Any fee or expense paid directly or indirectly by the Company shall not be considered an Employer Contribution to the Trust, provided the fee or expense relates to the ordinary and necessary administration of the Trust.

**2.07.   Continuation of Powers Upon Trust Termination**.   Notwithstanding anything to the contrary in this Agreement, upon termination of the Trust, the powers, rights and duties of the Trustee hereunder shall continue until all Trust Assets have been liquidated and distributed out of the Trust.

**2.08.   ERISA Fidelity Bond**.   The Trustee shall be required to provide a bond pursuant to the Plan for the faithful performance of its duties under the Trust and Plan, unless exempted pursuant to ERISA Section 412(a).

v

**2.09.** **Administrator Directions.** All decisions, determinations, directions, interpretations, and applications of the Plan and Trust by the Administrator or an appeals committee (if one is appointed) shall be final and binding upon all persons, including (but not limited to) the Trustee, the Company, and all Participants and Beneficiaries unless such determination is in violation of ERISA or any federal or state laws.

## ARTICLE III
## PROVISIONS RELATED TO INVESTMENT OF TRUST FUND

**3.01.** **Investment of Trust Fund.** Any cash received by the Trust as Employer Contributions or as Income of the Trust Fund attributable to the Unallocated Company Stock which is not applied to fund the Current Obligations of the Trust, if any, shall be applied or invested at the direction of the Administrator. All cash received by the Trust as income attributable to Participant Company Stock Accounts and Participant Other Investments Accounts shall be invested as soon as practicable after receipt by the Trust in a diversified manner in investments as directed by the Administrator. In making payments in respect of Current Obligations, non-Current Obligations, or General Obligations of the Trust, the Trustee shall use income and Employer Contributions as is specified in the Plan. The Trustee is authorized to purchase Company Stock with Trust Assets held in the Participant's General Investments Accounts, and the Unallocated General Investments Account. The Trustee is further authorized to purchase Company Stock from the Company or from any shareholder, and the Company Stock may be outstanding, newly issued or treasury stock. Whenever investment in Company Stock of amounts held in the Trust Fund is required or permitted hereunder, such investment may be accomplished by a sale within the Trust. Specifically, the Employer Company Stock Accounts of Participants, Former Participants, Alternate Payees, and Beneficiaries who have become entitled to cash distributions hereunder may be liquidated by an exchange for assets held in other Accounts of the Plan. All purchases or exchanges of Company Stock shall be for no more than "adequate consideration," as defined in Section 3(18) of ERISA. If there is no generally recognized market for Company Stock, "adequate consideration" shall mean the fair market value of such Company Stock, determined in good faith by the Trustee in consultation with an independent appraiser. Pending such investment or application of cash, the Trustee may invest the cash in accordance with **Article II** hereof or may retain cash uninvested without liability for interest if it is prudent to act in such a manner.

**3.02.** **Stock Splits and Other Capital Reorganization, Dividends.** Any Company Stock received by the Trustee as a stock split or as a result of a reorganization or other recapitalization of the Company (collectively referred to as "stock split") shall be allocated as of each Accounting Date under the Plan in proportion to the Company Stock to which they are attributable. Cash or stock in kind Dividends received by the Trustee shall be reinvested as directed by the Administrator.

**3.03.** **Voting of Shares and Tender or Exchange Offers.** Company Stock held in the Trust Fund shall be voted, tendered and exchanged by the Trustee in the manner set forth in the Plan, the relevant provisions of which, and any amendments thereto, shall be timely provided to the Trustee by the Administrator, and consistent with its duties described in **Section 2.03** herein.

**3.04.   Distribution of Trust Fund**.   The Trustee shall make all distributions in accordance with the direction of the Administrator.

**3.05.   Put Option**.   If (a) the distribution of a Participant's Company Stock Account is to be made in cash, (b) a distribution of Company Stock is to be made pursuant to the Plan, (c) the Trustee is required to diversify a Participant's Company Stock Account pursuant to the Plan, or (d) the Trustee expects to incur substantial Trust expenses which will not be paid directly by the Employer, and the Trustee determines that the Trust Fund has insufficient cash to make anticipated distributions or fund diversification elections or pay Trust expenses, the Trustee shall have a "put option" on Company Stock it holds to put such Company Stock to the Company pursuant to the Plan for the purpose of making such anticipated distributions, diversifications of Participant Company Stock Accounts, and paying such expenses and the Company agrees to honor such put and purchase the Company Stock as put to it by the Trustee.  The Trustee will price the put of the Company Stock for an amount that is not less than "adequate consideration" as that term is defined in ERISA Section 3(18), and on terms that are fair to the Plan from a financial point of view.

**3.06.   Participant Loans**.   The Trustee shall not be permitted to make loans to Participants or Beneficiaries.

**3.07.   Restricted Participant**.   A Restricted Participant is any Terminated Participant or any Participant who is a "disqualified person" (as that term is defined in the Plan) whose stock ownership, including "deemed-owned shares" (as that term is defined in the Plan) could result in a "nonallocation year" (as that term is defined in the Plan). Any part of a Restricted Participant's Account Balance which is retained in the Trust may be converted into cash at the direction of the Administrator.   Upon such direction, the Trustee shall convert a Restricted Participant's Company Stock Account (in whole or in part) into cash (a) during any Plan Year following the close of the Plan Year in which the Restricted Participant Separated from Service for any reason, provided at such time the Trust has an adequate amount of cash to convert (in whole or part) the Restricted Participant's Company Stock Account; or (b) during any Plan Year in which an allocation to an S Corporation Disqualified Person could result in a Nonallocation Year, prior to such allocation and solely to the extent required to prevent a Nonallocation Year from occurring. The value of the Restricted Participant's Company Stock Account is determined either as of the end of the Plan Year in which the Restricted Participant Separated from Service, the end of the Plan Year immediately preceding the potential Nonallocation Year, or as of the more recent valuation, if any.   Such amount of cash shall be invested by the Trustee as directed by the Administrator.   However, except in the case of reemployment, none of the Restricted Participant's Account will be credited with any further Employer Contributions, Forfeitures, Dividends or gain on the sale of Company Stock held in the Unallocated Company Stock Account.

All such conversions to cash shall be made on a nondiscriminatory basis.  The intent of this provision is that the Participant Accounts of active Participants should be invested in Company Stock to the greatest extent possible within the assets available to the Trust, and that the Participant Accounts of Restricted Participants should be diversified to the greatest extent possible within the assets available to the Trust into investments other than Company Stock,

v

consistent with the requirement, if applicable, that all distributions be made in the form of Company Stock. For purposes of the conversion described in this **Section 3.07**, the Trustee shall determine the value of the Restricted Participant's Company Stock Account as of the most recent Valuation Date. The Trustee shall invest such amounts converted into cash in a diversified manner as required herein.

## ARTICLE IV
## VALUATION OF TRUST FUND

Consistent with its duties described in **Section 2.05** herein, the Trustee shall cause a valuation of the Trust Fund in accordance with the Plan, the relevant provisions of which, and any amendments thereto, shall be timely provided to the Trustee by the Administrator..

## ARTICLE V
## NO REVERSION TO EMPLOYER

No part of the corpus or income of the Trust Fund shall revert to any Employer or be used for, or diverted to, purposes other than for the exclusive benefit of Participants and other persons entitled to benefits under the Plan, provided, however, that:

(a)     Each Employer Contribution under the Plan is conditioned on the initial qualification of the Plan as applied to that Employer under Sections 401(a) and 4975(e)(7) of the Code and if the Plan does not so qualify, the Trustee shall, upon written direction of the Administrator, return to that Employer the amount of such contribution and any increment thereon within one calendar year after the date that qualification of the Plan, as applied to that Employer, is denied, but only if the application for qualification is submitted within the time prescribed by law.

(b)     If a contribution or any portion thereof is made by an Employer by a mistake of fact, as determined by the Administrator, the Trustee shall, upon the written direction of the Administrator, return the amount of the contribution or such portion, reduced by the amount of any losses thereon, to the Employer within one year after the date of payment to the Trustee.

Notwithstanding the foregoing, the Trustee has no responsibility as to the sufficiency of the Trust Fund to provide any distribution to an Employer under this **Article V**.

## ARTICLE VI
## CHANGE OF TRUSTEE

**6.01.** **Resignation of the Trustee**. The Trustee may resign its position at any time by giving 30 days advance written notice to the Company, unless such notice period is waived by the Company or the Administrator. If the Company or Administrator fails to appoint a successor trustee within 30 days of its receipt of the Trustee's written notice of resignation, the Trustee will treat the Board as having been appointed as Trustee and as having accepted their appointment as Trustee.

**6.02.  Removal of the Trustee**.  The Company may remove the Trustee by hand delivering or by mailing by registered or certified mail, addressed to the Trustee at its last known address, at least 30 days advance written notice of removal, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship.

**6.03.  Duties of Resigning or Removed Trustee and of Successor Trustee**.  If the Trustee resigns or is removed, it shall promptly transfer and deliver the assets of the Trust Fund to the successor Trustee, and may reserve such amount as it deems necessary to provide for the payment of all fees and expenses, or taxes then or thereafter chargeable against the Trust Fund, to the extent not previously paid by the Employers.  The Employers shall be obligated to reimburse the Trust for any amount reserved by the Trustee.  Within 120 days, the resigned or removed Trustee shall furnish to the Company and the successor Trustee an account of its administration of the Trust from the date of its last account.  Each successor Trustee shall succeed to the title to the Trust Fund vested in the predecessor Trustee without the signing or filing of any further instrument, but any resigning or removed Trustee shall execute all documents and do all acts necessary to vest such title or record in any successor Trustee.  Each successor Trustee shall have all the powers, rights and duties conferred by this Trust as if originally named Trustee.  No successor Trustee shall be personally liable for any act or failure to act of a predecessor Trustee, except as required by ERISA.  With the approval of the Company, a successor Trustee may accept the account rendered and the property delivered to it by its predecessor Trustee as a full and complete discharge to the predecessor Trustee without incurring any liability or responsibility for so doing.

**6.04.  Filling Trustee Vacancy**.  The Company shall fill a vacancy in the office of Trustee as soon as practicable by a writing filed with the person or entity appointed to fill the vacancy.  If the Company does not designate a successor Trustee, or if a successor Trustee designated by the Company has not accepted its appointment, within thirty (30) days after the Trustee gives notice of its resignation or receives notice of removal, the Trustee may, at the expense of the Trust, apply to a court of competent jurisdiction to appoint a successor Trustee. Until a successor Trustee is appointed, the Trustee shall be entitled to be compensated for its services according to its published fee schedule then in effect for acting as Trustee.

## ARTICLE VII
## ADDITIONAL EMPLOYERS

In addition to the requirements of the Plan, any Related Employer may become a party to this Trust Agreement, by:

    (a)    filing with the Company and the Trustee a copy of a resolution of its Board to that effect; and

    (b)    filing with the Trustee a copy of a resolution of the Board consenting to such action.

## ARTICLE VIII
## AMENDMENT AND TERMINATION

**8.01.** **Amendment**. While the Company expects and intends to continue the Trust, the Company reserves the right to amend the Trust at any time pursuant to an action of the Board. However, no amendment shall change the rights, duties, liabilities and indemnities of the Trustee under this Trust Agreement without its prior written agreement, nor reduce a Participant's benefits to less than the amount such Participant would be entitled to receive if such Participant had resigned from the employ of the Employer on the date of the amendment unless otherwise required or permitted by the Code or ERISA. Amendments to this Trust Agreement shall be in writing and shall be effective upon execution of such amendments by both the Company and the Trustee.

**8.02.** **Termination**. The Trust may be terminated as to all Employees on any date specified by the Company. The Trust will terminate as to any Employer on the first to occur of the following:

(a)    the date it is terminated by that Employer;

(b)    the date such Employer's contributions, or contributions on its behalf to the Trust, are completely discontinued;

(c)    the date such Employer is judicially declared bankrupt under Chapter 7 of the U.S. Bankruptcy Code; or

(d)    the dissolution, merger, consolidation, or reorganization of that Employer, or the sale by that Employer of all or substantially all of its assets, except that, with the consent of the Company, such arrangements may be made whereby the Trust will be continued by any successor to that Employer or any purchaser of all or substantially all of that Employer's assets, in which case the successor or purchaser will be substituted for that Employer under the Trust.

The Trustee's powers upon termination as described above will continue until liquidation of the Trust Fund, or the portion thereof attributable to an Employer, as the case may be. Upon termination of this Trust, the Trustee shall first reserve such reasonable amounts as it may deem necessary to provide for the payment of any expenses or fees then or thereafter chargeable to the Trust Fund. Subject to such reserve, the balance of the Trust Fund shall be liquidated and distributed by the Trustee to or for the benefit of the Participants or their Beneficiaries, as directed by the Administrator after compliance with the Plan and applicable requirements of ERISA, as amended from time to time, or other applicable law, accompanied by a certification from the Administrator that the disposition is in accordance with the terms of the Plan and the Trustee need not question the propriety of such certification. The Company shall have full responsibility to see that such distribution is proper and within the terms of the Plan and this Trust. Any Company Stock remaining subject to pledge will be used to repay the Exempt Loan but only to the extent permitted under ERISA and the Code.

v

## ARTICLE IX
## INDEMNIFICATION, APPOINTMENT OF INVESTMENT MANAGER, AND APPOINTMENT OF ANCILLARY TRUSTEE

### 9.01.   Indemnification

(a)   Indemnification.   For purposes of this **Section 9.01**, the term "Indemnified Parties" shall mean the Trustee and its affiliates and their officers, directors, employees and agents. Subject to the applicable provisions of ERISA, to the maximum extent permitted by applicable law, the Company and any subsidiaries (collectively, the "Indemnitors") shall jointly and severally release, indemnify and hold harmless the Indemnified Parties for any loss, cost, expense or other damage, including (but not limited to) attorney's fees suffered by any of the Indemnified Parties resulting from, or incurred with respect to, any threatened or actual legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnified Parties pursuant to this Trust Agreement (the "Right of Indemnification"). The Right of Indemnification provided for in this **Section 9.01** shall extend to: (i) any action taken or not taken in good faith by any of the Indemnified Parties; and (ii) all reasonable costs and expenses incurred by the Indemnified Parties in enforcing the Right of Indemnification, including, but not limited to, reasonable attorneys' fees and court costs. However, the Right of Indemnification shall not apply to the extent (1) that it is prohibited by Section 410 of ERISA or (2) that any loss, cost, expense or damage with respect to which any of the Indemnified Parties shall seek indemnification is held by a court of competent jurisdiction, in a judgment from which an appeal has been taken, or could have been taken but was not,  to have resulted either from a breach of fiduciary duty, gross negligence or the willful misconduct of one or more of the Indemnified Parties.

(b)   Defense of Actions.

        (i)   Notice and Assumption of Defense.   If one or more of the Indemnified Parties receives notice of any legal proceeding with respect to which indemnification may be sought against the Indemnitors pursuant to this **Section 9.01** (a "Proceeding"), an Indemnified Party shall notify the Company of the Proceeding in writing as soon as practicable following the commencement of the Proceeding. However, the failure to so notify the Company shall not relieve the Indemnitors from their obligations related to the Indemnified Parties' Right of Indemnification, except to the extent that the failure to notify the Company shall have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnified Parties or to otherwise participate in the Proceeding, at the Company's discretion. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.

v

(ii) <u>Reimbursement of Expenses</u>. The Indemnitors shall reimburse the Indemnified Parties for all reasonable costs that they incur in connection with any Proceeding, including (but not limited to) costs of investigation, of testifying in any hearing, of responding to discovery proceedings and of consulting with the Indemnitors or the attorneys for the Indemnitors. The Indemnified Parties shall have the right to employ their own counsel in any Proceeding, and the reasonable fees and expenses of the Indemnified Parties' counsel shall be paid by the Indemnitors as they are incurred, if any one or more of the following conditions are satisfied:

(A) the employment by the Indemnified Parties of their own counsel shall be authorized by the Company;

(B) the Indemnified Parties are advised by their counsel that there may be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnified Parties);

(C) the Company fails to assume the defense of the proceeding and to employ counsel reasonably satisfactory to the Indemnified Parties within 14 days after being notified of the commencement of the Proceeding; or

(D) the Indemnified Parties shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

(c) <u>Governmental Investigations</u>. The provisions of this "Indemnification" section shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnified Parties, or shall require any of the Indemnified Parties to testify in any hearing or in connection with any investigation, regarding the performance of services by the Indemnified Parties pursuant to this Trust Agreement or the establishment hereof. Investigations covered by this **Section 9.01** shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnified Parties shall have the right to employ separate counsel to represent them, and the Indemnitors shall pay the reasonable fees and expenses of the Indemnified Parties' counsel as they are incurred. The Trustee agrees that it shall reasonably cooperate with the Company in connection with any investigation.

(d) <u>Limitation</u>. If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Trust Agreement shall be unavailable to any one or more of the Indemnified Parties from the Indemnitors for any

v

reason other than their breach of fiduciary duty, gross negligence or willful misconduct, the Indemnified Parties shall nevertheless have a right of contribution against the Indemnitors, which shall accordingly reimburse the affected Indemnified Parties consistent with this **Section 9.01**, but taking into account the basis for the denial of full indemnification by the court.

**9.02. Limitation on Liability - If Investment Manager, Ancillary Trustee or Independent Fiduciary Appointed**. The Trustee shall not be liable for the acts or omissions of any Investment Manager or an ancillary trustee appointed by the Company, nor shall the Trustee be under any obligation to invest or reinvest or otherwise manage any asset of the Trust Fund which is subject to the management of a properly appointed Investment Manager or ancillary trustee. The Trustee, the Company, the Administrator and any properly appointed Investment Manager or ancillary trustee may execute a letter agreement pursuant to **Section 9.03** herein as a part of this Trust delineating duties, responsibilities and liabilities of the Investment Manager or ancillary trustee with respect to any part of the Trust Fund under the control of the Investment Manager or ancillary trustee.

The limitation on liability described in this **Section 9.02** also applies to the acts or omissions of an ancillary trustee or independent fiduciary properly appointed under **Section 9.03** hereof. However, if a Trustee, pursuant to the delegation described in **Section 9.03** hereof, appoints an ancillary trustee, the Trustee is responsible for the periodic review of the ancillary trustee's actions and must exercise its delegated authority in accordance with the terms of the Trust and in a manner consistent with ERISA. The Company, the Administrator, the Trustee and an ancillary trustee may execute a letter agreement as a part of this Trust delineating any indemnification agreement between the parties.

**9.03. Appointment of an Investment Manager or an Ancillary Trustee**. The Company, in writing, may appoint (subject to the written consent of the Trustee) any person or trust company in any state to act as an Investment Manager or as an ancillary trustee with respect to a designated portion of the Trust Fund. An Investment Manager or ancillary trustee must acknowledge in writing its acceptance of the terms and conditions of its appointment as an Investment Manager or as an ancillary trustee and its fiduciary status under ERISA. The Investment Manager and ancillary trustee have the rights, powers, duties, and discretion as the Company may delegate, subject to any limitations or directions specified in the instrument evidencing appointment of the Investment Manager or ancillary trustee and to the terms of the Trust or of ERISA. The investment powers delegated to the Investment Manager or to the ancillary trustee may include any investment powers available under **Section 2.04** or **Section 3.03** hereof, including but not limited to, the right to invest or reinvest any portion of the assets of the Trust Fund in Company Stock and to invest or reinvest any portion of the assets of the Trust Fund in a common trust fund, as described in Code Section 584, or in any collective investment fund, the provisions of which govern the investment of such assets and which the Trust incorporates by this reference, but only if the Investment Manager or ancillary trustee is a bank or similar financial institution supervised by the United States or by a State and the ancillary trustee (or its affiliate, as defined in Code Section 1504) maintains the common trust fund or collective investment fund exclusively for the collective investment of money

v

contributed by the ancillary trustee (or its affiliate) in a trustee capacity and which conforms to the rules of the Comptroller of the Currency.

The Investment Manager or ancillary trustee may resign its position at any time by providing at least 30 days advance written notice to the Company and the Trustee, unless the Company waives this notice requirement. The Company, in writing, may remove an Investment Manager or ancillary trustee at any time. In the event of resignation or removal, the Company may appoint another Investment Manager or ancillary trustee, return the assets to the control and management of the Trustee, or receive such assets in the capacity of the Investment Manager or ancillary trustee. The Company or the Administrator, with the prior written consent of the Trustee, may delegate its responsibilities under this **Section 9.03** herein to the Trustee.

If the U.S. Department of Labor (the "Department") requires engagement of an independent fiduciary to have control or management of all or a portion of the Trust Fund, the Company or the Administrator will appoint such independent fiduciary, as directed by the Department. The independent fiduciary will have the duties, responsibilities, and powers prescribed by the Department and will exercise those duties, responsibilities, and powers in accordance with the terms, restrictions, and conditions established by the Department and, to the extent not inconsistent with ERISA, the terms of the Plan. The independent fiduciary must accept its appointment in writing and must acknowledge its status as a fiduciary of the Plan.

**9.04.** **Parties to Litigation**. Except as otherwise provided by ERISA, no Participant or Beneficiary is a necessary party or is required to receive notice of process in any court proceeding involving the Plan, the Trust, the Trust Fund or any fiduciary of the Plan. Any final judgment entered in any proceeding will be conclusive as to the parties over which the court entering the judgment has jurisdiction.

## ARTICLE X
## MISCELLANEOUS

**10.01. Disagreement as to Acts**. If there is a disagreement between the Trustee and anyone as to any act or transaction reported in any accounting, the Trustee shall have the right to have its own account settled by a court of competent jurisdiction.

**10.02. Persons Dealing With Trustee**. No person dealing with the Trustee shall be required to see to the application of any money paid or property delivered to the Trustee, or to determine whether or not the Trustee is acting pursuant to any authority granted to it under the Trust or the Plan.

**10.03. Third Party and Multiple Trustees**. No person dealing with the Trustee is obligated to see to the proper application of any money paid or property delivered to the Trustee, or to inquire whether the Trustee has acted pursuant to any of the terms of the Trust and Plan. Each person dealing with the Trustee may act upon any notice, request or representation in writing by the Trustee, or by the Trustee's duly authorized agent, and is not liable to any person in so acting. The certificate of the Trustee that it is acting in accordance with the Trust and Plan will be conclusive in favor of any person relying on the certificate. If more than two persons act

Constellis Employee Stock Ownership Trust                                                                    17

v

as Trustee, a decision of the majority of such persons controls with respect to any decision regarding the administration or investment of the Trust Fund, or any portion of the Trust Fund with respect to which such persons act as Trustee. However, the signature of only one Trustee is necessary to effect any transaction on behalf of the Trust.

**10.04. <u>Benefits May Not Be Assigned Or Alienated</u>**. The interests of Participants, Beneficiaries and other persons entitled to benefits under the Trust and Plan are not subject to the claims of their creditors and may not be voluntarily or involuntarily assigned, alienated or encumbered, except as allowed pursuant to Code Section 401(a)(13) to the extent that the Administrator determines and directs the Trustee in writing that any such interests are subject to a qualified domestic relations order, as defined in Section 414(p) of the Code.

**10.05. <u>Evidence</u>**. Evidence required of anyone under the Trust may be by certificate, affidavit, document or other instrument which the person acting in reliance thereon considers pertinent and reliable, and signed, made or presented by the proper party.

**10.06. <u>Waiver of Notice</u>**. Any notice required under the Trust or Plan may be waived in writing by the person entitled thereto.

**10.07. <u>Counterparts</u>**. The Trust may be executed in any number of counterparts, each of which shall be deemed an original and no other counterparts need be produced.

**10.08. <u>Governing Laws and Severability</u>**. The validity of this Trust, and the validity and effect of all property transferred to the Trustee shall be determined by reference to the laws of the State of Delaware to the extent that such laws are not preempted by the laws of the United States of America. The interpretation and construction of this Trust and all other matters concerning the rights and duties of the Company, the Administrator and the Trustee shall be determined by reference to the laws of the State in which the Trust is being administered from time to time to the extent such laws are not preempted by the laws of the United States of America. If any provision of the Trust or Plan is held illegal or invalid, the illegality or invalidity shall not affect the remaining provisions of the Trust and Plan, but shall be severable, and the Trust and Plan shall be construed and enforced as if the illegal or invalid provision had never been inserted herein.

**10.09. <u>Successors</u>**. The Trust shall be binding on the Company, each Employer and any successor thereto by virtue of any merger, sale, dissolution, consolidation or Participating Employer reorganization, on the Trustee and its successor and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives. Any business entity into which the Trustee may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, provided that such successor has the financial and other wherewithal to perform hereunder.

v

**10.10.  Action**.  Any action required or permitted to be taken by the Company under the Trust shall be by resolution of its Board or by a person or persons authorized by resolution of the Board.  The Trustee shall not recognize or take notice of any appointment of any representative of the Company unless and until the Company shall have notified the Trustee in writing of such appointment and the extent of such representative's authority.  The Trustee may assume that such appointment and authority continue in effect until it receives written notice to the contrary from the Company or the Administrator.  Any action taken or omitted to be taken by the Trustee by authority of any representative of the Company or the Administrator within the scope of his or her authority shall be as effective for all purposes hereof as if such action or nonaction had been authorized by the Company or the Administrator.

**10.11.  Conformance With Plan**.  Unless otherwise indicated in this Trust Agreement, all capitalized terms herein shall have the meaning as stated in the Plan.  To the extent provisions of the Plan and the Trust conflict, the provisions of the Plan shall govern; provided, however, that the Trustee's duties and obligations shall be determined solely under the Trust.

**10.12.  Headings**.    The headings and sections of this Trust Agreement are for convenience or reference only and shall have no substantive effect on the provisions of this Trust Agreement.

**[SIGNATURE PAGE FOLLOWS]**

v

IN WITNESS WHEREOF, the Company, by its duly authorized officer, and the Trustee, have duly executed this Trust Agreement to be signed on the _20ᵗʰ_ day of December, 2013.

"COMPANY"

CONSTELLIS GROUP, INC.

By: _Ignacio Balderas_
Name: Ignacio Balderas
Title:   Chief Executive Officer


"TRUSTEE"

Wilmington Trust Retirement and Institutional Services Company, not in its corporate or individual capacity, but solely in its capacity as Trustee of the Constellis Employee Stock Ownership Trust


By: _____
Name: Greg Golden
Title:   Assistant Vice President


*(Signature Page to Constellis Employee Stock Ownership Trust)*

IN WITNESS WHEREOF, the Company, by its duly authorized officer, and the Trustee, have duly executed this Trust Agreement to be signed on the _20th_ day of December, 2013.

"COMPANY"

CONSTELLIS GROUP, INC.

By: _____
Name: Ignacio Balderas
Title:   Chief Executive Officer

"TRUSTEE"

Wilmington Trust Retirement and Institutional Services Company, not in its corporate or individual capacity, but solely in its capacity as Trustee of the Constellis Employee Stock Ownership Trust

By: _____
Name: Greg Golden
Title:   Assistant Vice President

*(Signature Page to Constellis Employee Stock Ownership Trust)*

## CONSTELLIS EMPLOYEE STOCK OWNERSHIP TRUST

### FIRST AMENDMENT

WHEREAS, Constellis Group, Inc., a Delaware corporation (the "Company") and Wilmington Trust Retirement and Institutional Services Company, entered into the Constellis Employee Stock Ownership Trust (the "Trust"), established pursuant to the Constellis Employee Stock Ownership Plan (the "Plan") effective as of January 1, 2013; and

WHEREAS, Wilmington Trust Retirement and Institutional Services Company, in its capacity as trustee (the "Trustee") of the Trust, entered into a contract to effectuate the sale of all stock of the Company in the Trust to Constellis Holdings, Inc.; and

WHEREAS, the Plan as a result of such sale has been amended to be a profit sharing plan; and

WHEREAS, Section 8.01 of the Trust provides that the Trust can be amended at any time upon execution of such amendment by both the Company and the Trustee; and

WHEREAS, the Company and Trustee now desires to continue the Trust without interruption by amending and converting it to a trust for a profit sharing plan.

NOW, THEREFORE, the Plan is hereby amended in the following manner effective on the date this First Amendment is executed, as follows:

1.      Section 1.01 of the Trust ("Name") is amended by adding the sentence to the end of the Section: "The Trust hereafter shall be a part of the Constellis Profit Sharing Plan."

2.      Section 2.02 of the Trust is hereby amended by adding the sentence to the end of the Section: "Effective as of [July __], 2014, the Trustee shall no longer have the power to borrow money for the purpose of purchasing Employer Securities or the power to take any other action which would be required as if the Trust was part of an employee stock ownership plan."

3.      Subsection (a) of Section 2.04 of the Trust is hereby amended by adding the sentence to the end of the Subsection: "Effective as of [July __], 2014, the Trustee shall not invest the Trust Fund primarily in Company Stock."

4.      Subsection (b) of Section 2.04 of the Trust is hereby amended by deleting the last sentence of the Subsection in its entirety and replace it with the following: "Any investment made or retained by the Administrator in good faith will be proper but must be of a kind constituting a diversification considered by law suitable for trust investments; provided, that the Trustee shall follow the directions of the Administrator with respect to such investment or reinvestment of the Trust Fund and the Trustee shall have no duty or obligation to review the

assets from time to time so acquired, nor to make any recommendations with respect to the investment, reinvestment or retention thereof, and the Trustee shall have no liability for any losses arising from investments made in accordance with such directions, or lack thereof;"

     5.     Subsection (g) of Section 2.04 of the Trust is hereby amended by adding the sentence to the end of the Subsection: "Effective as of [July __], 2014, all distributions made pursuant to the terms of the Plan shall be in the form of cash."

     6.     Subsection (h) of Section 2.04 of the Trust is hereby amended by deleting the Subsection in its entirety and replacing it with the following: "At the direction of the Administrator, to vote any stocks, bonds or other securities held in the Trust, or otherwise consent to or request any action on the part of the issuer in person, by proxy or power of attorney;"

     7.     Subsection (u) of Section 2.04 of the Trust is hereby amended by adding the sentence to the end of the Subsection: "Effective as of [July __], 2014, the Trustee shall not borrow money or assume indebtedness in any loan transaction with a "disqualified person"."

     8.     Section 8.02 of the Trust is hereby amended by deleting the last sentence of the Section in its entirety.

     9.     In all other respects, except as hereinbefore modified, the said Trust is hereby ratified and confirmed.

*[Signatures appear on the following page(s)]*

IN WITNESS WHEREOF, Constellis Group, Inc. has caused this instrument to be duly executed and its seal to be hereunto affixed as of this _25th_ day of _July_ , 2014.

"COMPANY"

CONSTELLIS GROUP, INC.

By: _Ignacio Balderas_

"TRUSTEE"

Wilmington Trust Retirement and Institutional Services Company, not in its corporate or individual capacity, but solely in its capacity as Trustee of the Constellis Employee Stock Ownership Trust

By: _____

Name: _____

Title: _____

[Signature page to First Amendment to Constellis Employee Stock Ownership Trust]

3

IN WITNESS WHEREOF, Constellis Group, Inc. has caused this instrument to be duly executed and its seal to be hereunto affixed as of this _____ day of July, 2014.

**"COMPANY"**

CONSTELLIS GROUP, INC.

By:_____

**"TRUSTEE"**

Wilmington Trust Retirement and Institutional Services Company, not in its corporate or individual capacity, but solely in its capacity as Trustee of the Constellis Employee Stock Ownership Trust

By: _____
Name: _____
Title: _____

[Signature page to First Amendment to Constellis Employee Stock Ownership Trust]

IN WITNESS WHEREOF, Constellis Group, Inc. has caused this instrument to be duly executed and its seal to be hereunto affixed as of this 25th day of July, 2014.

**"COMPANY"**

CONSTELLIS GROUP, INC.

By:_____

**"TRUSTEE"**

Wilmington Trust Retirement and Institutional
Services Company, not in its corporate or
individual capacity, but solely in its capacity as
Trustee of the Constellis Employee Stock
Ownership Trust

By: _____
Name: _____
Title: _____

[Signature page to First Amendment to Constellis Employee Stock Ownership Trust]