**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **TIM P. BRUNDLE, on behalf of the Constellis Employee Stock Ownership Plan,** | |
| **Plaintiff,** | **Civil Action No. 1:15-cv-1494 (LMB/IDD)** |
| **v.** | |
| **WILMINGTON TRUST, N.A., as successor to WILMINGTON TRUST RETIREMENT AND INSTITUTIONAL SERVICES COMPANY,** | |
| **Defendant.** | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND COSTS, AND PLAINTIFF'S COUNSEL'S MOTION FOR
<u>ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES</u>**

Plaintiff's Counsel invested a lot of time and money and took lots of risk to try this case. We achieved a $29.7 million judgment for Mr. Brundle and plan beneficiaries. We more than doubled the value of their retirement accounts. The judgment was almost 15 times the only offer made by Defendant.[1] We tried this case on a contingent basis, risking we would receive nothing. "[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010). We should be compensated for our work, our investment, our risk, and our results. People like Mr. Brundle will lose access to the courts if lawyers like us are not paid a reasonable fee for this case. "[P]laintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *Id.* at 246.

Plaintiff's Counsel are not seeking a percentage of the fee-shift award to Mr. Brundle and the Plan or asking for a fee-shifting fee on top of our contractual, common fund fee. The fee-shift award offsets, in part, the amount paid from the common fund under our contingent fee agreement.[2] "If the award granted under a fee-shifting statute is less than that specified by the contingent fee contract between claimant and counsel, then claimant's counsel may collect from the claimant the difference between the statutory award and the contract."[3]

Defendant makes two arguments against paying Plaintiff's Counsel common fund fees. First, Defendant argues ERISA's fee-shifting provision precludes it. The authorities disagree. A

---

[1] Second Declaration of Gregory Y. Porter ("2d Porter Dec.") ¶ 11, submitted herewith.
[2] *See Conners v. Connecticut Gen. Life Ins. Co.*, No. 98-cv-8522(JSM), 2003 WL 1888726, at *2 (S.D.N.Y. Apr. 15, 2003) (in ERISA case, statutory fee used to offset contingent fee).
[3] *Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033, at *9 (W.D. Mo. Nov. 2, 2012) (ERISA fiduciary breach case tried to judgment, shifting fees, and awarding fees from common fund), *reversed in part on other grounds, Tussey v. ABB, Inc.*, 746 F.3d 327, 340 (8th Cir. 2014).

fee-shifting statute does not displace a common fund fee unless Congress clearly intended. There is no such intent in ERISA. Thus, the Court has discretion to award a common fund fee. We also have a contingent contract for the requested fee. The Fourth Circuit and other courts say that a fee-shifting statute does not supplant the winning plaintiff's contingent contract with his lawyer.

Second, Defendant argues that ERISA's anti-alienation rule bars an award of attorney's fees from the common fund. Not so. The cases cited by Defendant are benefit calculation cases where there was no loss to the plan and no payment of money into the plan. The courts required the plan to increase the amount of benefits paid to plan participants in defined benefit or cash balance plans. There was no common fund as such, but, rather, a common benefit. Fees based on the common benefit would come from future benefit payments. That is not this case. In defined contribution plan damages cases like this one, courts reject Defendant's argument. The argument also proves too much. Dozens of courts have awarded millions of dollars in fees from common funds created by ERISA lawsuits over the years. It cannot be that every common fund award violated ERISA's anti-alienation rule. Defendant's authorities do not dictate this absurd result.

Finally, Defendant makes numerous picayune complaints about Plaintiff's Counsel's time and hourly rates. We hope that Defendant's counsel will tell us at the hearing how much time it put in the case, how much it was paid, its hourly rates, and expenses incurred (all in a losing effort). We obtained a $29.7 million judgment. This is an outstanding result for participants in the Constellis Employee Stock Ownership Plan. They will see their Plan retirement savings more than double. *See Abrams*, 605 F.3d at 247 (degree of success most critical factor in determining a reasonable fee).

## I.    ARGUMENT

### A.    Counsel's Requested Fee of One-Third the Value of the Common Fund is Reasonable and Appropriate.

In the opening brief, Plaintiff's Counsel showed that one third of a common fund is a reasonable and customary fee in cases like this. (Dkt. 313 at 22-26.) Defendant does not argue that there is no common fund or that one third of the common fund is not customary in complex ERISA cases. Thus, we submit one third of the judgment is reasonable. We also submit that the expenses requested were reasonable and necessary. The overwhelming majority of expenses were expert fees, which were critical and necessary to the prosecution of this action, followed by travel for depositions, and other deposition related expenses such as transcripts and the like.

Defendant argues that Plaintiff's Counsel should not receive *any* money from the common fund whatsoever because: (1) ERISA's fee-shifting provision precludes a common fund award; (2) Plaintiff's Counsel has not met their burden of establishing entitlement to a common fund award[4]; and (3) the fund is pension benefits that are nonalienable. These arguments are wrong, and, if accepted, would deter experienced and qualified attorneys from representing plan participants like Mr. Brundle. Counsel for plaintiffs in ERISA actions have recovered billions of dollars for plan participants, helping tens of thousands of people with their retirement savings.[5] This work will end if Defendant's rule becomes law. The Fourth Circuit says contingent fee arrangements are the "key" to the courthouse door for litigants like Mr. Brundle. *Abrams*, 605

---

[4] We see little difference between Defendant's arguments at Parts VI.B and VI.C, so we address them together in Part I.B.1, below.

[5] *See* http://www.benefitspro.com/2017/01/19/top-5-erisa-settlements-in-2016 (top ten ERISA settlements in 2014, 2015, and 2016 totaled, respectively $1.31 billion, $926.5 million, and $807.4 million—over $3 billion). *See also* Appendix B (listing recent ERISA settlements, value of common fund, and fees paid).

F.3d at 246. Defendant wants the Court to throw away the key, bar the courthouse, and leave trustees free to abuse and misuse retirement plan assets.

1.   ERISA Does Not Bar a Common Fund Fee Award.

The Fourth Circuit has not considered whether ERISA's fee-shifting statute precludes a common fund fee. But the Circuit did hold that a statutory fee-shifting provision dictates what the defendant pays the plaintiff, not what a successful plaintiff is contractually obligated to pay her attorney under a contingent fee contract.[6] Courts in ERISA cases take the same view.[7] That is because the fee-shifting remedy belongs to the client.[8] Here, Plaintiff agreed to a contingent fee arrangement of up to one third of any recovery. (1st Porter Dec. ¶ 16; Dkt. 313 at 20.)

The Fourth Circuit unequivocally supports contingent fees. Contingent fees, it says, are critical to plaintiffs without the resources to pay by the hour. Contingent fees are the key to the courthouse. We think it worth quoting the Fourth Circuit at length on this point:

> [C]ontingency fee agreements transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. The risks a lawyer assumes are not dissimilar to those undertaken, for example, by a realtor on commission, who accepts the possibility of no sale as well as the potential reward of a quick transaction. In addition, it may be necessary to provide a greater return than an hourly fee offers to induce lawyers to take on representation for which they might never be paid, and it makes sense to arrange these fees as a percentage of any recovery. "[M]any attorneys are unwilling to accept the risk of nonpayment without a guaranteed contingency percentage of the recovery." In other words, plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for

---

[6] *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 n.2 (4th Cir. 1992) (fee-shifting statute does not preclude plaintiff from paying counsel a contingent fee); *see also Venegas v. Mitchell*, 495 U.S. 82, 90 (1990); *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Gobert v. Williams*, 323 F.3d 1099, 1100 (5th Cir. 2003); *Certain v. Potter*, 330 F. Supp. 2d 576, 589 (M.D.N.C. 2004).
[7] *See Drenan v. Gen. Motors Corp.*, 977 F.2d 246, 253-54 (6th Cir. 1992); *Joos v. Intermountain Health Care, Inc.*, 25 F.3d 915, 918 (10th Cir. 1994).
[8] *See* ERISA § 502(g), 29 U.S.C. § 1132(g) (court "may allow a reasonable attorney's fee to either party"); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 76 F.3d 114, 116 (7th Cir. 1996); *Drenan*, 977 F.2d at 254. The same is true for other fee-shifting statues. *See Venegas*, 495 U.S. at 87-88; *Staton*, 327 F.3d at 972; *Certain*, 330 F.Supp.2d at 589.

hourly work, while their downside is no payment whatsoever.

Conversely, an attorney compensated on a contingency basis has a strong economic motivation to achieve results for his client, precisely because of the risk accepted. As the Seventh Circuit has explained, "[t]he contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." A contingency fee "automatically handles compensation for the uncertainty of litigation" because it "rewards exceptional success, and penalizes failure." Because the district court's ruling failed to recognize that contingency fees provide attorneys due consideration for the risk they undertake, it reduced counsel's fee to a level that few attorneys would have accepted at the outset of litigation, when success was by no means assured and the size of any settlement or judgment was unpredictable.

*Abrams*, *supra*, at 246 (citations omitted). Plaintiff's Counsel took great risk, trying this case to a

judgment, investing thousands of hours, and spending over $640,000 on expenses. Plaintiff's

Counsel did this on a contingent basis and should be rewarded for "exceptional success."

Compensating Plaintiff's Counsel by the hour would reduce the fee to "a level that few attorneys

would have accepted at the outset of the litigation, when success was by no means assured and

the size of any settlement or judgment was unpredictable." *Abrams*, *supra*.

It is the prevailing doctrine that "the presence of a fee-shifting *statute* does not preclude

awarding attorneys' fees from a common fund. Instead, the presence of a fee-shifting statute

precludes a common fund award *only* when that result is required by the statutory scheme

involved."[9] "The Second, Third, and Seventh Circuits have held that, absent ... a showing of

legislative intent [to preclude a common fund award], the fact that a fee-shifting statute applies to

a particular case does not preclude recovery from a common fund."[10] The Seventh Circuit

---

[9] *McKeage v. TMBC, LLC*, 847 F.3d 992, 1003 (8th Cir. 2017) (emphasis added); *see Staton*, 327 F.3d at 968 (same).

[10] Alan Hirsch *et al.*, Fed. Judicial Ctr., Awarding Attorneys' Fees and Managing Fee Litig., 78 & n.447 (3d ed. 2015) (citing *Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988); *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984)); *see also Burke v. Shapiro, Brown & Alt*, No. 14-cv-838, 2016 WL 2894914, at *4 (E.D. Va. May 17, 2016) (fee-shifting provision of Fair Debt Collection Practices Act does not mandate lodestar fee instead of percent of common fund).

revisited *Skelton* in *Florin v. Nationsbank of Georgia, N.A.*, stating:

> *Even more so* than the fee-shifting provision in *Skelton, the terms of ERISA's fee-shifting provision do not purport to control fee awards* in cases settled with the creation of a common fund, nor does the operation of common fund principles in this case conflict with the provision's intended purpose.[11]

Congress did not intend ERISA's fee-shifting statute to preclude common fund fees.[12]

Awarding common fund attorney's fees serves, not hinders, ERISA's purpose of encouraging plaintiffs and their counsel to pursue meritorious claims: "[A]n award of fees from the settlement fund comports with the fee-shifting policy of enabling meritorious plaintiffs who would not otherwise be able to afford to bring a lawsuit under ERISA, to pursue their claims."[13] This tracks the Fourth Circuit's analysis and conclusion in *Abrams*. Awarding attorney's fees as a percent of the common fund is "common" in complex ERISA actions.[14]

It is significant that ERISA's fee-shifting provision does not provide for payment of expenses (only costs, a narrow category of expense).[15] Plaintiff's Counsel spent over $640,000, mainly on experts, to bring this case to judgment. Expert testimony was necessary and critical to the Court's findings on liability and damages. If ERISA's fee-shifting statute is the exclusive

---

[11] 34 F.3d 560, 563 (7th Cir. 1994) (emphasis added); *see also Bowen v. SouthTrust Bank of Alabama*, 760 F. Supp. 889, 894-95 (M.D. Ala. 1991) (same).

[12] Mark Berlind, *Attorney's Fees under ERISA: When is an Award Appropriate?*, 71 Cornell L.Rev. 1037, 1049 (1986) ("The lack of legislative history makes it impossible to determine the actual 'intent' Congress had when it enacted section 502(g)(1)") (cited with approval in *Florin*, 34 F.3d at 563 n.6).

[13] *Florin*, 34 F.3d at 564; *see also In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 457 (E.D. Pa. 1995) (awarding fees from a common fund "also further[s] the policy … of providing both prospective plaintiffs and their attorneys an economic incentive to bring meritorious ERISA cases") (quotations, alterations, and citations omitted).

[14] *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (citing *Florin*, *supra*, for proposition that fee-shifting statute does not preclude common fund fee, & *In re Unisys* for proposition that award from common fund furthers purposes of ERISA); *see also* Appendix B (listing ERISA cases where fees were paid from common fund).

[15] *See W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 99 (1991) (expert fees may not be shifted to defendants under a fee-shifting statute unless the statute explicitly so provides).

method for paying Plaintiff's Counsel, we will not recover expenses. If that is the rule, no case like this will be filed (let alone tried) by rational counsel. ERISA plan participants will not get the representation they need. ERISA's primary goal of protecting pension assets from misuse and abuse will be eviscerated. The door to the courthouse will be locked. This is against the goals of ERISA and the Fourth Circuit position on access to the courts, as expressed in *Abrams*.

Defendant cites one case against the authorities discussed above, *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015). (Dkt. 325 at 23.)[16] *Visteon* is a bad decision for several reasons.[17] That aside, our case is different in a key respect. We have a contingent fee contract—Mr. Brundle's "key to the courthouse door." *Abrams*, *supra*, at 246. There was no contingent fee contract in *Visteon*, as the court emphasized. 791 F.3d at 787. Indeed, Defendant says a fee-shifting statute precludes a common fund fee "in the *absence of agreement*." (Dkt. 325 at 18) (emphasis added). *Visteon* also suffers from several flaws.

First, it ignores the Seventh Circuit's own precedent on when fee-shifting statutes displace common fund awards. *See Skelton*, 860 F.2d at 255-56 (legislative intent to displace common fund award critical to determination). Indeed, *Visteon* does not even address a prior Seventh Circuit case, *Florin*, *supra*, that expressly addressed the same issue: whether ERISA's fee-shifting statute precludes an award from a common fund. Unlike the decision in *Visteon*, the decision in *Florin* addresses the existing circuit precedent and comes to a different result: "Our holding in *Skelton* applies to this case. Even more so than the fee-shifting provision in *Skelton,*

---

[16] Defendant's citation to *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), (Dkt. 325 at 25), for the proposition that the common fund doctrine cannot be used to override the terms of the Plan makes no sense. The Supreme Court held that where "a plan is silent on the allocation of attorney's fees ... the common-fund doctrine provides the appropriate default." *Id.* at 1548. The Plan does not have any terms addressing participants' attorney's fees.
[17] The *Visteon* court was extremely displeased with the plaintiffs' counsel, saying counsel didn't deserve a common fund fee even if permitted. This may have influenced the outcome.

the terms of ERISA's fee-shifting provision do not purport to control fee awards in cases settled with the creation of a common fund, nor does the operation of common fund principles in this case conflict with the provision's intended purpose." 34 F.3d at 563.

Second, *Visteon* concludes ERISA's fee-shifting provision is "a statutory replacement for the common law." 791 F.3d at 787. It does so without evaluating legislative intent or its own circuit precedent, *Skelton* and *Florin*. A conclusion without reasoning is not persuasive.

Third, treating common fund judgments differently than common fund settlements is terrible policy.[18] Doing so goes against the Fourth Circuit's admonition that contingent fees serve critical goals and help plaintiffs. Allowing ERISA plaintiffs' lawyers to receive a percent of the common fund created by a settlement (along with their expenses), but requiring lodestar compensation (without expenses) for judgments, destroys the alignment of interests between plaintiffs and counsel and stymies the goals articulated in *Abrams*. Rational plaintiffs' lawyers will not try cases, bear the risk of non-payment, and invest hundreds of thousands of dollars in experts without reimbursement, when settling cases provides large and certain fees and reimbursed expenses. Defendants, in turn, will use this to leverage lower settlements, now free from the threat of large judgments. Plan participants will suffer.

Moreover, since *Visteon*, the Seventh Circuit decided another ERISA fee case. *See Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). That case does not mention *Visteon*. It recognizes the difference between a fee-shifting award, which pays the plaintiff, and a common fund award, which pays the plaintiff's lawyer. *Id.* at 816. The court approved a total "reasonable" fee for the plaintiff's lawyer combined of a fee-shifting and common fund award in a case tried

---

[18] *Visteon* involved a judgment, and *Florin* a settlement. In *Tussey*, *supra*, the court awarded fees from a common fund after judgment.

to a judgment in part, instead of awarding fees based solely on lodestar.

Defendant cites several other cases where courts chose to pay attorneys' fees via ERISA's fee-shifting statute instead of from a common fund. (Dkt. 325 at 25-26) (citing *Brytus v. Spang & Co.*, 203 F.3d 238, 244 (3d Cir. 2000), *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847 (S.D. Tex. 2012), *Carrabba v. Randalls Food Mkts., Inc.*, 191 F. Supp. 2d 815 (N.D. Tex. 2002).)[19] These cases do not say ERISA's fee-shifting statute precludes a common fund fee. Instead, each case recognized that a common fund fee was permitted, but decided a lodestar statutory fee was more appropriate under the circumstances.

In *Carrabba*, the court recognized a common fund award might apply, 191 F. Supp. 2d at 823, but declined to award common fund fees because it found such fees would result in an unreasonable fee award to plaintiff's counsel where they did not litigate the case efficiently. For example, plaintiff's counsel added 31 named class representatives to the complaint, when the original four would have suited, which resulted in thousands of unnecessary deposition hours.

In *Humphreys*, the court "agreed" that "it has the power and discretion to award reasonable fees under *both* the statute and the common fund doctrine." 802 F. Supp. 2d at 859 (emphasis added). The court declined to award a common fund because "permitting Plaintiff to recover under both the statute and the common fund doctrine would give Plaintiff a windfall (since she/the class would receive the lodestar award under ERISA § 502, but would not need to use it to pay for attorneys' fees if the fee award from the common fund is also granted to counsel)." *Id.* This reasoning is wrong: the plaintiff does not receive the common fund fee, plaintiff's counsel does. The fee-shift award goes to the plaintiff and serves to defray, in part, the

---

[19] Other cases cited in this portion of Defendant's Opposition pertaining to anti-alienation are discussed below in Part I.A.2.

common fund award sought by plaintiff's counsel. Thus, there is no windfall for Mr. Brundle or the Plan should the Court grant his and Plaintiff's Counsel's motions. Moreover, the court in *Humphreys* denied the common fund award in part because of the small amount of money recovered for each plan participant. *Id.* at 860. In this lawsuit (assuming the Court grants the fee motions), the average Plan participant will receive *more than double* her current benefit value.[20]

Likewise, in *Brytus* the court rejected a rule that ERISA's fee-shifting statute precludes a common fund fee. 203 F.3d at 243-44. Instead, it held that a common fund fee is not required. It then held the trial court did not abuse its discretion by deciding a lodestar fee was reasonable under the facts and circumstances of *that case*. *Id.* at 247.[21]

Defendant complains that Plaintiff's Counsel seeks a common fund fee without notice to other participants in the Plan. (Dkt. 325 at 17.) That rings hollow coming from the party who opposed class certification. Further, as the Fourth Circuit held, this Court sits in a fiduciary capacity in when deciding a common fund fee. *See Abrams*, *supra*, at 243. That is enough.

     2.     <u>ERISA's Anti-Alienation Provision Does Not Apply.</u>

Defendant says that paying attorneys' fees from the judgment violates ERISA's and the Plan's anti-alienation rule. (The Plan's anti-alienation rule parrots ERISA and adds nothing to the argument.) If true, Defendant's argument means courts across the United States have supervised repeated violations of ERISA totaling hundreds of millions of dollars in unlawful attorneys' fees payments (*see* Appendix B; Note 5, *supra*), without so much as a word of

---

[20] The Plan currently has approximately $20 million in assets. The net to the Plan in this lawsuit after fee-shifting and common fund fees will be over $22.5 million.

[21] The majority opinion and the dissent address many arguments about the problems associated with paying contingent plaintiff's counsel on an hourly basis versus a common fund basis in cases that proceed to judgment. Naturally, we believe that the dissent makes the better argument. More importantly, we believe that the dissent's discussion of incentives and alignment of interests is closer to the Fourth Circuit's reasoning in *Abrams*, *supra*.

complaint from the Department of Labor. If true, critical incentives for lawyers to represent plaintiffs on a contingent basis, as discussed in Part I.A.1, *supra*, disappear. It's not true. "ERISA's anti-alienation provision does not bar Class Counsel's request for common fund attorney's fees [because] ERISA's preclusion against 'attachment' or 'alienation' of pension benefits only applies while the funds are in the control of the Plan." *Savani v. URS Prof'l Solutions LLC*, 121 F. Supp. 3d 564, 569 (D.S.C. 2015). In this lawsuit, like *Savani*, the judgment is not in the Plan. It is in the Court's custody.[22]

The Second Circuit discussed anti-alienation as applied to defined contribution plans such as the Plan. *See Milgram v. Orthopedic Assoc's Defined Contrib. Pension Plan*, 666 F.3d 68 (2d Cir. 2011). It offered many reasons why ERISA's anti-alienation rule does not apply:

- Money judgments are enforceable against a plan, which if paid would reduce plan assets available for benefits. 666 F.3d at 72.

- Undistributed money held in trust for the benefit of defined contribution plan participants are not benefits within the meaning of the anti-alienation provision. *Id.* at 73.

- If defined contribution plan funds credited to a participant's account were benefits within the meaning of the anti-alienation provision, then plan administrators could not deduct plan fees from participant accounts, which is expressly permitted by ERISA and the plan. *Id.*

- Plan assets only become benefits when they are distributed. *Id.* at 74.

- A participant's account is just a bookkeeping entry. *Id.*

- All the cases cited by the defendant involved defined benefit plans where a party sought to recover from benefits being paid. *Id.* (Like Defendant's authorities).

- The defined benefit plan cases cited by the defendant involved situations where parties sought to enforce liabilities of pensioners against pension benefits. *Id.*

The authorities cited by Defendant are very different from this lawsuit, *Milgram*, and the

---

[22] It is well settled that money is not a plan asset unless it is in the plan's trust. *See Tussey*, 746 F.3d at 339-40; *In re Halpin*, 566 F.3d 286, 290-92 (2d Cir. 2009).

dozens of other lawsuits authorizing attorneys' fees from common funds created by ERISA litigation about defined contribution plan investments. Defendant's cases involve defined benefit plans where the plaintiff did not recover a sum of money based on a loss to the plan, but, rather, obtained judgments that the participants were entitled to more pension benefits from a defined benefit or cash balance plan than they were receiving and would receive. In *Humphreys*, the plaintiffs won increased future pension benefits, but they did not win losses to be restored to the plan. In other words, there was no pot of damages ordered by the court to be paid into the plan. Instead, each plan participant would receive increased benefits from the plan in years to come. It is these kinds of benefits that are not alienable. *Kickham* involved the same kind of scenario. We are surprised Defendant failed to mention *Milgram* given that it distinguishes *Kickham* because that case involved a defined benefit plan and the cases are from the same circuit.

### B.    The Record Supports Plaintiff's Fee-Shifting Motion.

Defendant agrees that Plaintiff is entitled to recover some fees because of his success. Defendant, however, quibbles with the hours Plaintiff's Counsel devoted to the case to bring it to a successful conclusion and counsel's hourly rates.

### 1.    Plaintiff's Counsel's Hours Are Justified.

First, Plaintiff's Counsel used billing judgment to reduce the hours for which Plaintiff seeks fee-shifting. As Plaintiff explained, Plaintiff's Counsel has already deducted more than $300,000 from requested attorneys' fees. (Dkt. 313 at 14; 1st Porter Dec. ¶ 9.) Plaintiff's Counsel also billed significant time on this case since the hours reported in the fee motion, largely on Wilmington's meritless Rule 59 motions (Dkt. 309), as well as on Plaintiff's motion to strike the Tarbell declaration, which the Court recently granted. (2d Porter Dec. ¶ 5, Ex. 2.) Plaintiff's Counsel also exercised good judgment and efficiency by not filing a reply brief on the motion to strike, as they correctly deemed the initial brief sufficient. Counsel also spent

unclaimed time on the instant fee motion and reply, which Wilmington should reimburse in part. *See Strand v. Auto. Machinists Pension Trust*, No. CIV.06 1193, 2007 WL 2029068, at *2 (D. Or. July 11, 2007). Thus, should the Court believe that any deduction from Plaintiff's Counsel's fees is warranted, it should consider the deductions we already made and the time since the fee motion was filed, rather than deducting fees from Plaintiff's request.

Wilmington devotes several pages of its memorandum to quibbling about how Bailey & Glasser records time. (Dkt. 325 at 8-16.) Plaintiff's counsel's practices are appropriate, and are accepted by its hourly clients. (2d Porter Dec. ¶ 13.) More importantly, the pedantic best practices suggestions of Wilmington's law firm do not show fees should be reduced here.

Bailey & Glasser's practice of block billing is not an issue in this case. Block billing was an issue in *Dahlberg* because attorneys' fees were only statutorily recoverable on one of the plaintiff's five counts. *Salim v. Dahlberg*, No. 1:15-cv-468, 2016 WL 2930943, at *1-2 (E.D. Va. May 18, 2016). ERISA § 502(g)(1) does not present such a limitation, but provides a district judge greater discretion to award fees "so long as th[e] party has achieved some degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (*citing Hardt v. Reliance Std. Life Ins. Co.,* 560 U.S. 242, 130 S. Ct. 2149 (2010)); 29 U.S.C. § 1132(g)(1). Plaintiff achieved much more than "some degree of success on the merits" here. Plaintiff recovered $29.7 million on by far his most important claim.

The Court is not required to conduct a claim by claim breakdown of worked time because (1) all of Plaintiff's claims arose out of the same transaction and operative facts, so time spent in discovery was not divisible by claim; and (2) the ERISA § 406(a)(1)(A) claim upon which Plaintiff prevailed consumed nearly all the time in this case, and nearly all the monetary relief he conceivably could have been awarded under all claims was awarded under that claim. That

Plaintiff was unsuccessful on tertiary claims should have no bearing on the fee award because those claims were inconsequential, as it became clear early in discovery that they had little value. The loan claim had little value because Plan notes were replaced by Constellis notes "only a few days" after the ESOP Transaction. Dkt. 238 at 14 n.6 (Def. MSJ Reply). The ERISA trustee consideration claim was at most worth $150,000, the amount of Wilmington's fee. Dkt 194 at Additional Undisputed Facts ¶ 29 (Def. MSJ Opp'n). And damages for the ERISA § 406(b)(2) claim could only have duplicated what Plaintiff recovered in his ERISA § 406(a)(1)(A) claim. These claims took little independent time—none in discovery because the parties inquired into the same transaction for all claims, and a small amount in briefing. The three claims were in fact so inconsequential that Wilmington overlooked them in its motion for summary judgment, forgetting to make any argument. Dkt. 163.

Wilmington misstates *Integrated Direct Mktg., LLC v. May*, which observed: "After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims *unrelated to successful ones*." 1:14-cv-1183, 2016 WL 3582065, at *3 (E.D. Va. June 28, 2016) (quotation marks and citations omitted, emphasis added). Here, the unsuccessful claims were related to the successful one, so a subtraction of fees is unwarranted. Although Wilmington eagerly posits a draconian suggestion to throw out all block-billed time and deprive Plaintiff's counsel of fair compensation for its work, there is no such requirement. In Wilmington's cited authority of *Carahsoft Tech. Corp. v. Janus Consulting Partners, LLC*, 1:13cv1575, 2015 WL 12517011, at *4 (E.D. Va. Jan. 26, 2015) (Brinkema, J.), the Court found only a 10% reduction appropriate under the facts presented. Before making any reduction, however, the Court should consider Plaintiff's Counsel's exercise of billing judgment and compensable time since the fee motion was filed, as explained *supra*.

14

For similar reasons, Wilmington's arguments regarding "unsuccessful claims" and "unsuccessful motions" have no merit. Again, on his ERISA § 406(a)(1)(A) claim Plaintiff recovered substantial losses dwarfing by orders of magnitude the damages recoverable on his other claims. He achieved great success on the merits, particularly as the Court's award was 15 times higher than Wilmington's final settlement offer. Furthermore, that he was unsuccessful on motions such as class certification is irrelevant. In any case a prevailing party will lose some motions; the Court does not have to peel those out.

Wilmington also mistakenly argues that Plaintiff employed too many lawyers on certain projects. This is Monday morning quarterbacking by the losing team. Plaintiff's Counsel achieved a great result, understanding the resources necessary to prosecute a complex ERISA action to victory. This requires a team effort, employing multiple professionals with different skill sets including, for example, ERISA expertise, trial expertise, and paralegal expertise. This is not a case that can be litigated and tried by a solo practitioner with minimal associate or junior partner assistance, and no financial resources to pay experts. Furthermore, Wilmington's specific grievances are nonsensical. Wilmington argues that too many of Plaintiff's lawyers attended trial, but fails to mention that it had a bloated witness list and Plaintiff did not know which witnesses Wilmington would call. Plaintiff's lawyers were assigned to several witnesses each, and they needed to be present in court to hear the testimony of other witnesses, so as to have context for their examinations. That Wilmington ultimately chose not to call many of the witnesses on its list is not cause to penalize Plaintiff. Wilmington's suggestion that too many lawyers worked on briefs is ludicrous. A collaborative effort is required to bring a complex case to a successful judgment, and having multiple attorneys on major briefs is typical. Litigation and trial are collaborative, team efforts. We are surprised Defendant does not understand that.

Wilmington's citation to *Personhuballah v. Alcorn*, No. 3:13–cv–678, 2017 WL 980568 (E.D. Va. Mar. 3, 2017), is inapposite. There the firm seeking fees essentially conceded that a brief was overstaffed but argued that was unavoidable because one of the primary drafters "left the firm on maternity leave during the pendency of the case [and a]s a result, the replacement attorneys needed to spend significant time familiarizing themselves with the factual and procedural history of the case, as well as the substance of the brief." *Id.* at *14. Of more relevance here, the court held: "As a general matter, '[t]here is nothing inherently unreasonable about having multiple attorneys perform ... work.'" *Id.* (quoting *Burns v. Anderson*, No. 1:02-cv-1326, 2006 WL 2456372, at *6 (E.D. Va. Aug. 22, 2006)). Wilmington's authority *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14–cv–1611, 2017 WL 600093 (E.D. Va. Feb. 14, 2017), also is not comparable. There, "13 attorneys worked on the case, with each attorney billing between 400–2,200 hours . . . include[ing] five partners, three of counsel, and five associates." *Id.* at *9. The staffing in the instant case was much leaner, with six attorneys working on the case, and only four of them billing hours in that range. *See* Dkt. 313 at 13. Furthermore, Wilmington improperly and inaccurately attributes a quotation in a parenthetical of a case cited in *BMG* to *BMG* itself. Dkt. 325 at 10-11. *BMG* merely held that it was unreasonable and unnecessary for eight attorneys to attend a summary judgment oral argument. 2017 WL 600093, at *10. Wilmington does not identify similar overstaffing in this case. True, the Fourth Circuit in *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994), said it was "sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney," but it reversed the district court's 30% fee reduction because "[t]hese deficiencies . . . do not detract from the difficulty and complexity of this case or the hours necessary to prosecute it." Likewise, in this case, Plaintiff's Counsel prevailed in an

16

aggressively contested, difficult and complex case.[23]

Much of Wilmington's criticism is the "pot calling the kettle black."[24] McGuire Woods used multiple attorneys. Five attorneys of record signed its instant opposition brief. At trial, an in-house attorney from Wilmington, an in-house attorney from its parent M&T Bank, and an outside attorney for M&T Bank attended every or nearly every day of trial, in addition to the McGuire Woods team of several lawyers. And while Wilmington criticizes Plaintiff for using certain Bailey & Glasser attorneys from offices other than its DC office, Wilmington relied principally on lawyers from McGuire Woods' Richmond office, rather than its Tysons office.[25]

Wilmington misstates facts when it complains that lawyers performed paralegal work and paralegals performed clerical duties (Dkt. 325 at 12). When Mr. Muench prepared witness folders, he did attorney work by analyzing documents and choosing exhibits. This was not work of the photocopying variety. Wilmington's complaint that a paralegal should not be reviewing orders and calendaring deadlines set therein and that she determined by analyzing local and federal rules requires little discussion; this is exactly what paralegals do, not what secretaries are trained to do. And Mr. Budhdev provided valuable assistance to counsel in analyzing and

---

[23] Wilmington's complaint (Dkt. 325 at 14) about "vague or stock entries" has no merit because, for the same reasons already stated, Plaintiff did not have to give greater detail to show time was reimbursable. All trial preparation time should be reimbursable, for example, as there was no need to break down that time by claim and Wilmington has not shown that the trial was overstaffed. For the reasons stated previously, Wilmington's cases are distinguishable. *Auto. Fin. Corp. v. EEE Auto Sales, Inc.*, No. 1:10CV1407, 2011 WL 3422648, at *6-7 (E.D. Va. Aug. 3, 2011), also is distinguishable because there the time records included time spent on bankruptcy proceedings that this Court had to excise from a judgment.

[24] The same goes for Wilmington's criticism of Mr. Silver. Defendant's expert (Dkt. 325-20), did the same type of analysis for which Wilmington criticizes Mr. Silver (Dkt. 325 at 28).

[25] Wilmington's misstatement of *Cox v. Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 481 (E.D. Va. 2002), and attack on Attorney Basdekis is egregious (Dkt. 325 at 11). This Court in *Cox* did not find "that Mr. Basdekis' time entries for travel were excessive" but that his travel time to a hearing that he did not argue would be deducted as duplicative. *Id.* at 484.

evaluating valuation reports and expert opinions on same. *See* 2d Porter Dec. ¶ 14.

Finally, to the extent any of the time spent on Mr. Halldorson's appeal was missed, we agree that it is appropriate to deduct it from the fee award.

### 2. Plaintiff's Counsel's Hourly Rates Are Justified.

Plaintiff provided ample evidence that the counsel's hourly rates are consistent with the prevailing market rates for complex ERISA litigation—a highly specialized practice—in this market and elsewhere. Plaintiff provided declarations by lead trial counsel and Professor Charles Silver. (Dkt. 313-A, B). That evidence shows the fees requested in this action reflect the hourly rates that attorneys bill in similar matters. (Dkt. 313-B at ¶ 11). Likewise, Prof. Silver cited ample support for his conclusion that the requested rates are reasonable. (Dkt. 313 at 18-20; Dkt. 313-A at ¶¶ 18-29). As Plaintiff and Prof. Silver detailed, the rates requested for each attorney are reasonable when compared to National Law Journal surveys and are in line with fees charged by attorneys in McGuire Woods' Richmond office. (Dkt. 313-A at ¶¶ 21-28).

Plaintiff also listed numerous recently-approved rates by courts in this Circuit. *See* Dkt. 313 at 20; *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 571–72 (4th Cir. 2013) ("[W]e have held that evidence of fee awards in comparable cases is generally sufficient to establish the prevailing market rates in the relevant community."). Courts have found similar evidence sufficient. *See Berry v. Schulman*, 807 F.3d 600, 617–18 (4th Cir. 2015) (counsel's affidavits and expert testimony comparing counsel's rates to those charged in similar litigation and rates awarded in similar class action cases established reasonableness of rates). Defendant ignores all this evidence and makes the baffling and false proclamation that it is "undisputed that Plaintiff has not provided any evidence." (Dkt. 325 at 16.)[26]

---

[26] Defendant suggests impropriety in Plaintiff's Counsel's request for a different rate in a separate matter in another jurisdiction. Mr. Porter explains this. *See* 2d Porter Dec. ¶ 3.

Wilmington's representation that Plaintiff asked the Court to rely only on his counsel's declaration that the rates set forth in the Vienna Matrix (Dkt. 325 at 7) are appropriate ignores the cited authority (Dkt. 313 at 19) showing that in this very Court the Matrix has been used as persuasive evidence of an appropriate range for the rates of attorneys engaged in complex litigation in Northern Virginia.[27] In the face of this case law, Wilmington's claim that Plaintiff made a "conclusory argument" doesn't hold water.

Plaintiff met his burden to show that counsel's rates are reasonable. Defendant cites a litany of uncomplicated, individual actions in which lower rates were approved by courts.[28] As this Court is aware, this is very complex case involving an "enormously complex and detailed" statute. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999). In *Salim*, this Court rejected the use of the Vienna Matrix for a simple case, but recognized its use in complex cases. 2016 WL 2930943 at *5-6 (noting application of the Vienna Matrix in complex litigation). The cases cited by Defendant are inapposite and selected to avoid any reference to the Vienna Matrix or more pertinent complex litigation examples referenced in Plaintiff's opening brief that approved fees based on rates in line with those requested by Plaintiff.

The rates charged by firms *defending* similar complex ERISA cases in the Fourth Circuit shows that the requested rates are reasonable. *See* Appendix A. Appendix A shows that

---

[27] *See Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10–cv–502, Dkt. 263 (E.D. Va. Aug. 24, 2011); *BMG Rights Mgmt. (US) LLC v. Cox Comms., Inc.*, No. 1:14-CV-1611, 2017 WL 600093, at *9 (E.D. Va. Feb. 14, 2017); *Taylor v. Republic Servs., Inc.*, No. 1:12-CV-00523-GBL, 2014 WL 325169, at *5 (E.D. Va. Jan. 29, 2014).

[28] *See* Dkt. 325 at 16-17 *citing Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008) (individual employment case resolved on offer of judgment); *Porter v. Elk Remodeling, Inc.*, No. 09cv446, 2010 WL 3395660 (E.D. Va. Aug. 27, 2010) (individual employment case in which defendant consented to judgment); *Salim v. Dahlberg*, No. 1:15-cv-468, 2016 WL 2930943 (E.D. Va. May 18, 2016) (individual case involving assault and battery); *McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013) (individual action by arrestee against police officer).

companies defending complex ERISA actions retain firms from around the country for cases in this Circuit. That defendants hire firms from outside this district, and pay accordingly, suggests this Court can look outside this district when examining the reasonableness of counsel's rates.[29] Further, the top ERISA defense firms are national firms and none of the top ERISA plaintiff firms is located in this market. 2d Porter Dec. ¶¶ 8-10.

## II.    CONCLUSION

For these reasons, Plaintiff and Counsel ask the Court to grant the Motion.[30]

Dated: May 19, 2017

Respectfully submitted,

BAILEY & GLASSER LLP

/s/ Gregory Y. Porter

Gregory Y. Porter (VSB No. 40408)
Brian A. Glasser (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
Patrick O. Muench (*pro hac vice*)
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
gporter@baileyglasser.com
bglasser@baileyglasser.com
rjenny@baileyglasser.com
pmuench@baileyglasser.com

Thanos Basdekis (VSB No. 50913)
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
tbasdekis@baileyglasser.com

*Attorneys for Plaintiff*

---

[29] *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) ("Rates charged by attorneys in other cities, however, may be considered when the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally.")
[30] We request a smaller expense payment ($11,979.00 less) than requested in the opening brief. *See* 2d Porter Dec. ¶ 6. We do not seek reimbursement for Professor Silver's Report.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of May 2017, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send such notification to the following:

James P. McElligott, Jr.
Summer L. Speight
Nicholas DelVecchio SanFilippo
*Counsel for Defendant*
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA  23219-3916
Telephone:  804-775-4329
Facsimile:  804-698-2111
Email:  jmcelligott@mcguirewoods.com
speight@mcguirewoods.com
nsanfilippo@mcguirewoods.com

Stephen W. Robinson
John E. Thomas, Jr.
*Counsel for Defendant*
**McGuireWoods LLP**
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia  22102-4215
Telephone:  (703) 712-5000
Facsimile:  (703) 712-5050
Email:  srobinson@mcguirewoods.com
jethomas@mcguirewoods.com

Sarah Aiman Belger
*Counsel for Defendant*
**Odin Feldman & Pittleman PC**
1775 Wiehle Ave., Suite 400
Reston, VA 20190
(703) 218-2161
Sarah.Belger@ofplaw.com

s/ Gregory Y. Porter
Gregory Y. Porter (VSB No. 40408)
BAILEY & GLASSER LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
*Attorney for Plaintiff*